IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-60 T

Judge Lawrence J. Block

---

RONALD C. PRATI and MARY G. PRATI,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

BRIEF FOR THE UNITED STATES
IN SUPPORT OF ITS MOTION FOR PARTIAL
DISMISSAL OF PLAINTIFFS' COMPLAINT

---

**INTRODUCTION AND STATEMENT OF QUESTIONS INVOLVED**

Plaintiffs seek a refund of tax motivated interest assessed under former § 6621(c). That statute made taxpayers liable for a higher rate of interest if their underpayment of taxes was both "substantial" and "attributable to tax motivated transactions." "Tax motivated transactions" were defined to include sham transactions. The gravamen of plaintiffs' refund claim for tax motivated interest is that their underpayment of taxes cannot be attributed to sham partnership transactions. The Court lacks subject matter jurisdiction to adjudicate that claim in a partner level refund action like the present one. In the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Congress created a procedure to adjudicate a "partnership item" at the partnership level, rather than the level of the individual partner. Under "TEFRA," a partnership item cannot

be litigated and the prior treatment of a partnership item by the IRS or a court cannot be overturned in a partner level refund action. The sham nature of a partnership transaction is a "partnership item." Both the IRS and the Tax Court determined that the disallowed deductions generating plaintiffs' underpayment of taxes were attributable to sham partnership transactions. This Court does not have jurisdiction to consider this partnership item.

Plaintiffs' tax motivated interest story begins with plaintiff Ronald C. Prati's limited partnership interests in Agri-Venture Fund ("AVF"), Canyon Desert Vineyards ("CDV"), and Emperor Seedless-85 ("ES-85"). During 1985, plaintiffs reported losses from AVF, CDV, and ES-85 on their joint federal income tax return, and used the losses to reduce their tax liability.

The IRS subsequently issued final notices of partnership administrative adjustment ("FPAAs"), disallowing all of the partnerships' 1985 losses. The IRS concluded in the FPAAs that the losses were not allowable, because the partnerships' transactions were shams.

Plaintiff Ronald C. Prati and his partners were parties to proceedings in the United States Tax Court to challenge the FPAAs. While the Tax Court proceedings continued, Prati and certain other partners entered into partial settlement agreements with the IRS. The agreements set forth the amount of 1985 partnership losses that would be disallowed, but did not specify any grounds for the disallowance. There was no agreement on the IRS' FPAA sham determination that was being contested in the Tax Court. Because the settlement agreements were partial, the sham determination remained undisturbed and Ronald C. Prati remained a party to the Tax Court case to contest, among other things, whether his partnerships' transactions constituted shams.

After the settlements, the IRS notified plaintiffs how the settlement effected their 1985 tax liability. The notice informed plaintiffs that their tax underpayment resulting from the

disallowance of partnership losses under the settlements was attributable to sham transactions, and therefore plaintiffs were liable for tax motivated interest. The IRS then assessed plaintiffs for tax motivated interest, plaintiffs paid the assessments and filed refund claims with the IRS for the interest, and, after disallowance of their claims, plaintiffs sued in this Court for a refund of the interest.

After plaintiffs filed their refund claims, but before they brought the present suit, the Tax Court upheld the IRS' FPAA sham determinations. It decided that disallowed partnership deductions were attributable to the sham partnership transactions of AVF, CDV, and ES-85.

Plaintiffs now seek a ruling that the underpayments resulting from their settlement agreements were not attributable to sham transactions. This suit thus contests whether the activities of AVF, CDV, and ES-85, which generated disallowed partnership deductions (and plaintiffs' corresponding underpayments), were shams. However, TEFRA does not permit plaintiffs to litigate partnership losses and partnership transactions in a partner level refund suit. Both are partnership items and must be litigated in a partnership level proceeding. Indeed, Ronald C. Prati was a party in the Tax Court proceeding in which both were litigated. In addition, TEFRA does not permit the Court to overturn the prior treatment of partnership items in an FPAA or judicial decision. Here, both the IRS, in FPAAs issued to AVF, CDV, and ES-85, and the Tax Court determined that the partnerships' disallowed losses derived from sham partnership transactions. Plaintiffs' claim for tax motivated interest runs afoul of these TEFRA barriers.

In sum, even though plaintiffs' partial settlements did not attribute the losses disallowed in them to sham transactions, TEFRA's scheme for litigating partnership items forbids plaintiffs

from litigating the issue now. It also directs deference to the prior sham determinations of the IRS and the Tax Court, which validate and support the IRS' imposition of tax motivated interest against plaintiffs.

Accordingly, the question presented by this motion is:

Whether § 7422(h) (or § 6230(c), see infra note 8) provides that this Court lacks jurisdiction 1) to determine in the present partner level proceeding whether an underpayment of tax is attributable to a sham transaction and subject to the higher rate of underpayment interest provided in former § 6621(c) and 2) to overturn prior determinations that partnership transactions were shams and losses from the transactions were not allowable.

## STATEMENT OF THE CASE

During the year 1985, plaintiff Ronald C. Prati was a limited partner in AVF, CDV, and ES-85. *See* Resp. [Doc. #48] ¶ 1; Compl. ¶ 6. For the taxable period ending on December 31, 1985, AVF, CDV, and ES-85 reported ordinary loss deductions, of which plaintiff Ronald C. Prati received a distributive share. *See* Resp. [Doc. #48] ¶¶ 2-4; Resp. [Doc. #40] App. B, Exs. 1-3. Plaintiffs reported the distributive shares of AVF, CDV, and ES-85 loss on their 1985 joint individual income tax return and used them to reduce their 1985 taxable income. *See* Mot. [Doc. #37] App. B, Ex. 1 at B1, B10, B15, B23-24; Resp. [Doc. #48] ¶ 7.

On April 10, 1991, the Internal Revenue Service ("IRS") issued a notice of final partnership administrative adjustment ("FPAA") to AVF, CDV, and ES-85, determining, among other things, that the ordinary loss deductions reported by AVF (appx. $30,000,000), CDV (appx. $7,500,000), and ES-85 (appx. $9,000,000) on their respective 1985 partnership returns

were not allowable and accordingly adjusted the reported deductions downward to zero. *See* Mot. [Doc. #37] App. B, Ex. 6 at B57, B76, B81, Ex. 10 at B103, B116-17, B121, Ex. 15 at B147, B160-61, B165. Each FPAA determined in this connection that the deductions were not allowable, because "[t]he partnership's activities constitute a series of sham transactions." *See id.* Ex. 6 at B81, Ex. 10 at B121, Ex. 15 at B165.

On July 10, 1991, notice partners of AVF, CDV, and ES-85 filed petitions in the United States Tax Court contesting the adjustments made in the FPAAs.[1] Each petition raised numerous challenges to the FPAA adjustments, including that the IRS had erred in determining that the partnerships' activities constituted a series of sham transactions. *See id.* App. B, Ex. 6 at B62, Ex. 10 at B108, Ex. 15 at B152. By statute, § 6226(c), Ronald C. Prati was a party to all three proceedings.

While *Agri-Venture Fund*, *Canyon Desert Vineyards*, and *Emperor Seedless-85* were proceeding in the Tax Court, the IRS and the Pratis entered into partial settlement agreements with respect to some of the FPAA determinations of the partnership items of AVF, CDV, and ES-85. *See* Compl. [Doc. #1] ¶¶ 7, 12C; Mot. [Doc. #37] App. B, Exs. 2-4. The partial settlements became effective on April 21/24, 1997, when accepted and counter-signed by the IRS. *See* Mot. [Doc. #37] App. B, Exs. 2-4; Resp. [Doc. #48] ¶ 14.

[1] *Agri-Venture Fund, Donald Houseman, a Partner Other Than the Tax Matters Partner, Petitioner, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15034-91, ("*Agri-Venture"), Canyon Desert Vineyards, Edward D. Dunn, Jr., and Francis S. Dunn, a Partner Other Than the Tax Matters Partner, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15054-91, ("*Canyon Desert Vineyards*"), and *Emperor Seedless-85, Landers Sevier, IV, and Paula G. Sevier, a Partner Other Than the Tax Matters Partner, Petitioners, v. Commissioner of Internal Revenue, Respondent,* Docket No. 15039-91 ("*Emperor Seedless-85*"). *See* Mot. [Doc. #37] App. B, Ex. 6 at B58, Ex. 10 at B104, Ex. 15 at B148.

The settlements did not reach an agreement with respect to every determination made in or related to the FPAAs. The IRS and the Pratis did not reach any agreement on the determinations of the FPAAs that AVF's, CDV's, and ES-85's reported ordinary loss deductions were generated by sham partnership activities. *See* Compl. [Doc. #1] ¶¶ 7, 12C; Mot. [Doc. #37] App. B, Exs. 2-4; Resp. [Doc. #48] ¶ 17. Rather, the settlements simply reduced the IRS' FPAA disallowance of loss deductions from 100% to approximately 40/45% of the amounts originally reported by AVF, CDV, and ES-85. *See* Mot. [Doc. #37] App. B, Exs. 2-4; Resp. [Doc. #48] ¶¶ 17, 21. Thus, as a result of the settlements, only approximately 40/45% of the Pratis' originally reported 1985 distributive shares of AVF, CDV, and ES-85 were disallowed, and the Pratis' 1985 taxable income was adjusted upward in the same amount. *See* Resp. [Doc. #40] App. B, Ex. 17.

After the settlements, by statute, §§ 6226(c)(1), (d)(1)(A); 6231(b)(1)(C), Ronald C. Prati remained a party to *Agri-Venture Fund*, *Canyon Desert Vineyards*, and *Emperor Seedless-85* to contest any unsettled partnership items. The unsettled items included the FPAA determinations that AVF's CDV's, and ES-85's partnerships' transactions were shams.

After the partial settlements, the IRS assessed the Pratis in October 1997, for the additional tax, interest, and tax motivated interest resulting from the agreed disallowance of approximately 40/45% of the AVF, CDV, and ES-85 loss deductions the Pratis had reported. *See* Resp. [Doc. #48] ¶ 25; Resp. [Doc. #40] App. B, Ex. 17; Mot. [Doc. #45] App. B, Ex. 15. In satisfaction of the assessments, the IRS applied an advance remittance the Pratis had made in October 1995. *See* Mot. [Doc. #45] App. B, Ex. 15. On April 16, 1999, the Pratis filed a claim for refund of the tax motivated interest paid as a result of the partial settlement agreements of

AVF's, CDV's, and ES-85's partnership items. *See* Resp. [Doc. #48] ¶ 26. The IRS disallowed the claim on February 7, 2000. *See id.* ¶ 27. Plaintiffs filed the present action on January 22, 2002. *See id.* ¶ 28.

After the IRS disallowed plaintiffs' refund claim but before this suit was filed, on July 19, 2001, the Tax Court issued decisions in *Agri-Venture Fund*, *Canyon Desert Vineyards*, and *Emperor Seedless-85*. The decisions confirmed the IRS's FPAA determinations that disallowed partnership deductions were attributable to sham partnership transactions:

> It is ORDERED and DECIDED. . .
> That the foregoing adjustments are attributable to the partnerships reporting of transactions, as described at I.R.C. § 6621(c)(3)(A)(v) [sham transactions], which lacked economic substance so as to result in a substantial distortion of partnership income under the partnership's cash receipts and disbursements method of accounting, as described at I.R.C. § 6621(c)(3)(A)(iv). . . .

Mot. [Doc. #37] App. B, Ex. 8 at B90-B91.

> It is ORDERED and DECIDED. . .
>
> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v) [sham transactions], so as to result in a substantial distortion or income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting. . . .

Mot. [Doc. #37] App. B, Ex. 13 at B134-B135, Ex. 18 at B178-B179.

The decisions were entered pursuant to motions for entry of decision filed April 13, 2001. The motions reflect the agreement of the Commissioner and the tax matters partner of AVF, CDV, and ES-85 to be bound by the July 19, 2001 decisions, including the attributing of deductions disallowed thereunder to sham transactions for purposes of former § 6621(c). *See* Resp. [Doc. #40] App. B, Ex. 19; Def.'s Ex. 1, App. B (filed as an attachment to this brief).

## ARGUMENT

### I. RCFC 12(b)(1) Standard

Jurisdictional challenges pursuant to RCFC 12(b)(1) take two forms, (1) challenges to the legal sufficiency of the complaint's jurisdictional allegations and (2) factual challenges to one or more of the jurisdictional facts alleged in the complaint. *See e.g. Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993); *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). In the former case, the alleged jurisdictional facts are assumed to be true, and they are liberally construed in plaintiff's favor. There is, however, no presumption in plaintiff's favor when there is a dispute over one or more of the alleged jurisdictional facts. Rather, the court is permitted to receive and weigh evidence to resolve any disputed jurisdictional fact, and the burden is on the plaintiff to establish subject matter jurisdiction by a preponderance of evidence after opportunity to be heard. *See e.g. Rocovich v. United States*, 933 F.2d 991, 993-94 (Fed. Cir. 1991); *Reynolds*, 846 F.2d at 747-48.

Defendant's motion contends that the Court lacks jurisdiction over plaintiffs' challenge to assessment of tax motivated interest. To the extent disputes over jurisdictional facts arise, the Court may resolve them as is proper on a RCFC 12(b)(1) motion.

### II. The Court lacks subject matter jurisdiction over plaintiffs' claim that they are not liable for tax motivated interest.

The fundamental jurisdictional problem with plaintiffs' claim for refund of tax motivated interest is that granting it would require the Court to change *partnership* item determinations in the present *partner* level refund proceeding – an action the Court is prohibited from taking by § 7422(h) (or § 6230(c)(4)). The partnership items at issue are the FPAA determinations and the

confirming Tax Court decisions that the partnership transactions generating AVF's, CDV's, and ES-85's loss deductions were shams. To illuminate the jurisdictional problem, the next section of this brief reviews the pertinent statutory and regulatory scheme governing the treatment and litigation of partnership items.

**A. Statutory/Regulatory Background**

In 1982, as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 402(a), 96 Stat. 324, 648-671, ("TEFRA"),[1] Congress enacted unified partnership audit examination and litigation provisions, now codified, as amended, at §§ 6221-6234. "Prior to TEFRA's enactment, multiple proceedings were required to address the tax treatment of partnership issues, because partnerships are not separately taxable entities and partnership income and expense pass through to the individual partners." *Chimblo v. Commissioner*, 177 F.3d 119, 121 (2d Cir. 1999) (quotations omitted). "Through TEFRA, Congress sought to ensure equal treatment of partners by uniformly adjusting partners' tax liabilities and channeling any challenges to these adjustments into a single, unified proceeding. ... This system has the additional advantage of abating the administrative burden that would be wrought by multiple, duplicative audits and lawsuits involving numerous partners in a single partnership." *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir. 1998) (citation omitted).

Towards achieving TEFRA's goals, the tax treatment of *partnership* items is determined at the *partnership* level, *see* § 6221. A partner is required on the partner's return to treat a partnership item in a manner consistent with its treatment on the partnership return. *See* § 6222.

[1] TEFRA is applicable to tax years beginning after September 3, 1982. Pub. L. No. 97-248, § 407.

A "partnership item" is defined as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of [subtitle F], such item is more appropriately determined at the partnership level than at the partner level." § 6231(a)(3).

If the IRS adjusts the treatment of partnership items on a partnership return, it must mail the partners a FPAA. §§ 6223(a)(2), (d)(2). Generally, the IRS must mail the FPAA within three years after the later of the date on which the partnership return was filed or due, or the period for assessing tax attributable to any partnership item will expire. *See* §§ 6501(a), 6229(a), (d).[2] If the IRS fails to mail the FPAA in a timely manner, the partnership items stand as reported and cannot be adjusted. *See Roberts v. Commissioner*, 94 T.C. 853, 859-62 (1990).

The partnership's tax matters partner ("TMP")[3] has 90 days after the day on which the FPAA is mailed to file a petition in the U.S. Tax Court, the U.S. Court of Federal Claims, or a U.S. district court, for readjustment of the adjusted partnership items. *See* § 6226(a). If the TMP does not file a petition within the 90 day period, certain other partners or partner groups may do so within the next 60 days. *See* § 6226(b). If a petition is not timely filed within the prescribed

[2] Taxes, as a general rule, must be assessed within three years after the return is filed, except in cases of false returns or willful attempt to defeat or evade taxes, cases where no return was filed, and cases of agreed extension of the statute. §§ 6501(a) & (c)(1) - (4). If an FPAA is timely, the IRS can assess taxes attributable to partnership items against all partners, even if the three-year return filing period of limitation provided in § 6501(a) has expired. If an FPAA is untimely, the IRS can still assess additional taxes against any partner with respect to whom that period remains open. *See Andantech, L.L.C. v. Commissioner*, 331 F.3d 972, 976-78 (D.C. Cir. 2003); *see also AD Global Fund, LLC v. United States*, 67 Fed. Cl. 657 (2005) (appeal pending).

[3] The tax matters partner generally is either the general partner designated as the tax matters partner under applicable regulations, or the general partner having the largest profits interest in the partnership. *See* § 6231(a)(7).

150 day period, the FPAA adjustments stand and cannot be overturned. *See Genesis Oil & Gas, Ltd. v. Commissioner*, 93 T.C. 562, 566 (1989) ("Since neither the TMP [tax matters partner] nor any notice partner filed a timely petition, they have lost their right to contest, in any court, respondent's determinations in the FPAA.").

If a petition for readjustment is timely filed, the reviewing court has the power to readjust and determine the partnership items for the partnership taxable year at issue in the petitioned FPAA. *See* § 6226(f). Each partner who was a partner at any time during the year of the adjusted partnership return is deemed a party to the readjustment action and is entitled to participate. *See* § 6226(c). Any determination of the court, including upholding the FPAA determinations, binds the parties. *See* § 6226(g). If the court does not readjust the FPAA's adjustments, the adjustments stand as correct. *Cf.* § 6226(h) (dismissal of readjustment petition deemed decision that FPAA is correct).[4]

Although a partner who is assessed tax as a result of a FPAA or a readjustment petition in the Tax Court may contest the tax liability by paying the assessment, filing a timely refund claim with the IRS, and, after disallowance, filing a refund action in the Court of Federal Claims or United States District Court, the partner is limited by the constraints of § 7422(h):

> No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).

Moreover, in any action brought under § 6230(c), no substantive review of partnership items is permitted; rather "the treatment of partnership items on the partnership return, under the

---

[4] The period for assessment of tax attributable to any partnership item remains open during the 150 day statutory period within which a petition may be filed (and, if a petition is filed, until the decision of the court becomes final) and for one year thereafter. *See* § 6229(d).

settlement, under the final partnership administrative adjustment, or under the decision of the court (whichever is appropriate) shall be conclusive." § 6230(c)(4).

The statutory scheme set forth above ensures TEFRA's goals of consistency and economy by channeling into a single proceeding all partners' disputes over readjusted partnership items. *See e.g. Chimblo*, 177 F.3d at 121.

Settlements with respect to partnership items alter the general framework set forth above. As of the date the IRS enters into a settlement agreement with a partner with respect to partnership items, those partnership items convert to nonpartnership items. *See* § 6231(b)(1)(C).[5] If, the settlement is a partial one and therefore covers only some partnership items, only the settled items convert to nonpartnership items. *See id.* ("...partnership items of a partner ... shall become nonpartnership items as of the date the Secretary ... enters into a settlement agreement with the partner *with respect to such items*. . . .") (emphasis added); *Weiner v. United States*, 389 F.3d 152, 156 n.2 (5th Cir. 2004).[6] If the settlement is entered into during the pendency of a proceeding challenging the FPAA, the settling partner, after the day the settlement is entered by the IRS, is no longer treated as a party to the proceeding with respect to settled partnership items but remains a party to the proceeding with respect to unsettled

[5] A nonpartnership item is defined as "an item which is (or is treated as) not a partnership item." § 6231(a)(4).

[6] For partial settlements entered into after August 5, 1997 (not effective at the time of the Pratis' settlement agreements), § 6229(f)(2) clarifies that the period of limitations for assessing tax attributable to the settled items is measured by the period of limitations applicable to the last disputed and unsettled partnership item. The enactment of this statute recognized the obvious; that partial settlements of partnership items were possible and occurring, and that partial settlements left partners and the IRS in a dispute over unsettled partnership items.

partnership items. *See* §§ 6226(c)(1), (d)(1)(A); 6231(b)(1)(C).[7]

The rules governing partial settlements are important to understanding the Pratis' settlements. As explicated below, two results follow from the partial nature of the Pratis' settlements and Ronald C. Prati's consequently remaining a party to the Tax Court proceedings. First, the FPAA sham determinations, having been undisturbed by the settlements, remained a contested partnership item in the Tax Court proceedings and, because not disturbed by the Tax Court's ultimate decisions, a valid basis for assessment of tax motivated interest. Second, Ronald C. Prati remained a party to the Tax Court proceedings to contest the unsettled nature of his partnerships' transactions - therefore the Tax Court's subsequent decisions attributing the partnerships' disallowed losses to sham transactions also supported the IRS' assessment.

Finally, the TEFRA scheme directs deference for a FPAA determination by permitting it

---

[7] Temporary regulations effective January 26, 1999 (not effective at the time of the Pratis' settlement agreements) "clarif[ied] that the partner remains subject to the unified audit procedures regarding the nonsettled items." 64 Fed. Reg. 3837 (1999); *see* Temp. Treas. Reg. § 301.6229(f)-1T(b) (1999) ("Pursuant to section 6226(c), a partner is a party to a partnership level judicial proceeding with respect to partnership items. When a partner settles partnership items, the settled partnership items convert to nonpartnership items under Section 6231(b)(1)(C) and will not be subject to any future or pending partnership level proceeding pursuant to section 6226(d)(1). The remaining unsettled partnership items, however, will remain subject to determination under partnership level administrative and judicial procedures. Consequently, any remaining unsettled items will be deemed to remain in dispute. Thus, the period for assessing settled items will be governed by the period for assessing the remaining unsettled items."). The Government agrees that the temporary regulation merely clarified existing law. Otherwise, a partial settlement would have precluded the settling partner from litigating unsettled partnership items: The settling partner would have been removed from being a party to the partnership level judicial proceeding pursuant to § 6226(d)(1), yet the unsettled items would not have converted to nonpartnership items, *see* § 6231(b)(1)(C), leaving the settling partner barred by § 7422(h) from litigating the unsettled and therefore unconverted partnership items in a separate refund suit. Accordingly, the United States views the Pratis' settlement agreements as subject to the law clarified by Temp. Treas. Reg. § 301.6229(f)-1T(b) (1999).

to support assessment unless settled or overturned by judicial decision. Thus, as set forth above, FPAA determinations support assessment where 1) a timely noticed taxpayer takes no action in response to an FPAA or takes untimely action in petitioning an FPAA to court, *see Genesis Oil*, 93 T.C. at 566, 2) while a readjustment proceeding in district court or the Court of Federal Claims remains in its infancy, *see* § 6225(a), or 3) after a judicial proceeding where the court does not readjust the FPAA's adjustments, for example, dismisses a petition for failure to comply with the jurisdictional deposit requirement of § 6226(e), *see* § 6226(h). Not surprisingly, in this regard, an FPAA determination leading to assessment fits comfortably within the larger body of law that presumes IRS' assessments are correct and burdens the taxpayer with the task of demonstrating them erroneous. *See e.g. United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 243 (2002) ("An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes. It is well established in the tax law than an assessment is entitled to a legal presumption of correctness - - a presumption that can help the Government prove its case against a taxpayer in court."); *Conway v. U.S.*, 326 F.3d 1268, 1278 (Fed. Cir. 2003) ("The ruling of the Commissioner of Internal Revenue enjoys a presumption of correctness and a taxpayer bears the burden of proving it to be wrong"); *see also Esposito v. United States*, - - Fed. Cl. - -, 2006 WL 800757, at *4 (Mar. 27, 2006) (citing cases). As applicable here, the assessment of tax motivated interest against plaintiffs is entitled to a presumption of correctness, and it is plaintiffs who bear the burden to show that they overpaid their tax liabilities, that is, in this case, that their underpayments were not attributable to sham transactions. Under TEFRA, however, plaintiffs cannot meet that burden in a partner level proceeding, because they would have to prove that both the FPAAs and the Tax Court were

incorrect in determining that their partnership deductions (and corresponding underpayments) were attributable to sham transactions. Such partnership level determinations are beyond the jurisdictional scope of the present partner proceeding.

**B. Section 7422(h) deprives the Court of subject matter jurisdiction to redetermine whether partnership transactions were shams.**

As the statutory and regulatory framework discussed above indicates, § 7422(h) prohibits individual refund suits from directly contesting partnership items as defined in § 6231(a)(3). *See Prochorenko v. United States*, 243 F.3d 1359, 1362-63 (Fed. Cir. 2001) (2-1 decision).[8] The partnership items at issue here were the IRS' FPAA determinations that the partnership transactions generating AVF's, CDV's, and ES-85's loss deductions were shams. Those determinations were not disturbed by the Pratis' settlements with the IRS and were confirmed by the Tax Court's subsequent decisions. The sham nature of the partnership transactions is therefore confirmed and valid support for the assessment of tax and interest against the Pratis. The Pratis were assessed tax motivated interest on the underpayment resulting from the agreed disallowance of approximately 40/45% of the Pratis' distributive share of AVF's, CDV's, and ES-85's loss deductions. The FPAA sham determinations support that assessment, because § 6621(c) imposed the higher tax motivated interest rate on any substantial

[8] As to the exceptions to the bar of § 7422(h), § 6228(b) pertains to administrative adjustment requests arising under § 6227, and § 6230 pertains to claims "arising out of erroneous computations, etc." § 6228 does not apply to plaintiffs' tax motivated interest claims. Similar to § 7422(h), § 6230(c)(4) bars a court in a § 6230(c) proceeding from making partnership level determinations and directs adherence, as relevant here, to the treatment of partnership items by an FPAA or judicial decision. Thus, the analysis set forth in this brief remains undisturbed, regardless whether a tax motivated interest dispute may be considered a claim arising under § 6230(c).

underpayment attributable to a sham transaction. Plaintiffs' challenge to the assessment of tax motivated interest contradicts the FPAAs and Tax Court decisions by claiming that the underpayment can not be attributed to a sham transaction. Granting plaintiffs' refund claim therefore would require the Court to violate § 7422(h) (or § 6230(c)) by determining a partnership item in the present partner level proceeding, and overturning the IRS' FPAA and Tax Court sham determinations. A more detailed analysis supporting the lack of jurisdiction to consider plaintiffs' claim with respect to tax motivated interest is set forth below:

**1. The determination that AVF's, CDV's, and ES-85's partnership transactions were shams was a determination of a "partnership item."**

Determining whether a partnership's transaction was a sham constitutes the determination of a "partnership item." *See River City Ranches #1 LTD. v. Commissioner*, 401 F.3d 1136, 1143-44 (9th Cir. 2005). A partnership item is defined as:

> any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for the purposes of [subtitle F], such item is more appropriately determined at the partnership level than at the partner level.

§ 6231(a)(3). The issue whether a partnership transaction is a sham is required to be taken into account for a partnership's taxable year under subtitle A, because it controls whether partnership losses derived from the transaction are allowable. Partnership losses are subtitle A partnership items. *See* §§ 701, 702; Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i) (1986). Thus, a sham partnership determination that disallows partnership losses impacts the individual partners' taxes. *See* §§ 701, 6221, 6222. Moreover, regulations prescribed by the Secretary provide that, for purposes of Subtitle F of the Internal Revenue Code, the nature of a partnership's

transactions is more appropriately determined at the partnership level.

*See* Treas. Reg. § 301.6231(a)(3)-1(b) (1986) ("The term 'partnership item' includes the ... legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. Examples of these determinations are: ... whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183...."). A sham determination with respect to partnership transactions, is analogous to a determination that partnership activities were not engaged in with the intent to make a profit for purposes of § 183. Finally, permitting challenges in partner level proceedings to an FPAA or Tax Court determination that a partnership transaction was a sham would upend Congress' purpose for enacting TEFRA - establishing procedures for determining all partnership items uniformly in a single judicial proceeding. Permitting such partner level challenges would promote multiple judicial proceedings on the same issue at great cost to the courts and with the risk of inconsistent decisions.[9] The FPAA determinations that the

---

[9] Tax Court authority is somewhat at odds with the Ninth Circuit's holding in *River City* that the sham nature of a partnership transaction is a partnership item when considering tax motivated interest under §§ 6621(c)(1), (c)(3)(A)(v). The Tax Court has held that it had no jurisdiction in a partnership level proceeding to determine whether FPAA adjustments are attributable to a tax motivated transaction for purposes of tax motivated interest. *See e.g. Affiliated Equip. Leasing II v. Commissioner*, 97 T.C. 575 (1991). The Tax Court reasoned under the circumstances of the partnership level proceedings before it that tax motivated interest in its entirety is not a partnership item but an affected item. *Id.*; *see also Field v. U.S.*, 328 F.3d 58, 59-60 (2nd Cir. 2003) (per curiam) (holding that interest assessed under 26 U.S.C. § 6621(c) is not a partnership item but not addressing whether a determination may be made at the partnership level regarding the nature of a partnership transaction that in turn inputs into the partner level interest analysis). Neither the Tax Court decision nor the *Field* decision address, however, the issue presented here - whether there is jurisdiction in a partner level proceeding to challenge an FPAA determination regarding the sham character of a partnership transaction. The United States urges the Court to conclude, notwithstanding *Affiliated* and progeny, that partnership level determinations regarding the nature of a partnership transaction are partnership

(continued...)

transactions giving rise to AVF's, CDV's, and ES-85's loss deductions were shams are therefore determinations of partnership items.

**2. The IRS' FPAA sham determinations constituted a valid basis for the assessment of tax motivated interest against the Pratis and may be challenged only in a partnership proceeding, not the present partner level proceeding.**

The FPAAs issued to AVF, CDV, and ES-85 determined, among other things, that the transactions in which those partnerships engaged were a series of sham transactions. The IRS therefore disallowed the partnerships' claimed ordinary loss deductions. As a matter of law, the FPAA determinations were valid and assessments of tax (and correspondingly interest) could be based on them unless *readjusted* by a court of competent jurisdiction or altered by settlement. *See* §§ 6225(a), 6226(a), (f), 6229(d), 6231(b)(1)(C). The Tax Court not only did not readjust the FPAA sham determinations, it upheld them, concluding that the disallowed losses of AVF, CDV, and ES-85 were attributable to shams within the meaning of § 6621(c)(3)(A)(v). The Pratis concede that their settlement agreements did not cover the FPAA sham determinations. The FPAA sham determinations therefore continued as support for the assessment of tax motivated interest against the Pratis after the execution of their settlement agreements.

Six months after the Pratis' settlements with the IRS were accepted, the Pratis were assessed tax motivated interest on the underpayment resulting from the agreed disallowance of approximately 40/45% of their distributive share of AVF, CDV, and ES-85 loss deductions. Tax motivated interest was governed by former § 6621(c). The statute imposed an interest rate of

---

[9] (...continued)
items that impact the tax motivated interest analysis notwithstanding that the provision for tax motivated interest in § 6621(c) is not a partnership item.

120% of the ordinary statutory underpayment rate on "any substantial underpayment attributable to tax motivated transactions." § 6621(c)(1). A "tax motivated transaction", in turn, was defined to include five statutory and additional regulatory transactions. *See* § 6621(c)(3)(A); Temp. Treas. Reg. § 301.6621-2T, Q-4, A-4 (1984). The definition relevant to the present case was "any sham or fraudulent transaction." § 6621(c)(3)(A)(v).[10] The assessment of tax motivated interest against the Pratis accordingly was supported by the FPAA sham determinations.

Since the FPAA sham determinations are partnership items under § 6231(a)(3), they cannot be disturbed in an individual partner level refund suit like the present one. *See* §§ 6230(c)(4), 7422(h); *Prochorenko*, 243 F.3d at 1362-63. Rather, challenges to such determinations could only have been raised in the Tax Court proceedings *Agri-Venture Fund*, *Canyon Desert Vineyards*, and *Emperor Seedless-85*, brought pursuant to § 6226. To permit any

[10] Section 6621(c) was originally enacted as part of the Tax Reform Act of 1984 as § 6621(d), *see* Tax Reform Act of 1984, Pub. L. No. 98-369, § 144(a), 98 Stat. 494, 682-83 (1984), and made applicable to interest accruing after December 31, 1984, *see id.* at § 144(c). The enactment was expected to assist the Tax Court in managing its docket with respect to tax shelter cases and to assist the IRS in settling such cases. *See* H.R. Conf. Rep. No. 98-861, at 985 (1984), *reprinted in* 1984-3 C.B. Vol. II at 239. The Tax Reform Act of 1986 made three amendments to the section: 1) § 6621(d) was re-designated as § 6621(c), *see* Tax Reform Act of 1986, Pub. L. No. 99-514, § 1511(c)(1)(A), 100 Stat. 2085, 2744 (1986); 2) the wording of subsection (c)(1) was modified slightly, *see id.* at § 1511(c)(1)(B) & (C); and 3) there was added to subsection (c)(3)(A), which defines tax motivated transactions, the clause "(v) any sham or fraudulent transaction," *see id.* at § 1535(a). The amendments were intended to be in accord with the legislative intent in originally enacting § 6621(d). *See* H.R. Conf. Rep. No. 99-841, Vol. II, at II-796 (1986), *reprinted in* 1986-3 C.B. Vol. IV at 796. The first two amendments were made applicable to interest accruing after December 31, 1986, *see* Tax Reform Act of 1986 at § 1511(b), and the third to interest accruing after December 31, 1984, *see id.* at § 1535(b). The third amendment was not to be applied to any underpayment with respect to which there was a final court decision before enactment of the act. *See id.* Section 6621(c) was repealed in 1989 for interest accruing after December 31, 1989. *See* Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, § 7721(b) & (d), 103 Stat. 2106, 2399-2400.

such challenge here would violate Congress' purpose to channel challenges to partnership items into a single judicial proceeding, as it would invite repetitive litigation of partnership items in numerous, individual partner-level proceedings with potentially unequal treatment among partners of the same partnership.

### 3. The Tax Court sham determinations constituted a valid basis for the assessment of tax motivated interest against the Pratis and, under the doctrine of *res judicata*, are binding on plaintiffs.

Plaintiffs also are bound by *res judicata* by the Tax Court's decisions that the disallowed losses of the partnerships were attributable to sham transactions. Prior to settlement, Ronald C. Prati was a party to those proceedings by statute, § 6226(c). Because plaintiffs' settlement agreements were partial, Prati remained a party to those proceedings after settlement as to all unsettled items, including whether the partnerships' transactions were shams. When the Tax Court subsequently determined that the partnerships' transactions were, indeed, shams, Prati became bound like any other party by the decision. Plaintiffs are thus barred by the doctrine of *res judicata* from claiming that their disallowed losses are not attributable to sham transactions.

"Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979).[11] A finding of res judicata requires "'that: (1) the court's prior decision must be a valid and final judgment, (2) the suit before the court must involve the same claim or cause of action as in the prior decision, (3) the prior decision must have been made on the merits of the case, and (4) the same parties must be involved in both

---

[11] The Supreme Court has specifically held that *res judicata* is applicable in federal tax cases. *Commissioner v. Sunnen*, 333 U.S. 591, 598-99 (1948).

cases.'" *Lyons v. U.S.*, 45 Fed. Cl. 399, 403 (1999) (quoting *Mosca v. United States*, 224 Ct. Cl. 678, 679, 650 F.2d 288 (1980)). "Additionally, the Supreme Court has attached significant importance in making sure the nonmovant has had a full and fair opportunity to litigate the claim below." *Id.* (quotation omitted).

The first requirement is satisfied, for the Tax Courts' July 19, 2001 decisions were valid and final judgments. Notice partners of AVF, CDV, and ES-85 filed readjustment petitions pursuant to § 6226(b). Thus, under § 6226(f), the Tax Court had "jurisdiction to determine all partnership items of [each] . . . partnership for the partnership taxable year to which the [FPAA] relates and the proper allocation of such items among the partners." Pursuant to § 6226(g), the Tax Court's decisions were valid and subject to review just as any other decision of the Tax Court:

> Any determination by a court under this section shall have the force and effect of a decision of the Tax Court . . . and shall be reviewable as such.

Finally, under § 7483, the decisions became final 90 days after entered, *i.e.*, on October 17, 2001.

The second requirement – that both suits must involve the same claim or cause of action – is also satisfied. In comparing claims, the Federal Circuit has endorsed a transactional test. *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 479 (Fed. Cir. 1991). The test focuses on whether two claims are based on a "common nucleus of operative facts," not whether the relief requested or legal theories asserted are the same. *Lyons*, at 403-404.

As regards tax motivated interest, both the claims made in *Agri-Venture-Fund*, *Canyon Desert Vineyards*, and *Emperor Seedless-85* and plaintiffs' claims here rest on identical factual grounds, that the partnerships' disallowed deductions were not generated by sham transactions.

The FPAAs issued to AVF, CDV, and ES-85 disallowed the losses reported on the partnerships' 1985 return, and asserted as one ground that the partnerships' activities were shams. Notice partners filed readjustment petitions with the Tax Court, specifically contesting the sham determinations. Under § 6226(f), the Tax Court had jurisdiction to determine the partnership items of AVF, CDV, and ES-85, including whether their loss generating activities were shams. The Tax Court's decisions disallowed a portion of the deductions disallowed by the FPAAs and attributed the disallowed deductions to tax motivated transactions for purposes of § 6621(c).

Plaintiffs' claim for refund of tax motivated interest in the present proceeding is identical to the claim at issue before the Tax Court. Plaintiffs contend that the partnership losses disallowed by their settlement agreements cannot be attributed to tax motivated sham transactions. While their legal theory they now advance is different than that asserted in the Tax Court - they contend the Court has no jurisdiction to consider the merits of the sham determinations whereas the merits were at issue in the Tax Court - the identical factual nucleus is involved: the nature of the partnerships' transactions that gave rise to the partnerships' disallowed deductions. The Tax Court decided the issue in the Commissioner's favor, and plaintiffs cannot avoid that ruling here.

The decisions of the Tax Court in *Agri-Venture-Fund*, *Canyon Desert Vineyards*, and *Emperor Seedless-85*, were decisions on the merits, thus satisfying the third requirement of *res judicata*. The decisions were entered on July 19, 2001, pursuant to motions for entry of decision filed April 13, 2001. The motions reflect the agreement of the Commissioner and the tax matters partner of AVF, CDV, and ES-85 to be bound by the July 19, 2001 decisions, including the attributing of deductions disallowed thereunder to sham transactions for purposes of

§ 6621(c). Tax decisions based on an agreement of the parties are *res judicata*. *See U.S. v. International Bldg. Co.*, 345 U.S. 502, 506 (1953); *Erickson v. U.S.*, 159 Ct. Cl. 202, 217, 309 F.2d 760, 768 (1962). Accordingly, the decisions were merits based determinations on the unsettled sham issue and with respect to which plaintiff Ronald C. Prati remained a party.

The final requirements for application of *res judicata* are that the same parties must be involved in both cases and have had a full and fair opportunity to litigate in the prior proceeding. By statute, Ronald C. Prati was a party in *Agri-Venture-Fund*, *Canyon Desert Vineyards*, and *Emperor Seedless-85*, with full rights to participate and litigate the sham determinations. § 6226(c)(1) and (2). The settlement agreements did not divest him of his party status pursuant to § 6226(d)(1)(A), as he retained an interest in the unsettled sham determination. Therefore, the final requirement for application of *res judicata* is met in this case.

**4. Since the Court lacks jurisdiction to determine partnership items and overturn the FPAA and Tax Court sham partnership item determinations, and plaintiffs' claim that they are not liable for tax motivated interest would require the Court to do so, plaintiffs' claim must be dismissed**.

Plaintiffs allege three grounds for recovery of tax motivated interest. First, alluding to § 6621(c), plaintiffs allege that the assessment of tax motivated interest against them was improper because their settlement agreements did not include any agreement that the deduction adjustments included therein (resulting in their underpayment) were "attributable to tax motivated transactions." *See* Compl. [Doc. #1] ¶ 7, 12C. Second, plaintiffs also argue that the FPAAs underlying the settlements do not establish that the disallowed loss deductions were attributable to tax motivated transactions, since only some of the FPAA determinations

supporting disallowance also support the attribution conclusion. *See id.* ¶ 12D; *see also* Mot. [Doc. #45] at pp. 14-24. Third, and in the alternative, plaintiffs suggest they will demonstrate that their disallowed loss deductions were not attributable to any sham transaction. *See* Compl. [Doc. #1] ¶ 12E.

Common to each of plaintiffs' three allegations is the contention that their underpayment can not be attributed to a sham transaction. As an initial matter, this contention improperly attempts to shift the burden of proof from plaintiffs to defendant to prove that plaintiffs' underpayment was so attributable. Rather, as noted above, it is the plaintiffs' burden in this tax refund suit to demonstrate the IRS' presumed correct assessment of tax motivated interest was incorrect - thus, to demonstrate that their underpayment was not attributable to sham partnership transactions. They are not permitted under TEFRA to do that in this proceeding but were required to do so in the Tax Court proceedings, in which Ronald C. Prati was a party and the sham determination was being litigated.

In addition, plaintiffs' contention directly attacks the FPAAs' and the Tax Court's determinations that the activities giving rise to the disallowed loss deductions of AVF, CDV, and ES-85 (and plaintiffs' underpayments) were sham transactions. Such an attack is not permitted in this proceeding, and plaintiffs do not address at all the binding effect of the Tax Court's decisions, but exclusively focus on the FPAA determinations. Plaintiffs' three theories are addressed now *seriatim*.

First, plaintiffs allege that the Pratis' settlement agreements did not cover whether AVF's, CDV's, and ES-85's disallowed deductions were attributable to sham transactions. This allegation is harmful, not helpful, to their cause for, by their own admission, therefore the FPAA

sham determinations remained partnership items and never converted to nonpartnership items. *See* § 6231(b)(1)(C); *Weiner*, 389 F.3d at 156 n.2. And, in law, Ronald C. Prati remained party to the partnership proceedings in the Tax Court in which AVF, CDV, and ES-85 were contesting, among other things, the FPAA sham determinations. *See* §§ 6226(c)(1), (d)(1)(A); 6231(b)(1)(C); *see also supra* note 8. Thus, the Pratis' settlements did not readjust and otherwise had no effect on the FPAA sham determinations, and the FPAA and Tax Court sham partnership item determinations both support the IRS' assessment of tax motivated interest.[12]

---

[12] Contrary to plaintiffs' apparent briefing position, *see* Mot. [Doc. #45], the fact that the Pratis' settlement agreements disallowed only a portion of the AVF, CDV, and ES-85 deductions disallowed by the FPAAs does nothing to impact the applicability of the FPAA and Tax Court sham determinations to such portion. *Compare* Mot. [Doc. #37] App. B, Exs. 2 at B26, 3 at B29, 4 at B31 *with id.* App. B, Exs. 6 at B81, 10 at B121, 15 at B165. Both the amount of a loss deduction and the sham nature of a partnership transaction underlying it are partnership items. The former was settled (and thus the FPAAs were readjusted in that respect) but the latter, as conceded by plaintiffs, was not or disturbed by judicial decision. *See* Compl. [Doc. #1] ¶¶ 7, 12C; Resp. [Doc. #48] ¶¶ 17, 21; Mot. [Doc. #37] App. B, Exs. 2-4. The FPAA sham determinations thus remained as a matter of law a valid basis for the assessment of tax motivated interest on the underpayment resulting from the portion of deductions disallowed by the settlement. Accordingly, the IRS so computed plaintiffs' liability for tax motivated interest and assessed plaintiffs. *See* Mot. [Doc. #45] App. B, Exs. 15, 19; Resp. [Doc. #8] ¶¶ 25.

As explained by Jerry Gossett, who participated in negotiating AMCOR settlements on behalf of the IRS, the IRS' agreement to reduce the disallowed losses determined in the FPAA derived from the IRS' belief that AMCOR partners had agreed, as a term of settlement, to pay tax motivated interest on underpayments. Thus, for administrative efficiency, the IRS, in calculating the adjustments it set forth in the schedules attached to AMCOR (including the Pratis') Form 870-P(AD) settlement agreements, offset the FPAA's total disallowance of first year partnership losses by an amount that credited partners for taxes they had already paid on partnership income for years succeeding the first year. Such income merely recaptured pursuant to §§ 447/481 deductions taken in the first year that were being disallowed under the settlements. From an administrative standpoint, this allowed the IRS to avoid opening and adjusting multiple years of partnership returns, and reviewing thousands of refund claims from partners for multiple years. Partners benefitted too. They would not have to claim, and would not receive, refunds for the later income years. In the IRS' view, the offset was an administrative tool and did not prevent attributing the un-offset disallowed portion of losses to sham partnership transactions. *See Scuteri*, Fed. Cl. 01-358 T, Resp. [Doc. #60] App. A at A6-A7 ¶¶ 11, 14, A8-A10 ¶¶ 19-21;

(continued...)

Second and similarly, plaintiffs allege that the independent multiple FPAA determinations, only some of which support the conclusion that AVF's, CDV's, and ES-85's loss deductions were attributable to sham transactions, require concluding that whether such deductions were attributable to sham transactions has never been established. But it is nonsense to claim that the support in an FPAA for determinations (in this case, that transactions are shams) is eliminated, because the FPAA also discussed other matters that did not bear on those determinations. As outlined above, the FPAA sham determinations with respect to AVF, CDV, and ES-85 are partnership item determinations that remain valid unless readjusted by a court or altered by settlement. Neither has occurred. Thus, the TEFRA scheme directs deference to the undisturbed FPAA sham determinations, and it is of no moment that another valid FPAA determination does not support the assessment of tax motivated interest. Plaintiffs concede that the Pratis' settlements did not cover the FPAA sham determinations and thus they cannot now in this partner level forum seek readjustment of sham determinations that support imposition of tax motivated interest.[13] In addition, the Tax Court decisions explicitly attribute AVF's, CDV's, and

---

[12] (...continued)
*see generally id.* at A1-A75; *see also* Resp. [Doc. #48] ¶¶ 23, 24, Exs. A at A10-A11, A14-15, B at A21-A22, A25-A26, C at A32-A33, A36-A37.

[13] The Fifth Circuit's opinion in *Weiner*, 389 F.3d at 159-63, is supportive of the taxpayer's argument, but on this point was not presented with, and therefore did not address, our current jurisdictional and *res judicata* arguments regarding tax motivated interest. The present arguments are based on the partialness of Pratis' settlements and the effect thereof under TEFRA. In addition, *Weiner* fails to defer, as required under TEFRA, to an FPAA determination that is not changed by judicial decision or settlement. Not surprisingly, the cases on which the Fifth Circuit relied, *Heasley v. Commissioner*, 902 F.2d 380 (5th Cir. 1990), *Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988), *Schachter v. Commissioner*, 67 T.C.M. (CCH) 3092 (1994), *Rogers v. Commissioner*, 60 T.C.M. (CCH) 1386 (1990), *McCrary v. Commissioner*, 92 T.C. 827 (1987), do not arise out of the context of a TEFRA partnership proceeding. Finally, the (continued...)

ES-85's loss deductions to sham partnership transactions for purposes of § 6621(c).

Third, plaintiffs may not be permitted to litigate here whether the Pratis' underpayment was attributable to the sham activities of AVF, CDV, and ES-85, by presenting evidence of motive for investing in either partnership. The sham nature of a partnership transaction is a partnership item and cannot be litigated in a partner level proceeding pursuant to § 7422(h) (or § 6230(c)(4)). The Sixth, Eighth, and Tenth Circuits all agree and have held that whether a partnership transaction was a sham for purposes of § 6621(c)(3)(A)(v) does not inquire into the investment motivation of an individual partner. Rather, it focuses on the objective nature of the partnership's transaction (at least where a transaction has been determined or conceded as an objective matter to be a sham). *See Thompson v. United States*, 223 F.3d 1206, 1212-1213 (10th Cir. 2000); *Thomas v. United States*, 166 F.3d 825, 832-34 (6th Cir. 1999); *Chakales v. Commissioner*, 79 F.3d 726, 727-29 (8th Cir. 1996); *see also Thomas*, 166 F.3d at 834-35 (Boggs, J., concurring). The sensible basis for this conclusion is that the plain language of §§ 6621(c)(1), (c)(3)(A)(v) defines "tax motivated transaction" as "any sham transaction" and this definition focuses on transactional events and does not provide any grounds for inquiry into an individual taxpayer's motivation. Here, the FPAA sham determinations (vis a vis the activities of AVF, CDV, and ES-85) have never been readjusted by a court or altered by settlement. In addition, the Tax Court determined that those partnerships' transactions were shams. Therefore, the

---

[13] (...continued)
*Weiner* court was concerned with judicial economy. But that concern does not apply to our present arguments. We do not contend that an additional round of litigation should be conducted at the partner level to decide whether partnership transactions were shams. Rather, we maintain that partners who settle only some of their partnership items are subject to the law of partial settlements, and, as applied here, were properly assessed tax motivated interest. No more litigation is needed here to establish the basis for the imposition of tax motivated interest.

assessments of interest under § 6621(c) against the Pratis' cannot be affected as a matter of law by Ronald C. Prati's individual motivation for becoming a limited partner but only by an attack on the FPAA and Tax Court sham determinations, an attack on partnership items not permitted here.[14]

[14] In circumstances substantially similar if not identical to the present case, the district court in *Weiner v. United States*, 255 F.Supp.2d 673, 678-88 (S.D.Tex. 2002), *aff'd on other grounds by* 389 F.3d 152, reached the opposite conclusion. The *Weiner* district court relied on *Durrett v. Commissioner*, 71 F.3d 515, 517 (5th Cir. 1996), *Chamberlain v. Commissioner*, 66 F.3d 729 (5th Cir. 1995), *Lukens v. Commissioner*, 945 F.2d 92 (5th Cir. 1991), and *Heasley v. Commissioner*, 902 F.2d 380 (5th Cir. 1990), to conclude that an individual's profit motive for investing in a partnership as a limited partner was relevant to the imposition of interest under § 6621(c), notwithstanding a prior FPAA determination that the partnership's activities were sham transactions. The *Weiner* court's analysis is flawed, because the underlying case law on which it rests is unsound and does not arise from a TEFRA unified partnership proceeding context. First, none of *Durrett*, *Chamberlain*, *Lukens*, or *Heasley* construes the plain language of § 6621 (c)(3)(A)(v) ("sham transaction") and therefore all do not recognize as a matter of statutory construction that the language provides no basis for an analysis of subjective investment motive. Second, *Heasley* held that the Tax Court should consider individual intent in the tax motivated interest analysis under § 6621(c) based on an analysis of the meaning of Temp. Treas. Reg. § 301.6621-2T, Q-4 (1984). *See Heasley*, 902 F.2d at 385-86. But that temporary regulation specifies a different type of tax motivated transaction than the one at issue here, § 6621(c)(3)(A)(v), *see Copeland v. Commissioner*, 290 F.3d 326, 331-32 (5th Cir. 2002), and therefore the *Heasley* case should have been inapplicable to the *Weiner* district court's analysis. *See Chakales*, 79 F.3d at 728. Attendantly, *Lukens* suggests by citation to *Heasley* that intent is relevant to the analysis of "sham transaction" under § 6621(c)(3)(A)(v), *see Lukens*, 945 F.2d at 99. *Heasley*, however, held no such thing. Third, *Lukens*, without any attempt at statutory analysis of § 6621(c)(3)(A)(v), defined "sham transaction" by conflation of two tax motivated transaction definitions, § 6621(c)(3)(A)(v) and Temp. Treas. Reg. § 301.6621-2T, Q-4 (1984): "a sham or fraudulent transaction includes transactions that were not entered into for profit and are without economic substance," *Lukens*, 945 F.2d at 99. The conflation is revealed by reference to the authority cited as the basis for the observation, *Patin v. Commissioner*, 88 T.C. 1086, 1129 (1987), which concluded that its having found the transactions under review to be economic shams satisfied two definitions of a tax motivated transaction, "sham transaction," § 6621(c)(3)(A)(v), and "transaction not entered into for profit." Temp. Treas. Reg. § 301.6621-2T, Q-4 (1984). *Chamberlain* and *Durrett* in turn invoke the same flawed and conflated definition used in *Lukens*. Fourth, none of *Heasley*, *Lukens*, *Chamberlain*, or *Durrett* arose under TEFRA's unified procedures. This observation answers the *Weiner* district court's attempt to distinguish *Thompson*, 223 F.3d 1206 and *Thomas*, 166 F.3d 825 on the grounds that

(continued...)

The foregoing analysis of plaintiffs' allegations does not mean that the Court has no jurisdiction over tax motivated interest in a partner level proceeding. Rather, tax motivated interest can be an "affected item," a partner-level item that is affected by partnership items such as sham transaction determinations, *see* § 6231(a)(5), and a computational adjustment, *see* § 6231(a)(6); *Olson v. United States*, 172 F.3d 1311, 1315 n.1, 1318 and n.2 (Fed. Cir. 1999); Temp. Treas. Reg. § 301.6231(a)(6)-1T(b) (1987) (applicable here); Treas. Reg. § 301.6231(a)(6)-1(b) (applicable to partnership taxable years beginning on or after October 4, 2001). As relevant here, either characterization would permit the Court to address partner specific factual issues related to the assessment of tax motivated interest against a partner; for example, whether the partner's underpayment was "substantial", or whether the assessment was made within the prescribed period of time for assessing interest after conclusion of a partnership level proceeding. Plaintiffs raise no partner specific arguments, however. They focus only on overturning a partnership item determination, the result of which, if permitted, would have implications for every partner in AVF, CDV, and ES-85. Section 7422(h) (or § 6230(c)(4)) therefore prohibits the consideration of plaintiffs' claims that they are not liable for tax motivated interest.

---

[14] (...continued)
the partners in those cases conceded the relevant partnership transactions were shams. *See Weiner*, 255 F. Supp. 2d at 679 n.9. This is so because an FPAA determination of sham transaction functions as the equivalent of a concession - both establish the transactions at issue as shams. Coupled with recognition that inquiry into individual intent is obviated under § 6621(c)(3)(A)(v) at a minimum where a valid objective sham determination has been made, the TEFRA scheme thus precludes revisiting determination of that partnership item in a partner level proceeding.

**CONCLUSION**

For the foregoing reasons, the United States requests the Court dismiss the portion of Count One of Plaintiff's Second Amended Complaint challenging the propriety of the assessment of tax motivated interest.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

June 2, 2006

## APPENDIX A

**Internal Revenue Code of 1986 (26 U.S.C.):**

### SEC. 6221. TAX TREATMENT DETERMINED AT PARTNERSHIP LEVEL

Except as otherwise provided in this subchapter, the tax treatment of any partnership item shall be determined at the partnership level.

### SEC. 6222(a). PARTNER'S RETURN MUST BE CONSISTENT WITH PARTNERSHIP RETURN....

**(a) In General.-** A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return.

### SEC. 6223(a). NOTICE TO PARTNERS OF PROCEEDINGS

**(a) Secretary Must Give Partners Notice of Beginning and Completion of Administrative Proceedings.-** The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice of-

(1) the beginning of an administrative proceeding at the partnership level with respect to a partnership item, and

(2) the final partnership administrative adjustment resulting from any such proceeding.

A partner shall not be entitled to any notice under this subsection unless the Secretary has received (at least 30 days before it is mailed to the tax matters partner) sufficient information to enable the Secretary to determine that such partner is entitled to such notice and to provide such notice to such partner.

### SEC. 6226. JUDICIAL REVIEW OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENTS

**(a) Petition by Tax Matters Partner.**–Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable

year with–

(1) the Tax Court,

(2) the district court of the United States for the district in which the partnership's principal place of business is located, or

(3) the Claims Court.

**(b) Petition by Partner Other Than Tax Matters Partner.**-

(1) In General.–If the tax matters partner does not file a readjustment petition under subsection (a) with respect to any final partnership administrative adjustment, any notice partner (and any 5-percent group) may, within 60 days after the close of the 90-day period set forth in subsection (a), file a petition for a readjustment of the partnership items for the taxable year involved with any of the courts described in subsection (a).

* * * * *

**(c) Partners Treated as Parties.**–If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year–

(1) each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and

(2) the court having jurisdiction of such action shall allow each such person to participate in the action.

**(d) Partner Must Have Interest In Outcome.-**

(1) In Order To Be Party To Action.- Subsection (c) shall not apply to a partner after the day on which -

(A) the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events dexcribed in subsection (b) or section 6231, or

(B) the period within which any tax attributable to such partnership items may be assessed against that

partner expired.

* * * * *

**(f) Scope of Judicial Review.**– A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates and the proper allocation of such items among the partners.

* * * * *

**SEC. 6229. PERIOD OF LIMITATIONS FOR MAKING ASSESSMENTS.**

**(a) General Rule.**–Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of–

(1) the date on which the partnership return for such taxable year was filed, or

(2) the last day for filing such return for such year (determined without regard to extensions).

* * * * *

**(d) Suspension When Secretary Makes Administrative Adjustment.-** If notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in subsection (a)(as modified by other provisions of this section) shall be suspended-

(1) for the period during which an action may be brought under section 6226 (and, if a petition is filed under section 6226 with respect to such administrative adjustment, until the decision of the court becomes final), and

(2) for 1 year thereafter.

* * * * *

**(f) Special Rules.-**[15]

(1) Items Becoming Nonpartnership Items.- If, before the expiration of the period otherwise provided in this section for assessing any tax imposed by subtitle A with respect to the partnership items of a partner for th partnership taxable year, such items become nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, the period for assessing any tax imposed by subtitle A which is attributable to such items (or any item affected by such items) shall not expire before the date with is 1 year after the date on which the items become nonpartnership items. The period described in the preceding sentence (including any extension period under this sentence) may be extended with respect to any partner by agreement entered into by the Secretary and such partner.

(2) Special Rule For Partial Settlement Agreements.- If a partner enters into a settlement agreement with the Secretary with respect to the treatment of some of the partnership items in dispute for a partnership taxable year but other partnership items for such year remain in dispute, the period of limitations for assessing any tax attributable to the settled items shall be determined as if such agreement had not been entered into.

* * * * *

**SEC. 6231. DEFINITIONS AND SPECIAL RULES.**

**(a) Definitions.–For purposes of this subchapter–**

* * * * *

(3) Partnership item.–The term “partnership item” means, with respect to a partnership, any item required to be taken into account for the partnership’s taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

* * * * *

---

[15] § 6229(f)(2) was not effective at the time of the Pratis’ settlement agreements.

**(b) Items Cease to be Partnership Items in Certain Cases.–**

(1) In General.–For purposes of this subchapter, the partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date–

* * * * *

(C) the Secretary enters into a settlement agreement with the partner with respect to such items, or

* * * * *

**SEC. 7422. CIVIL ACTIONS FOR REFUND.**

* * * * *

**(a) No Suit Prior to Filing Claim for Refund.**–No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

* * * * *

**(h) Special Rule For Actions With Respect to Partnership Items.**–No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).

* * * * *

**TREASURY REGULATIONS ON INCOME TAX (26 C.F.R.)**

§ **301.6229(f)-1T. Special rule for partial settlement agreements (temporary).**[16]

**(a)** ***In general*.** If a partner enters into a settlement agreement with the Service with respect to the treatment of some of the partnership items in dispute for a partnership taxable year, but other partnership items for such year remain in dispute, the period of limitations for assessing any tax attributable to the settled items shall be determined as if such agreement had not been entered into.

**(b)** ***Other items remaining in dispute.*** Pursuant to section 6226(c), a partner is a party to a partnership level judicial proceeding with respect to partnership items. When a partner settles partnership items, the settled partnership items convert to nonpartnership items under section 6231(b)(1)(C) and will not be subject to any future or pending partnership level proceeding pursuant to section 6226(d)(1). The remaining unsettled partnership items, however, will remain subject to determination under partnership level administrative and judicial procedures. Consequently, any remaining unsettled items will be deemed to remain in dispute. Thus, the period for assessing settled items will be governed by the period for assessing the remaining unsettled items. [T.D. 8808, 64 FR 3839, Jan. 26, 1999]

**§ 301.6231(a)(3)-1. Partnership items.**–

* * * * *

**(b)** ***Factors that affect the determination of partnership items.***–The term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. Examples of these determinations are: The partnership's method of accounting, taxable year, and inventory method; whether an election was made by the partnership; whether partnership property is a capital asset, section 1231 property, or inventory; whether an item is currently deductible or must be capitalized; whether partnership activities have been engaged in

[16] § 301.6229(f)-1T was not effective at the time of the Pratis' settlement agreements.

with the intent to make a profit for purposes of section 183; and whether the partnership qualifies for the research and development credit under section 30.