**No. 02-060 T**
(Judge Block)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

RONALD C. PRATI and MARY G. PRATI,

PLAINTIFFS

VS.

UNITED STATES OF AMERICA,

DEFENDANT

---

**PLAINTIFFS' BRIEF IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO THE MOTION OF THE UNITED STATES FOR PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINT**

---

THOMAS E. REDDING
TERESA J. WOMACK
SALLIE W. GLADNEY
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs

# TABLE OF CONTENTS


Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Response to the Government's Factual Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2. The Government's Grounds for Dismissal are Based on a False Predicate . . . . . . . . . . . . . . . 9

3. Analysis Under TEFRA's Statutory Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

a. In General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

b. Specific Provisions Applicable to This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i. "Partnership Item" is a Defined Term, Restricted By Statute . . . . . . . . . . . . . . . . . . 13

ii. Determinations of Partnership Items and Nonpartnership Items are Mutually Exclusive . . . . . . . . . . . . . . . . . . . . . . . . . 14

iii. For the Tax Years at Issue §6224(c) Settlements Are Comprehensive Not "Partial" . 15

(1) *Treas. Reg.§301.6224(c)-3T(b) Mandates that These §6224(c) Partnership Item Settlements Are Comprehensive, Not "Partial"* . 16

(2) *Treas. Reg. §301.6229(f)-1T(b) and the 1997 Amendment to §6229(f) are Irrelevant Here* . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

(3) *The History of the 1997 through 1999 Amendments Supports Plaintiffs' Position* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

(4) *In the Case at Bar, the Parties Intended that Plaintiffs' §6224(c) Partnership Item Settlements Be Comprehensive, Not "Partial"* . . . . . . . . . . 18

c. Congressional Intent Regarding TEFRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

d. Under TEFRA's Statutory Scheme, This Court Has Jurisdiction to Address the Plaintiffs'§6621(c) Claim in This Partner-Level Refund Case . . . . . . 20

i. The Plaintiffs' Refunds Are Not "Attributable to" Partnership Items . . . . . . . . . . . . . 21

ii. Violation of the Plaintiffs' Due Process Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

4. Arguments Specific to Section 6621(c) Penalty Interest . . . . . . . . . . . . . . . . . . . . . . . . . . 25

a. Plaintiffs Were Not Bound By the Terms as to Economic Substance in the Later Agreed Decisions in the Tax Court . . . . . . . . . . . . . . . . . . . . 25

b. Administrative and Judicial History of the §6621(c) Penalty Interest Claim . . . . . . . . . . 27

c. §6621(c) is an Affected Item - Not a Partnership Item . . . . . . . . . . . . . . . . . . . . . . . . 30

d. The Government's Sham Transaction Allegation is an Affected Item . . . . . . . . . . . . . . . 32

e. Introduction and Survey of Sham Transaction Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

f. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# TABLE OF AUTHORITIES

**Cases**

*AD Global Fund v. United States,* 67 Fed.Cl. 657 (2005) . . . . . . . . . . 12
*Adams v. Carlson*, 488 F.2d. 619 (7th Cir. 1973) . . . . . . . . . . 24
*Affiliated Equip. Leasing II v. C.I.R.*, 97 T.C. 575 (1991) . . . . . . . . . . 14, 31
*Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363 (Fed. Cir. 2004) . . . . . . . . . . 23
*Ames, et al. v. C.I.R.*., 54 T.C.M. 517 (1986),
*aff'd sub nom* as *Lukens v. C.I.R.*, 945 F.2d 92 (5th Cir. 1991) . . . . . . . . . . 38
*Atkins v. United States*, 556 F.2d 1028 (Ct.Cl. 1977) . . . . . . . . . . 24
*Barlow v. C.I.R.,* 80 T.C.M. (CCH) 632 (2000) . . . . . . . . . . 31, 33
*Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852 (5th Cir. 2000) . . . . . . . . . . 23
*Beall v. United States*, 336 F.3d 419 (5th Cir. 2003) . . . . . . . . . . 21
*Benedict v. Sec. of Dept. of H.H.S.*, 29 Fed.Cl. 587 (1993) . . . . . . . . . . 24
*Bill Johnson's Restaurants v. NLRB*,
461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) . . . . . . . . . . 23
*Boddie v. Conn*., 401 U.S. 371 (1971) . . . . . . . . . . 24
*Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) . . . . . . . . . . 23
*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) . . . . . . . . . . 19
*Bray v. United States*, 785 F.2d 989 (Fed.Cir. 1986) . . . . . . . . . . 6
*Brinkerhoff-Faris Trust & Savs. Co. v. Hill*,
281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930) . . . . . . . . . . 24
*Broadcast Music, Inc. v. M.T.S. Enterprises, Inc*., 811 F.2d 278 (5th Cir.1987) . . . . . . . . . . 24
*Burlington Truck Lines, Inc. v. United States*,
371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) . . . . . . . . . . 19
*Calif. Motor Transp. v. Trucking Unlimited*,
404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) . . . . . . . . . . 23
*Callaway v. C.I.R.*, 231 F.3d 106 (2nd Cir. 2000) . . . . . . . . . . 11, 13, 14, 20
*Casebeer v. C.I.R.*, 909 F.2d 1360 (9th Cir. 1990) . . . . . . . . . . 35
*Chamberlain v. C.I.R.*, 66 F.3d 729 (5th Cir. 1995) . . . . . . . . . . 33, 34, 37-39
*Chambers v. Baltimore & Ohio RR Co.*,
207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907) . . . . . . . . . . 23
*Coltec Industries, Inc. v. United States*,
___ F.3d ___, 2006 WL 1897077 (Fed. Cir., July 12, 2006) . . . . . . . . . . 35
*Compaq Computer Corp. v. C.I.R.*, 77 F.3d 778 (5th Cir. 2001) . . . . . . . . . . 35
*Copeland v. C.I.R.*, 290 F.3d 326 (5th Cir. 2002) . . . . . . . . . . 36, 39, 40
*Data Gen. Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996) . . . . . . . . . . 20
*Davis v. Wakelee,* 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed.578 (1895) . . . . . . . . . . 20
*DeWitt v.Pail*, 366 F.2d 682 (9th Cir. 1966) . . . . . . . . . . 24
*Durrett v. C.I.R.*, 71 F.3d 515 (5th Cir. 1996) . . . . . . . . . . 33, 34, 37, 39
*Eastern RR Pres. Conf. v. Noerr Motor Freight Inc.*,
365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) . . . . . . . . . . 23
*Ex Parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941) . . . . . . . . . . 23
*Fehlhaber v. Fehlhaber*, 681 F.2d 1015 (5th Cir. 1982) . . . . . . . . . . 24

*Field v. United States*, 328 F.3d 58 (2[nd] Cir. 5003) . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10, 14, 18, 31
*Forseth v. C.I.R.*, 50 T.C.M. (CCH) 111 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
*Fort Stewart Schools v. Federal Labor Relations Auth.*,
495 U.S. 641 110 S.Ct. 2043, 109 L.Ed.2d 659 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 16
*Frank Lyon Co. v. United States*,
435 U.S. 561, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
*Freytag v. C.I.R.*, 89 T.C. 849 (1987), *aff'd* 904 F.2d 1011 (5[th] Cir. 1990),
*aff'd on other grounds*, 501U.S. 868 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
*Grass Valley Terrace v. United States*, 69 Fed. Cl. 341 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8
*Hambrose Leasing v. C.I.R.*, 99 T.C. 298 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
*Harper Macleod Solicitors v. Keaty & Keaty*,
260 F.3d 389 (5[th] Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
*Heasley v. C.I.R.*, 902 F.2d 380 (5[th] Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 33, 38
*Hill v. C.I.R.*, 204 F.3d 1214 (9[th] Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
*Ins. Corp. of Ireland v. Compagnie des Bauxites*,
456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
*Jade Trading v. United States*, 60 Fed.Cl. 558 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
*Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) . . . . . . . . . . . . . . . . . . . . . 23
*Keeler v. C.I.R.*, 243 F.3d 1212 (10[th] Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
*Killingsworth v. C.I.R.*, 864 F.2d 1214 (5[th] Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
*Kraemer v. United States*, 2002 WL 575791 (S.D.Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 25, 28
*Law v. Commissioner*, 84 T.C. 985 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30
*Lawinger v. C.I.R.*, 103 T.C. 428 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*Lukens v. C.I.R.*, 945 F.2d 92 (5[th] Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34, 37-39
*Martin v. Occup. Safety and Health Rev. Comm'n*,
499 U.S. 144, 111 S.Ct. 1171, 1178, 113 L.Ed.2d 117 (1991) . . . . . . . . . . . . . . . . . . . . . 19
*Maxwell v. C.I.R.*, 87 T.C. 783 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 20, 33
*Monti v. United States*, 223 F.3d 76 (2[nd] Cir. 2000) . . . . . . . . . . . . . . . . . . . 6, 7, 13, 18, 21, 22, 33
*N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
*N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137 (5[th] Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
*Patin v. C.I.R.*, 88 T.C. 1086 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
*Pennsylvania v. Finley*,
481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
*Prochorenko v. United States*, 243 F.3d 1359 (Fed.Cir. 2001) . . . . . . . . . . . 6, 7, 10, 14, 18, 21, 22
*Randell v. United States*, 64 F.3d 101 (2[nd] Cir. 1995),
*cert. denied* 117 S.Ct. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
*Rice's Toyota World, Inc. v. C.I.R.*, 752 F.2d 89 (4[th] Cir. 1985) . . . . . . . . . . . . . . . . . . . . 34-36, 38
*River City Ranches # 1 v. C.I.R.*, T.C. Memo 2003-150,
2003 WL 21205284 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
*River City Ranches #1 v. C.I.R.,* 401 F.3d 1136 (9[th] Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 14, 31
*Roberts v. United States*, 242 F.3d 1065 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*Roberts v. United States*, 281 F.3d 1108 (10[th] Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
*Ryland v. Shapiro*, 708 F.2d 967 (5[th] Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
*Saddler v. Department of the Army,* 68 F.3d 1357 (Fed.Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . 16
*Silver v. Cormier*, 529 F.2d 161 (D.C.Colo. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
*Stanford v. C.I.R.*, 152 F.2d 450 (5[th] Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Stiltner v. Rhay*, 322 F.2d 314 (9th Cir. 1963) . . . . . . . . . . 24
*Thomas v. United States*, 166 F.3d 825 (6th Cir.1999) . . . . . . . . . . 36, 37
*Thompson v. United States*, 223 F.3d 1206 (10th Cir.2000) . . . . . . . . . . 36, 37
*Todd v. C.I.R.*, 862 F.2d 540 (5th Cir. 1988) . . . . . . . . . . 21, 28
*Transcapital Leasing v. United States*,
____ F.3d _____, 2006 WL 897723 (W.D. Tex. 2006) . . . . . . . . . . 37
*U.P.S. v. C.I.R.*, 862 F.2d 1486 (11th Cir. 2001) . . . . . . . . . . 35
*U.S.P.S. of Am., Inc. v. United States*, 254 F.3d 1014 (11th Cir. 2001) . . . . . . . . . . 35
*Wang Lab., Inc. v. Applied Comp. Sci., Inc.,* 958 F.2d 355 (Fed.Cir.1992) . . . . . . . . . . 20
*Weiner v. Commissioner*, 389 F.3d 152 (5th Cir. 2004) ("*Weiner II*") . . . . . . . . . . 27, 28
*Weiner v. United States*, 255 F.Supp.2d 624 (S.D.Tex 2002) ("*Weiner I*") . . . . . . . . . . 25, 28, 33, 34
*Weiner v. United States*, 255 F.Supp.2d 673 (2002) ("*Weiner*") . . . . . . . . . . 34, 36, 37
*White v. C.I.R.,* 95 T.C. 209 (1990) . . . . . . . . . . 31, 33
*Xechem I'natl, Inc. v. Univ. of Texas*, 382 F.3d 1324 (Fed. Cir. 2004) . . . . . . . . . . 24

**Statutes**

26 U.S.C. §162 . . . . . . . . . . 36
26 U.S.C. §165 . . . . . . . . . . 36
26 U.S.C. §183 . . . . . . . . . . 36
26 U.S.C. §6031 . . . . . . . . . . 11
26 U.S.C. §6211(c) . . . . . . . . . . 11
26 U.S.C. §6216(4) . . . . . . . . . . 11
26 U.S.C. §6221 . . . . . . . . . . 11, 14
26 U.S.C. §6222 . . . . . . . . . . 2, 39
26 U.S.C. §6223 . . . . . . . . . . 11
26 U.S.C. §6224(c) . . . . . . . . . . 2, 3, 5, 6, 9, 10, 12, 14, 15, 16, 17, 18, 19, 22, 25, 26, 27, 33
26 U.S.C. §6225(a) . . . . . . . . . . 11
26 U.S.C. §6226 . . . . . . . . . . 11, 15, 31-33
26 U.S.C. §6226(a) . . . . . . . . . . 12, 15
26 U.S.C. §6226(b) . . . . . . . . . . 12
26 U.S.C. §6226(c) . . . . . . . . . . 12, 22
26 U.S.C. §6226(d) . . . . . . . . . . 12, 25, 26
26 U.S.C. §6226(d)(1)(A) . . . . . . . . . . 5, 12
26 U.S.C. §6226(e) . . . . . . . . . . 12
26 U.S.C. §6226(f) . . . . . . . . . . 15, 23
26 U.S.C. §6228(a)(4)(B) . . . . . . . . . . 12
26 U.S.C. §6229(a) . . . . . . . . . . 20
26 U.S.C. §6229(c) . . . . . . . . . . 20
26 U.S.C. §6229(e) . . . . . . . . . . 20
26 U.S.C. §6229(f) . . . . . . . . . . 18, 20, 25, 26
26 U.S.C. §6230(a)(1) . . . . . . . . . . 11, 33
26 U.S.C. §6231(a)(2) . . . . . . . . . . 20
26 U.S.C. §6231(a)(3) . . . . . . . . . . 13, 20, 22, 30
26 U.S.C. §6231(a)(4) . . . . . . . . . . 13
26 U.S.C. §6231(a)(5) . . . . . . . . . . 32, 33
26 U.S.C. §6231(b)(1)(C) . . . . . . . . . . 12

26 U.S.C. §6234(e)(3) . . . . 20
26 U.S.C. §6621(c) . . . . 4-10, 13, 14, 20-34, 36-40
26 U.S.C. §701 . . . . 11
26 U.S.C. §702 . . . . 11
26 U.S.C. §7121 . . . . 12, 16
26 U.S.C. §7422(a) . . . . 17, 20
26 U.S.C. §7422(h) . . . . 6, 7, 10, 15, 21, 22, 30, 31, 33, 34
26 U.S.C. §§6221-6234 (TEFRA) . . . . 7, 8, 10, 11, 13, 14, 17, 20, 32, 33, 36, 37
28 U.S.C. §1346(a)(1) . . . . 2, 7, 15, 20, 30
28 U.S.C. §1491(a)(1) . . . . 2, 7, 15, 20

**Rules and Regulations**

RCFC 12(b)(1) . . . . 6, 7
RCFC 12(b)(6) . . . . 6-8
Tax Court Rule 245(b) . . . . 12
Tax Court Rule 247(a) . . . . 12
Tax Court Rule 247(b) . . . . 4, 5, 19
Tax Court Rule 248(c)(1) . . . . 4
Treasury Regulation §1.6031-1 . . . . 11
Treasury Regulation §1.701-1 . . . . 11
Treasury Regulation §1.702-1(a) . . . . 11
Treasury Regulation §301.6221-1T(a) . . . . 11
Treasury Regulation §301.6224(c)-3T(b) . . . . 3, 12, 16-19
Treasury Regulation §301.6229(f)-1T . . . . 25
Treasury Regulation §301.6229(f)-1T(b) . . . . 18, 26
Treasury Regulation §301.6231(a)(3)-1(a)(1)(i) . . . . 30
Treasury Regulation §301.6231(a)(3)-1(a)(1)(v) . . . . 30
Treasury Regulation §301.6621-2T . . . . 27, 36

**Miscellaneous**

5B C. Wright & A. Miller §1350 at 106 (2004) . . . . 7, 8
H. R. Conf. Rep. 97-760 (1982) . . . . 15
H. Rep. No. 101-247, 1388, 1393, 1394 (1989),
*reprinted in* 1989 U.S.C.C.A.N.1906, 2858-59, 2864 . . . . 40
IRS Field Service Advisory 199950008, (9/13/99) . . . . 12, 14
IRS Field Service Advisory 199924003 . . . . 13

**No. 02-060 T**
(Judge Block)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

RONALD C. PRATI and MARY G. PRATI,

PLAINTIFFS

VS.

UNITED STATES OF AMERICA,

DEFENDANT

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO THE MOTION OF THE UNITED STATES FOR PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINT**

**RESPONSE TO THE GOVERNMENT'S FACTUAL STATEMENT**

Unless otherwise indicated, Plaintiffs Ronald C. Prati and Mary G. Prati (the "Pratis" or "Plaintiffs") do not object to the government's factual statements, except the statements that (i) the Plaintiffs' settlements were partial partnership item settlements, (ii) the Tax Court decisions held the adjustments were attributable to sham transactions, and (iii) the Notices of Final Partnership Administrative Adjustment ("FPAAs") disallowed the partnerships transactions because they were shams. Plaintiffs would add the following relevant facts:

Agri-Venture Fund ("AVF"), Canyon Desert Vineyards ("CDV"), and Emperor Seedless - 85 ("ES85") (collectively the "Partnerships") were 3 of 43 structurally similar California and Texas limited

partnerships marketed and managed by AMCOR, a California corporation.

In 1985, Ronald Prati invested in the Partnerships and filed a 1985 joint income tax return, on which he reported the Partnership losses pursuant to the respective Schedules K-1 as required by §6222.[1] [B10, B23, B25, B28, and B31][2]

On March 14, 1990, the IRS issued Notices of Final Partnership Administrative Adjustment ("FPAAs") proposing "adjustments to the partnership return" of each of the Partnerships for 1985. [B34-B56] The IRS proposed to disallow *all* of the Schedule F- Farming Expenses and Other Deductions reported by the Partnerships for 1986 as well as adjust other CFG and VARP partnership items. [B37, B46, B53] The IRS asserted from 14 to 20 different grounds for disallowing each Partnerships' expenses and deductions. [B39-B42, B47-B49, and B54-B56]

Partners other than the TMP challenged the FPAAs issued to the AMCOR partnerships by filing over 43 separate partnership-level Tax Court cases, which included the actions filed with respect to AVF at Docket No. 15034-91, CDV at Docket No. 15051-91, and ES85 at Docket No. 15039-91. [B57-B92]

In October of 1995, the Pratis remitted $63,875.00 to the IRS toward any validly assessed deficiencies arising from the Partnerships' partnership item adjustments. [B93]

On April 24, 1997, the Pratis entered into §6224(c) partnership item settlement with the IRS by executing Forms 870-P(AD) for AVF for 1985 and 1986 that the IRS accepted. [B95-B100]

On April 21, 1997, the Pratis entered into §6224(c) partnership item settlement with the IRS by executing Forms 870-P(AD) for CDV and ES85 for 1985 and 1986 that the IRS accepted. [B101-B110]

---

1 Unless otherwise indicated all references to section, §, and the Code are to the Internal Revenue Code at 26 U.S.C. References to §1346(a)(1) and §1491(a)(1) are to 28 U.S.C.

2 References to [Bx] are to Bates stamped page "x" of the Appendix B filed with this response and supporting brief.

Those settlements were "original settlements" substantively similar to other "original settlements" entered into by other AVF partners [B111-B116], CDV partners [B117-B121] and the partners of other AMCOR partnerships [B122-B131] in 1996 and 1997 and with which other partners could and did request and receive "consistent settlements" during 1999 and 2000. [B132-B136, B137-B142, B143-B149, B150-B159] This settlement comprehensively settled all of the Pratis' partnership items for each partnership for 1985.[3]

The Schedule of Adjustments to the 1985 settlements disallowed only a portion of the AVF, CDV, and ES85 Schedule F- Farming Expenses and Other Deductions that the FPAA had proposed to completely disallow. The settlement allowed the Pratis to keep 57% of their 1985 AVF deductions [Compare B97 to B37 ] [$27,605,580 - $11,806,681 = $15,798,899 / $15,798,899 ÷ $27,605,580 = .5723]. The settlement allowed the Pratis to keep 54% of their CDV deductions [Compare B103 to B46] [$7,423,234 - $3,351,659 = $4,071,539 / $4,071,539 ÷ $7,072,539 = .5485] The settlement allowed the Pratis to keep 60% of their 1985 ES85 deductions [$8,877,938 - $3,525,841.00 = $5,352, 097] [Compare B53 to 103].

The Form 870-P(AD) settlements provide, in part:

> **Under the provisions of section 6224(c)** of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of **partnership items** of the partnership for the year shown **on the attached schedule of adjustments**. ...
>
> . . . .
>
> If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.
>
> [*E.g.*, B96, B102, B107. Emphasis added]

The settlements did not address any *non*partnership items, *e.g.* they did not address any factors

---

[3] Treas. Reg. §301.6224(c)-3T(b).

related to §6621(c) penalty interest. The Form 870-P(AD) and attached Schedule of Adjustments identify only an agreed dollar amount disallowed for each identified partnership item - the farming expenses and other deductions for the tax year identified on the Form 870-P(AD) and Schedule of Adjustments. The Schedule of Adjustments do not identify any grounds or bases for the adjustments. [B97-98, B100, B103, B105, B107, and B110]

The IRS solicited the AMCOR partners with "take-it-or-leave-it" settlements that were substantively similar across the partnerships, varying only in adjustment percentages not in issue here. The IRS controlled the settlement terms and required that they be effectuated on the Forms 870-P(AD) that it prepared and sent to the partners. The IRS stated that the settlement would be binding only if the partner signed and returned the Form 870-P(AD).

Subsequent to the Pratis' settlement, in letters sent to individual AMCOR partners, the Office of Chief Counsel for the IRS re-opened the period for partners to request consistent settlements and stated that this "does not involve a new settlement offer, rather, it merely lengthens the time period for requesting settlement consistent with one previously offered," and, by settling, partners "would avoid further litigation and penalties." [B141-B142] One of these letters was attached as an exhibit to an IRS motion for leave to accept a request for consistent settlement that was filed in the AVF Tax Court case at Docket No. 15034-91. [B137] On information and belief, an identical letter would have been mailed to the unsettled partners as well.

Under Tax Court Rule 248(c)(1), if a partner is a Rule 247(b) "participating partner" in a partnership-level Tax Court case then, upon that participating partner's settlement, the IRS "shall" file a notice of settlement in that case. [B117-B121] There is no rule requiring the IRS to file a settlement notice for any partner other than a participating partner. The Pratis did not file an election to participate and were not participating partners in the AVF, CDV, or the ES85 Tax Court cases. [B50-B92] The

IRS was not required to, and did not, file a settlement notice for them in those Tax Court cases.

But the IRS did file those Rule 247(b) notices for the participating partners who settled their partnership items in the AVF, CDV, and ES85 cases and other AMCOR partnership cases. [B117-B121 and B160-B187] In those settlement notices that the IRS prepared and filed with the Tax Court, the IRS plainly stated and represented to that court that it had "entered into settlement agreements under §6224(c)(1), ..., with respect to such partner's partnership items for the partnership taxable years ending [on the relevant date], which are the subject of this proceeding. .... Accordingly, pursuant to section 6231(b)(1)(C), such partnership items became nonpartnership items as of the date of the respective settlement agreements and, pursuant to §6226(d)(1)(A), the partners listed below are no longer parties to the proceeding." [B160-B187]

The Form 870-P(AD) settlement agreements that prompted the IRS to file those settlement notices with the Tax Court are identical to the Pratis Forms 870-P(AD).

The August 1997 assessments against the Pratris included interest that was computed at the §6621(c) penalty rate. [B193, B94]

Tax Matters Partner Frederick Behrens intervened in the AVF, CDV, and ES85 cases and other AMCOR related Tax Court cases in June and July of 1999. Trial in a test case began on December 13, 1999.

On July 19, 2001, over four years after the Pratis settled with the IRS, the Tax Court entered agreed decisions in the AMCOR partnership-level cases, including the AVF, CDV, and ES85 cases, that reflected adjustments to the same partnership items included in the Partis' settlement - the farming expenses and other deductions - but in substantially different amounts. [B198, B201, B204] The Tax Court decisions were agreed decisions reflecting only the terms of a purported agreement between the IRS and TMP, not fact findings or determinations by the Tax Court.

The Pratis timely filed a refund claim to recover all of their overpayment because (i) the IRS assessed after limitations expired; (ii) the IRS improperly imposed §6621(c) penalty interest; and, (iii) excessive interest should be abated under §6404(e). [See Doc# 1, Plaintiffs' Original Complaint] The IRS disallowed their claims and the Pratis timely filed this suit. [See Doc.# 1]

## ARGUMENT

### 1. Legal Standard

As Chief Judge Damich recently noted, "jurisdiction" is "batted about like a bird caught in a badminton game," but really has two distinct meanings - whether a court has been given the power to adjudicate a matter (RCFC 12(b)(1)[4] subject matter jurisdiction) and whether the circumstances under which a court may exercise that power have been identified (RCFC 12(b)(6) failure to state a claim).[5]

The government asserts its motion to dismiss is based on RCFC 12(b)(1) and that it disputes the jurisdictional facts alleged by Plaintiffs. However, a comparison of the government's allegations in this case to the issues addressed by the Federal Circuit[6] and the Second Circuit[7] to make Rule 12(b)(1)

---

4 References to "RCFC" are to the Rules of the United States Court of Federal Claims.

5 *Grass Valley Terrace v. United States*, 69 Fed. Cl. 341, 347 (2005), *citing Bray v. United States*, 785 F.2d 989, 992 (Fed.Cir. 1986).

6 *Prochorenko v. United States*, 243 F.3d 1359, 1362-63 (Fed.Cir. 2001) *affirming* 45 Fed.Cl. 494 (2000)(addressing a claim for refund based on the IRS's denial of plaintiffs' request for §6224(c) consistent settlement). There the government asserted the claim at issue was barred by §7422(h). The Court of Federal Claims held that the plaintiffs had stated a claim for which relief could be granted and disposed of the action on summary judgment. On appeal the Federal Circuit reached the RCFC 12(b)(1) issue and, following the same analysis as the 2nd Circuit in *Monti v. United States*, 223 F.3d 76 (2nd Cir. 2000), *reversing* 976 F.Supp. 157 (E.D.N.Y. 1997) held the claim for refund was attributable to §6224(c), which itself is not a partnership item, and the court had jurisdiction over the refund claim.

7 *Field v. United States*, 328 F.3d 58 (2nd Cir. 5003) (addressing a Rule 12(b)(1) challenge to a claim for refund of §6621(c) penalty interest); *Monti*, (also addressing a claim for refund based on the IRS's denial of the plaintiffs' request for §6224(c) consistent settlement).

determinations with respect to the same or similar issues illustrates that the government's motion is not an RCFC 12(b)(1) motion, but an untimely RCFC 12(b)(6) motion that should be treated as a cross-motion for summary judgment on the §6621(c) issue.

In considering whether a court has Rule 12(b)(1) subject matter jurisdiction, the question is whether the court has statutory or constitutional authority to adjudicate the plaintiffs' claim.[8]

In considering a Rule 12(b)(1) challenge to an almost identical refund claim to recover §6621(c) penalty interest, the Second Circuit looked past the white noise of the government's "factual" challenges in the district court and made quick work of finding that it had subject matter jurisdiction.[9] The Second Circuit employed analysis previously used by the Federal Circuit in *Prochorenko* and the Second Circuit in *Monti* to address the government's §7422(h) challenge to the plaintiff/partner's refund claims.

The Second Circuit began by acknowledging that the district court had statutory authority to adjudicate claims for refund of federal income tax pursuant to 28 U.S.C. §1346(a)(1).[10] The government does not challenge this Court's §1346(a)(1) or §1491(a)(1) jurisdiction in this action.

The Second Circuit next found that the plain language of §7422(h) bars exercise of this authority only if the *refund* (***not** the item that leads to the refund*) is attributable to partnership items. The Second Circuit followed the Federal Circuit's and the Second Circuit's previous refusal to succumb to an over-broad, expansive interpretation of the §7422(h) "attributable to" language that would leave every TEFRA related refund claim in some way "attributable to" a partnership item. In *Field*, the Second

---

8 *Grass Valley* at 347; *See also*, 5B C. Wright & A. Miller §1350 at 106 (2004).

9 *Field, supra.*

10 28 U.S.C. §1346(a)(1). *See also* 28 U.S.C. §1491(a)(1), granting this Court authority to adjudicate tax refund suits.

Circuit found that the refund was determinative of whether the claim was barred, not the whether the underlying transactions were partnership items. Stated another way, a claim will be barred only if it requests a refund based directly on seeking a change to a partnership item. A claim will not be barred if it seeks recovery of all or part of an assessment that resulted from a change to a partnership item so long as the refund claim is not based on a reconsideration of a partnership item.

In making its determination that §6621(c) penalty interest is not a partnership item, the Second Circuit considered three TEFRA factors that are so well settled as to be blackletter law. The Court noted that §6621(c) is located in subtitle F, not subtitle A, and, consequently, did not meet the statutory definition of a partnership item. The Court was next persuaded by the overwhelming and unanimous authority that has consistently held that §6621(c) is an affected item, not a partnership item. The Court was finally persuaded by the government's concession that §6621(c) is an affected item - a concession that the government has made in this action as well.

The government does not challenge the truth of the *jurisdictional* facts alleged in Plaintiffs' complaint so much as it attacks the merits of Plaintiffs' claim that the tax assessed against them was not attributable to a tax motivated transaction as set out in §6621(c) and the accompanying regulation. At best, the government's challenge is to the circumstances under which this Court may exercise its authority to adjudicate this case, which Chief Judge Damich categorized as an RCFC 12(b)(6) motion for failure to state a claim.[11]

Both parties have extensively referenced evidence and documents outside the pleadings that will be necessary for the Court to reference and rely upon in making its determination.[12] Consequently,

---

[11] *Grass Valley*, 69 Fed. Cl. at 347; and Wright & Miller at 106.

[12] The government extensively referenced evidentiary documents filed in other pleadings in this action but did not attach copies of those documents to the motion to dismiss. Plaintiffs have attached and referenced copies of those documents, as well as additional documents, to their response.

pursuant to RCFC 12(b), the government's motion has been converted into a motion for summary judgment and Plaintiffs are entitled to the RCFC 56(f) procedural safeguards, including the refusal to enter judgment, continuance to permit discovery, or other order as the Court finds just. In this case, the government has raised factual issues regarding the intent of the parties to comprehensively settle the partnership tax controversy. Should the Court not be persuaded by the evidence in the record, then additional discovery regarding the intent of the parties may be necessary. See the Declaration of Teresa J. Womack at Appendix B.

**2. The Government's Grounds for Dismissal are Based on a False Predicate**

As will be addressed in detail in this brief, Defendant's motion is fundamentally flawed to the extent it rests on the following erroneous precepts:

(i) The government erroneously asserts that the settlements were partial settlements. They were in fact comprehensive settlements converting all partnership items to nonpartnership items and removing the Plaintiffs from the Tax Court proceedings. The subsequent Tax Court proceedings are irrelevant.

(ii) The government erroneously asserts this Court lacks jurisdiction based on the erroneous representation that Plaintiffs' claim requires a redetermination of partnership items. That is a patent misrepresentation of Plaintiffs' claim. Plaintiffs' claim requires only a consideration of the content of the FPAAs issued by the IRS, the content of the settlements they entered into, and the applicable law. Based on those settlements, the penalty interest provisions of §6621(c) are not applicable. Plaintiffs' claims do not require a re-opening or review of partnership items. Their claims are not attributable to partnership items. They are attributable to the erroneous applications of §6621(c) to the liabilities resulting from the agreed settlement.

The Plaintiffs entered into §6224(c) settlements with the IRS for the tax year(s) at issue. It is

undisputed that the settlements addressed only partnership items. It is also undisputed that pursuant to §7422(h), this Court is barred from addressing refunds "attributable to partnership items."

However, the government erroneously argues that this Court lacks jurisdiction to determine whether §6621(c) was improperly imposed. The government is wrong because Plaintiffs' claims for refund of §6621(c) penalty interest are not "attributable to partnership items" because §6621(c) is not a partnership item. The Second Circuit denied the government's motion to dismiss for lack of jurisdiction on this exact issue in *Field*. The Federal Circuit has reached a similar conclusion with respect to §6224(c) consistent settlement in *Prochorenko.*

The government is also wrong because: (i) the §6224(c) partnership item settlements at issue in this case and the other AMCOR cases were comprehensive and, by regulation *could not* be "partial" for the tax years at issue; (ii) the parties intended that the settlement be comprehensive as to partnership items and the IRS repeatedly represented to the Tax Court that settled partners were no longer parties to the partnership-level cases for any reason; (iii) it is well-settled that §6621(c) is not a partnership item but an "affected item" over which the Tax Court has no jurisdiction in a TEFRA partnership-level case for the years at issue, but over which this Court does have jurisdiction in a partner-level refund case; (iv) for the tax years in issue, a partner cannot be bound to determinations made in a TEFRA partnership-level case after they settle their partnership items; (v) even if a partner could be bound to determinations made in a TEFRA partnership-level case after they settle their partnership items, the bases for the adjustments in the decision cannot be imputed to the Plaintiffs' settlement adjustments because the amount of the adjustments were substantially different for the same partnership items; and (vi) even if the bases for the adjustments in the decisions could be imputed to the Plaintiffs' settlement adjustments, they are not binding because they were not independent findings of the Tax Court, but rather resulted from a purported agreement between the IRS and TMP.

### 3. Analysis Under TEFRA's Statutory Scheme

Partnerships do not pay income tax; they file information returns.[13] Each partner's share of partnership income, gains, losses, deductions, etc., is reported and recognized on his individual return.[14]

Before 1982, to adjust an item on a partnership return the IRS had to examine each partner's individual return and could not ensure consistent adjustments among partners. In response, Congress enacted TEFRA, which consolidated *some* of the partnership audit and adjustment procedures.[15]

#### a. In General

TEFRA establishes procedures for a single centralized adjustment of statutorily defined "partnership items" at the partnership level.[16] By statutory definition, everything that is not a partnership item is a *non*partnership item.[17] Congress specifically left all *non*partnership items to be determined at the partner level according to the standard pre-TEFRA procedures.[18]

Under TEFRA, if the IRS wants to adjust any partnership item it must first issue an FPAA.[19] An FPAA is issued only to adjust partnership items.

Judicial review of the FPAA is limited to the partnership level and the jurisdiction of the courts

---

13 §§701, 6031; Treas. Reg. §§1.701-1, 1.6031-1.

14 §§701, 702; Treas. Reg. §1.702-1(a).

15 *Maxwell v. C.I.R.*, 87 T.C. 783, 787 (1986).

16 §§6211(c), 6216(4), 6221, 6223, 6225(a), 6226, 6230(a)(1), §6231(a)(3) ; Temp. Treas. Reg. §301.6221-1T(a); *Callaway v. C.I.R.*, 231 F.3d 106, 110 (2nd Cir. 2000). "Subchapter C" is subchapter 63C at §§6221-6234 (TEFRA).

17 §6231(a)(4).

18 *Callaway* at 108.

19 §§6223(a)(2) and (d)(2).

is expressly restricted to statutorily defined "partnership items."[20]

Pursuant to §6226(c) and (d), a partner is a party to, may participate in, and is bound by the outcome of, the partnership-level case only as long as he has an ongoing interest in the outcome of that litigation.[21] When a partner's partnership items convert to nonpartnership items he is no longer a party, if he ever was, as to his converted partnership items.[22]

Settlement is the most common method of converting partnership items to nonpartnership items. Sections 6224(c) and 7121 are separate grants of authority by which the IRS may settle partnership items with a partner. Treas. Reg. §301.6224(c)-3T(b), effective for the years at issue, expressly states and mandates that §6224(c) partnership item "[s]ettlements shall be comprehensive, that is, a settlement may not be limited to selected items."[23] This means that a §6224(c) settlement settles *all* partnership items of the partnership, either on the terms identified and agreed to in the settlement or with no change to partnership items not addressed in the settlement agreement.

Once the partnership-level case is concluded as to a partner – either by conversion (*e.g.* settlement as to him alone) or by decision (as to all partners with unconverted partnership items), then that partner's *non*partnership items (including all partner-specific determinations) are addressed in separate

---

20 §§6226(a), (b). Virtually all partnership-level cases are filed in the Tax Court. Occasionally a partnership-level case is filed in a federal district court or this Court, but only after meeting certain bond requirements that do not apply to Tax Court cases. §6226(e). *E.g.*, *see AD Global Fund v. U.S.*, 67 Fed.Cl. 657 (2005). All AMCOR partnership-level cases at issue here were filed in the Tax Court.

21 §§6226(d)(1)(A) and 6228(a)(4)(B); Tax Court Rules 245(b) and 247(a), IRS Field Service Advisory 199950008, (9/13/99).

22 §6231(b)(1)(C).

23 Treas. Reg. §301.6224(c)-3T(b) was amended in 1999 to allow partial partnership item settlements but that amendment does not apply here because the Plaintiffs settled in prior to the effective date of the amendments.

partner-level proceedings.[24] After the IRS assesses any tax and the partner pays, he may file a refund claim to raise his individual nonpartnership item defenses. If his claim is denied, he may file suit in federal district court or this Court to pursue those defenses.

**b. Specific Provisions Applicable to This Case**

To make a determination in this action, the Court must first address which items are "partnership items" and which are "*non*partnership items" under TEFRA's statutory scheme.[25]

i. Partnership Item" is a Defined Term, Restricted By Statute

In §6231(a)(3) Congress mandates three requirements for a partnership item.[26] It must:

- arise "under any provision of subtitle A" (§§1-1563);
- be "required to be taken into account for the partnership's taxable year;" and
- be designated by the IRS in regulations "as more appropriately determined at the partnership level than at the partner level."

Subtitle A (§§1-1563) is titled "Income Taxes" and may be thought of as addressing "the numbers" reported on the partnership Form 1065 return. By expressly limiting the definition of partnership items, Congress specifically exempted from TEFRA's unified proceedings all other subtitles of the Internal Revenue Code, including subtitle F procedural requirements and penalties and all subtitle A items not designated by regulation.

By statutory definition §6621(c), which is in subtitle F of the Code, is not a partnership item.

---

[24] *Maxwell* at 788; *Callaway* at 108; *e.g.*, to assert a penalty related to the partnership item adjustment, such as a negligence penalty, the IRS must wait until after a settlement is effective or a partnership-level decision is final, as applicable, and issue to the partner a statutory notice of deficiency asserting the penalty and giving the opportunity to contest the penalty in the Tax Court.

[25] *Callaway* at 108.

[26] *Monti* at 82 Anything that is not a "partnership item" is a "nonpartnership item." §6231(a)(4).

Unanimous judicial precedent establishes the validity of this analysis and the outcome.[27] The IRS recognizes that §6621(c) is not a partnership item for the same reason.[28] Moreover, the Secretary has not and cannot make §6621(c) a partnership item by regulation because it is not "required to be taken into account for the partnership's taxable year under any provision of subtitle A."

However, as the 9th Circuit recognized in *River City*, any partnership item determination that might be necessary to apply §6621(c) to a partner's tax liability must be determined in the partnership-level proceeding or the partnership item settlement.[29] But nonpartnership item determinations necessary to apply §6621(c) to a partner's tax liability must be determined in a subsequent partner level proceeding. See discussion below.

ii. Determinations of Partnership Items and Nonpartnership Items are Mutually Exclusive

In TEFRA, Congress statutorily mandated mutually exclusive procedures for determining partnership items and nonpartnership items.[30]

The legislative history confirms this mandatory bifurcation:

> Neither the Secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, except to the extent they

---

27 *See Field, supra*. *See also, Affiliated Equip. Leasing II v. C.I.R.*, 97 T.C. 575, 577-78 (1991) (§6621(c) not a partnership item because it is in subtitle F). In *Prochorenko*, the Federal Circuit followed the Second Circuit in *Monti* and employed the same approach to hold that it had jurisdiction over a refund claim based on a request for §6224(c) consistent settlement because §6224(c) consistent settlement is not a partnership item because it is located in subtitle F, not subtitle A.

28 See IRS Field Service Advisory 199924003 (notifying field agents that §6621(c)is not a partnership item). In Field Service Advisory 199950008 the IRS notified agents that the §6698 penalty is not a partnership item for the same reason.

29 *River City Ranches #1 v. C.I.R.,* 401 F.3d 1136 (9th Cir. 2005).

30 §6221; *Callaway* at 108. See also §6230 (pre-TEFRA procedures apply to nonpartnership/affected item adjustments that are not merely computational changes).

> become nonpartnership items under the rules, be raised in proceedings relating to nonpartnership items of a partner.[31]

For the tax years at issue, partnership-level proceedings are restricted to adjusting partnership items.[32] If those adjustments result in a tax deficiency, it is assessed against the partner. If they result in an overpayment, it is to be refunded to the partner. The partner is restricted to raising nonpartnership item issues in a partner-level proceeding, as here.

Likewise, when a partner settles his partnership items he is no longer a party to any pending partnership-level case, if he ever was, and in any later partner-level case his converted partnership items may be examined only "to the extent" of their application as determined under the settlement to compute his liability. In addition to the statutory limitations on what is a partnership item, general contract law applies to tax settlements, and in a partner-level case neither the IRS nor the partner is allowed to go behind the terms of the partnership item settlement to change or re-characterize the partnership items.

28 U.S.C. §§1346(a)(1) and 1491(a)(1) give this Court jurisdiction over an individual partner's claim for refund of tax and interest. But §7422(h) bars jurisdiction over any "refund attributable to partnership items." Therefore, after a partner's partnership items are determined, either by settlement or court decision. In later partner-level refund cases this Court may address only *non*partnership items and cannot re-open review of partnership items.

iii. <u>For the Tax Years at Issue §6224(c) Settlements Are Comprehensive Not "Partial"</u>

The government argues that the Plaintiffs' partnership item settlements were "partial" and settled only some of their partnership items. But the plain language of the Form 870-P(AD) states that it is

---

31 H. R. Conf. Rep. 97-760, at 611 (1982).

32 §6226(a) and §6226(f).

*§6224(c) settlement*. The 1999 amendments cited by the government only address the effect of partial settlements. Those amendments are silent and do modify or affect the regulations governing §6224(c) settlements. The §6224(c) settlements are required by regulation to be, and both the partners and the IRS intended that the §6224(c) settlements be, comprehensive and not partial. Both the IRS and the Plaintiffs are bound by those regulations. Neither party can disregard this controlling regulation in ascertaining whether the settlement was partial or comprehensive.[33]

(1) *Treas. Reg.§301.6224(c)-3T(b) Mandates that These §6224(c) Partnership Item Settlements Are Comprehensive, Not "Partial"*

Sections 6224(c) and 7121 are separate grants of authority for the IRS to settle tax disputes. Partnership item settlements are normally made on one of three forms. A Form 870-P(AD) expressly recites that it is a §6224(c) partnership item settlement. [B207-B208] A Form 870-L(AD) has two parts, a partnership items settlement and an affected item settlement, *which expressly includes a §6621(c) concession*. [B209-B211]. A Form 906 Closing Agreement allows the IRS and taxpayer to tailor the terms and source of authority for settlement. [B212-B214] The IRS chose Forms 870-P(AD) to settle the AMCOR partnership item tax controversy.

For the tax year(s) at issue, Treas. Reg.§301.6224(c)-3T(b) mandates that pre-1999 §6224(c) partnership item "[s]ettlements shall be comprehensive, that is, a settlement may not be limited to selected items." Consequently, a §6224(c) settlement for the years at issue settles *all* partnership items and cannot be partial. The partnership items identified in the settlement document are adjusted on the terms agreed to in the settlement and all other partnership items not identified or adjusted in the settlement agreement are left unadjusted, as reported on the original Form 1065 partnership return.

---

[33] *See Fort Stewart Schools v. Federal Labor Relations Auth.,* 495 U.S. 641, 654, 110 S.Ct. 2043, 2051, 109 L.Ed.2d 659 (1990) (an agency must abide by its own regulations.); *Saddler v. Department of the Army,* 68 F.3d 1357, 1358 (Fed.Cir.1995).

Plaintiffs' Form 870-P(AD) states it is a settlement "[u]nder the provisions of §6224(c)" and applies "with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments." That Schedule of Adjustments expressly addresses only (i) the tax year that the settlement applies to, (ii) partnership items to be adjusted (including the farming expense), and (iii) the dollar amount of the adjustments to those items. Neither the Form 870-P(AD) nor the Schedule of Adjustment conditions or limits the scope of the settlement contrary to Treas. Reg. §301.6224(c)-3T(b). Consequently, *all* of Plaintiffs' partnership items were settled for the year(s) at issue, either according to the adjustments in the Schedule of Adjustments or with no change to the partnership items not identified in that schedule.

TEFRA's legislative history expressly anticipates that refund claims based on nonpartnership item grounds will be filed for moneys paid on assessments attributable to partnership items and unambiguously states that such claims are timely within two years of payment. This evidences Congress' recognition that an *assessment* may be "attributable to" partnership item adjustments, but the permissible *refund* of all or part of the assessment is not. A partner is not automatically due a refund every time the IRS makes an assessment arising from adjustments to partnership items. His *refund* must not be "attributable to" the partnership item adjustments. Congress recognized that a partner may be due a refund of part or all of the assessment paid based on a nonpartnership item ground, *i.e.* his "attributable to" ground for refund.

> The separate statute of limitations applicable to nonpartnership items of a partner may have expired when the computational adjustment of a partner's tax liability attributable to a FPAA or final court decision is made. In such case neither the Secretary (to reduce a refund) nor a partner (to reduce an assessment) may raise nonpartnership items in determining the partner's tax liability resulting from such computational adjustment. However, if the partner has in fact overpaid his income tax liability for the taxable year with respect to which the computational adjustment was made, he may obtain credit or refund of such overpayment by filing a claim within 2 years following such overpayment, as prescribed by §§6511 (a) and (b)(2)(B). If such claim is not allowed, suit may be filed pursuant to §7422(a). Any overpayment which may be

refunded pursuant to such a claim or suit for refund would be attributable only to nonpartnership items.[34]

The Federal Circuit's holding in *Prochorenko* and the Second Circuit's holdings in *Field* and *Monti* are consistent with this legislative intent. The government's approach is inconsistent with legislative intent and was specifically rejected by the Federal Circuit and the Second Circuit.

(2) *Treas. Reg. §301.6229(f)-1T(b) and the 1997 Amendment to §6229(f) are Irrelevant Here*

To support its "partial" settlement argument the government offers only an erroneous interpretation of the 1997 amendments to §6229(f) and §301.6229(f)-1T(b), which provide that if a partner settled some but not all of his partnership items then the assessment period related to the settled items is controlled by the unsettled items. However, §301.6229(f)-1T(b) and the 1997 amendments to §6229(f) do not apply to the Plaintiffs' AMCOR settlement. The government concedes they do not apply.

(3) *The History of the 1997 through 1999 Amendments Supports Plaintiffs' Position*

Congress amended §6229(f) in 1997 and the IRS added §301.6229(f)-1T(b) in 1998 to address the problem of split limitations periods caused by partial partnership item settlements. But the IRS chose not to amend Treas. Reg.§301.6224(c)-3T(b), which continued to bar partial partnership item settlements under §6224(c) until 1999. Even after those 1999 amendments,

(4) *In the Case at Bar, the Parties Intended that Plaintiffs' §6224(c) Partnership Item Settlements Be Comprehensive, Not "Partial"*

The Plaintiffs and the IRS intended the §6224(c) partnership item settlements to be comprehensive, not partial. The settlements were substantively similar across the 43 AMCOR partnerships, varying only in dollar amounts to the farming expense deductions, a difference that is not at issue here. The IRS

---

[34] H.R.Conf.Rep. 97-760 at 611.

chose and mandated Forms 870-P(AD) under §6224(c) for the AMCOR settlements. The Form 870-P(AD) plainly states that the partner "offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments."

The subsequent Form 870-P(AD) settlements are conspicuously identified as "Consistent Agreements." These consistent settlements are required to be identical to the "original settlement" and cannot cherrypick items or terms.[35]

The IRS told the AMCOR partners that by settling they would "avoid further litigation." In the Rule 247(b) settlement notices and its motions for leave, the IRS repeatedly represented to the Tax Court that the subsequent "consistent settlements"addressed "such partners' partnership items for the partnership taxable year ..., which is the subject of this proceeding" and such partners are, therefore, "no longer parties to the proceeding." The IRS's statements were unqualified and unequivocal: settled partners were no longer parties to the Tax Court cases for any reason.

The IRS's representations to the Tax Court and its litigating position in the Tax Court is inconsistent with the government's position in this matter. "[A]gency 'litigating positions' are not entitled to deference when they are merely ... counsel's '*post hoc* rationalizations' for agency action."[36] The IRS solicited Form 870-P(AD) §6224(c) settlements and represented to both the Plaintiffs and the Tax Court that the original settlements and the consistent settlements settled all partnership items before

---

35 §301.6224(c)-3T(b).

36 *Martin v. Occup. Safety and Health Rev. Comm'n*, 499 U.S. 144, 111 S.Ct. 1171, 1178, 113 L.Ed.2d 117 (1991), citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 473-74, 102 L.Ed.2d 493 (1988). See also *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245-46, 9 L.Ed.2d 207 (1962).

the Tax Court. "Judicial estoppel" bars the IRS from now arguing that they were partial.[37] If this Court gives any credence to the Government's partial settlement argument, further discovery and trial to establish intent should be scheduled.

**c. Congressional Intent Regarding TEFRA**

Congress knew the long established subtitle structure of the tax code and expressly restricted partnership items to subtitle A.[38] It further restricted them to *only* those items "required to be taken into account for the partnership's taxable year." It then narrowed them even further to *only* those items properly designated by the IRS in regulations.[39]Congress clearly intended TEFRA to *ease* the IRS's administrative burden by allowing it to choose by regulation those subtitle A issues to be treated uniformly under TEFRA. Congress left all other issues – including all subtitle F procedures and penalties, and all subtitle A items the IRS does not designate by regulation – to be determined under the general, non-TEFRA procedures.[40]

**d. Under TEFRA's Statutory Scheme, This Court Has Jurisdiction to Address the Plaintiffs'§6621(c) Claim in This Partner-Level Refund Case**

28 U.S.C. §§1346(a)(1) and 1491(a)(1) and 26 U.S.C. §7422(a) give this Court jurisdiction and

37 *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996) ("The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed. ... Judicial estoppel is designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants.") citing *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed.578 (1895); *Wang Lab., Inc. v. Applied Comp. Sci., Inc.,* 958 F.2d 355, 358 (Fed.Cir.1992).

38 Section 6231(a)(3)'s subtitle A restriction is not an anomaly. Congress expressly reiterated it in §§6229(a), 6229(c), 6229(e), 6229(f), 6231(a)(2) and 6234(e)(3).

39 §6231(a)(3).

40 *Callaway* at 108; *Maxwell* at 788.

waive sovereign immunity over IRS denials of refund claims for tax or "any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."[41] But §7422(h) bars any "action ... for a refund attributable to a partnership item." The Plaintiffs' claim does not challenge the agreed and settled partnership item adjustments.

i. <u>The Plaintiffs' Refunds Are Not "Attributable to" Partnership Items</u>

Section §7422(h) bars jurisdiction if the Plaintiffs' *refunds* are "attributable to partnership items." "Attributable to" and "attributable to partnership items" are not defined in the Code. For tax purposes, "attributable to" requires a clear causal nexus *i.e.*, "due to," "caused by," or "generated by."[42]

The government asserts that the Plaintiffs' refunds are attributable to partnership items because the tax assessed by the IRS arose from partnership item adjustments. [GB23-27] But even the government concedes that this "type of analysis is foreclosed by binding Federal Circuit precedent." [GB24] In the Federal Circuit, *Prochorenko* holds that the source of the tax to be refunded is irrelevant to §7422(h). Rather, the issue that causes the refund to be due is determinative.[43] As is discussed further below, Plaintiffs are due refunds because their underpayments of tax as determined from the settlements do not meet the requirement of being attributable to any of the grounds for imposing §6621(c) interest set out in the statute and regulation. Section 6621(c) penalty interest is not a partnership item and §7422(h) does not bar this Court's refund jurisdiction over this claim to recover that wrongfully and erroneously assessed interest.

The government argues that in *Prochorenko* the Federal Circuit focused its §7422(h) analysis on

---

41 *Roberts v. United States*, 242 F.3d 1065, 1067 (Fed. Cir. 2001); *Beall v. United States*, 336 F.3d 419, 422 (5th Cir. 2003).

42 *Todd v. C.I.R.*, 862 F.2d 540, 541-542 and fn. 5 (5th Cir. 1988); *Stanford v. C.I.R.*, 152 F.2d 450, 458-459 (5th Cir. 1998), *citing Lawinger v. C.I.R.*, 103 T.C. 428, 435 (1994).

43 *Prochorenko* at 1363, relying on *Monti* at 82.

the third requirement of §6231(a)(3) (proper regulatory designation) and, therefore, to make a §7422(h) determination it is only necessary to examine that §6231(a)(3) requirement. [GB24-27] The government is wrong. While *Prochorenko* did not ignore §6231(a)(3)'s clear subtitle A requirement, its analysis, and that of the Second Circuit in *Monti* on which it relied, was, to some degree, flawed.

*Prochorenko* and *Monti* both referenced the first requirement of §6231(a)(3) [subtitle A] to hold that §6226(c)(2) [in subtitle F] is not a partnership item.[44] The further holding that §6224(c)(2) consistent settlement "is not the type of issue that is 'more appropriately determined at the partnership level,'" may be supportive, but it is not the determinative holding.

This broad language was immaterial to the ultimate, correct holdings in *Prochorenko* and *Monti*, but must be noted because use of this broader concept leads to mistakes in determining what is and is not a partnership item. First, partnership items must be found in subtitle A. Second, even if the subtitle A requirement is met, an item still cannot meet the other requirements of §6231(a)(3) just because it logically is "more appropriately determined at the partnership level." It can only meet the other statutory requirements if the IRS has *designated by regulation* that it is "more appropriately determined at the partnership level." The IRS has not made such a designation with respect to §6621(c) penalty interest.

ii. <u>Violation of the Plaintiffs' Due Process Rights</u>

A holding that the Plaintiffs cannot challenge the §6621(c) assessment in a partner-level proceeding would be an improper taking or conversion of their defense to that assessment and would violate the substantive and procedural due process rights of all partners in all partnerships for tax years prior to 1997 because it would deny them *any* forum of competent jurisdiction to assert a refund claim based on an erroneous §6621(c) penalty interest assessment.

---

44 *Prochorenko* at 1363; *Monti* at 82.

First, for the tax years at issue, a court's subject matter jurisdiction in a partnership-level case is restricted to partnership items, it cannot address or determine *non*partnership items.[45] The holding requested by the government would mandate that for the tax years at issue, a partner's challenge to a §6621(c) penalty interest assessment can be litigated *only* in the partnership-level case where he is barred from raising the nonpartnership item elements. For years prior to 1997, this would create a catch-22 that impermissibly denies partners *any* court of competent subject matter jurisdiction to address §6621(c) penalty interest claims.

An individual's right to pursue legal redress for claims with a reasonable basis in law and fact is fundamental and protected by numerous provisions of the Constitution[46] including: the Due Process Clauses of the 5th[47] and 14th[48] Amendments, the Equal Protection Clause,[49] the 6th Amendment,[50] the Privileges and Immunities Clause of Article IV,[51] and the 1st Amendment protection of the right to petition.[52] The Due Process Clause of the 14th Amendment guarantees access to both state and federal

---

45 In 1997, Congress amended §6226(f) granting courts in partnership-level cases broader subject matter jurisdiction. However, this amendment was a grant of new jurisdiction and only "applies to partnership tax years ending after August 5, 1997."

46 *Chambers v. Baltimore & Ohio RR Co.*, 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907).

47 *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1371 (Fed. Cir. 2004).

48 *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 857 (5th Cir. 2000); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 2169, 76 L.Ed.2d 277 (1983).

49 *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 1994-95, 95 L.Ed.2d 539 (1987).

50 *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Ex Parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941).

51 *Bayou Fleet* at 857, *citing Chambers* at 148; *Ryland v. Shapiro*, 708 F.2d 967,971(5th Cir.1983).

52 *Calif. Motor Transp. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Bill Johnson's Restaurants*; *Turner v. Safley*, 482 U.S. 78, 84, (1987); *Eastern RR Pres. Conf. v. Noerr Motor Freight Inc.*, 365 U.S. 127, 138, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

courts.[53] This right cannot be infringed upon or burdened.[54] A court of competent jurisdiction is required for legal redress.[55]A basic requirement of due process is that no valid judgment may be had or enforced without personal jurisdiction.[56] A judgment issued by a court lacking personal jurisdiction is void as to that person[57] and he is not required to appear in such court to raise the jurisdictional defect. *Harper Macleod*, at 393. He is "always free to ignore ... [those] judicial proceedings, risk a default judgment, then challenge that judgment on jurisdictional grounds in a collateral proceeding."[58]

Refusing to hear the Plaintiffs' §6621(c) claim in this refund suit when "under the law there is no other court to which they could go ... could amount to a denial of due process under the 14th amendment to the Constitution."[59]

---

53 *DeWitt v.Pail*, 366 F.2d 682, 685(9th Cir. 1966), *citing Stiltner v. Rhay*, 322 F.2d 314, 316 (9th Cir. 1963); *Brinkerhoff-Faris Trust & Savs. Co. v. Hill*, 281 U.S. 673, 680, 50 S.Ct. 451, 74 L.Ed. 1107 (1930).

54 *Silver v. Cormier*, 529 F.2d 161, 163 (D.C.Colo. 1976), *citing Adams v. Carlson*, 488 F.2d. 619, 630 (7th Cir. 1973).

55 *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1027 (5th Cir. 1982).

56 *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 396 and fn. 9 (5th Cir. 2001).

57 *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir.1996); *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5th Cir.1987).

58 *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

59 *Atkins v. United States*, 556 F.2d 1028, 1040 (Ct.Cl. 1977) *citing Boddie v. Conn.*, 401 U.S. 371 (1971); *Xechem I'natl, Inc. v. Univ. of Texas*, 382 F.3d 1324, 1334-35 (Fed. Cir. 2004) concurring opinion. (In an action for a taking or conversion "a factor in the due process provision of the 14th Amendment is whether any remedy is otherwise available. ... [I]f no remedy is indeed available ... by federal preemption of the cause of action – there can arise an affront to the fundamentals of due process."); *Benedict v. Sec. of Dept. of H.H.S.*, 29 Fed.Cl. 587, 594 (1993) ("[T]he guaranty of due process applies to the judicial branch as well as the legislative, executive, and administrative branches of government.").

**4. <u>Arguments Specific to Section 6621(c) Penalty Interest</u>**

All of the AMCOR related §6621(c) claims are based on the same two arguments: (i) by law the underpayments were not "attributable to" tax motivated transactions ("TMTs") as required by §6621(c), and (ii) in the alternative and in response to government allegations, the underpayments were not "attributable to" sham transactions. See also the analysis in Plaintiffs' §6621(c) Motion for Partial Summary Judgment and Supporting Brief ("Plaintiffs' MSJ").

**a. Plaintiffs Were Not Bound By the Terms as to Economic Substance in the Later Agreed Decisions in the Tax Court**

As to §6621(c), the government asserts the Plaintiffs were bound by "economic substance" terms in agreed decisions entered by the Tax Court after they settled. The *Weiner I* and *Kraemer* courts both rejected the government's assertion of that argument based on *res judicata* and/or estoppel.[60]

In re-asserting that same argument here, the government first mischaracterizes Plaintiffs' claims so as to incorrectly portray the §6224(c) settlements as partial and not comprehensive. Having set that false predicate, the government then uses the amendments to §6226(d) and §6229(f) and Treas. Reg. §301.6229(f)-1T to argue that Plaintiffs were still parties to and bound by the agreed decisions entered in the Tax Court after they settled.

First, the amendments to §6226(d) and §6229(f) and the newly promulgated temporary regulation accompanying §6229(f) are not effective for the tax years at issue. Those amendments were passed after the Plaintiffs settled with the IRS. The government concedes that these amendments do not apply to the Plaintiffs' settlement.

The government asserts that the Court should apply the amendments nonetheless because they

---

60 *Weiner v. United States*, 255 F.Supp.2d 624, 645 (S.D.Tex 2002) ("*Weiner I*"), and *Kraemer v. United States*, 2002 WL 575791 (S.D.Tex. 2002).

represent a "clarification" of the "then-current" state of the law. Conspicuous in its absence is any precedential authority to support this assertion. The government did not cite or otherwise offer any authority because there is none. The government's interpretation does not accurately reflect the then-current statutes, regulations, precedent, nor intent of the parties. See the discussions regarding the nature of §6224(c) settlements above and immediately below.

This government's assertion that the temporary regulations are a mere clarification is based solely on a truncated reference to the IRS's background statement accompanying the temporary regulation.[61] The full statement of the IRS's comments is contrary to the government's assertion. The IRS begins by acknowledging that the 1997 statutory amendments modified existing procedures and *added new rules*, specifically a new rule regarding the split limitations period that results from partial settlements. The IRS further states that the temporary regulation "modifies existing regulations that, because of the 1997 Act or the 1998 Act, no longer reflect current law."

Second, even if the amendments were effective for the tax years at issue, they would still not apply to the §6621(c) issues. The amendments to §6226(d) and §6229(f) and the temporary regulation are limited to challenges based on the split limitations period for assessment that may result from partial settlements. Plaintiffs' claim is not based on a challenge to the statute of limitations for assessment.

Treas. Reg. §301.6229(f)-1T(b) more generally directs that all unsettled partnership items, in addition to challenges to limitations on assessment, remain within the province of the partnership level proceedings. However, that regulation does not identify or otherwise direct what is or is not a partial settlement. Despite the government's attempt to mischaracterize Plaintiffs' claims and assert that the settlements were partial, the 1997 amendments did not in any way change the terms of §6224(c) or

---

[61] 64 Fed.Reg. 3837, 1999 WL 33562464, (1999).

revise the blackletter law that governs the AMCOR settlements, including the Plaintiffs'. As discussed above, §6224(c) settlements for the tax years at issue were required by regulation to be comprehensive, not partial, and settled *all* partnership items for those years. The IRS filed notices of settlement in the AMCOR proceedings expressly state that the settled partners were no longer parties to the partnership level the Tax Court cases. No such notice was required to be filed for the Plaintiffs because they were not participating parties.

**b. Administrative and Judicial History of the §6621(c) Penalty Interest Claim**

In the FPAAs, the IRS proposed to totally disallow all of the AMCOR partnerships' farming expenses and other partnership deductions on multiple grounds (usually 10 to 20 discrete reasons), some TMTs and some not. The Forms 870-(PAD) used in the settlements identify only the *amount* of the agreed partnership item adjustments, not the grounds or *basis for* the adjustments. They specifically address each partnership item the FPAAs adjusted. The IRS specifically drafted the settlements to allow over ½ to ⅔ of each partnership's "Schedule F- Farming Expenses" and made other adjustments that either allowed a portion of or agreed that there was no adjustment to each of the other partnership items addressed in the FPAAs.

At issue is whether the liabilities were "attributable to" a TMT. The facts and law prove they were not. Moreover, the government's attempt to here seek a *post hoc* causal nexus to a TMT in order to justify §6621(c) after the fact is antithetical to Congress's express intent that the IRS use the threat of §6621(c) to encourage settlement and, thereby, avoid actually imposing §6621(c) where possible.

Plaintiffs are due a refund because the IRS improperly assessed §6621(c). The express terms of §6621(c) and Treas. Reg. §301.6621-2T (the IRS' formula for TMT determinations) mandate that §6621(c) can only be imposed where the underpayment is "attributable to" a TMT. But as held by the Fifth Circuit in *Weiner II*, the Plaintiffs' AMCOR Form 870-P(AD) settlements make it impossible, as

a matter of law, to determine if their underpayments were "attributable to" a TMT. This "attributable to" argument is the thrust of Plaintiffs' §6621(c) claims, forms the basis for the Plaintiffs' Motion for Partial Summary Judgment on §6621(c) accompanying this response, and is the same analysis adopted by the Fifth Circuit in *Weiner II* to hold that §6621(c) was improperly assessed against a settled AMCOR partner as a matter of law.[62]

In *Weiner I* and *Kraemer*, the trial courts denied the settled AMCOR partners' "attributable to" argument and directed the government to choose from the FPAAs the TMT that the underpayments were retroactively "attributable to." The IRS chose "sham transaction" and the case went to trial for factual determinations regarding "sham transactions". *Weiner I* at 654, 657. The partners won in *Weiner I* and lost in *Kraemer*. The Fifth Circuit reversed *Kraemer* and sustained *Weiner I*, albeit on other grounds, adopting the AMCOR partner's argument that the necessary "attributable to" nexus could not be satisfied as a matter of law. The Fifth Circuit analysis is compelling even though not controlling on this Court.

> The same situation [a settlement or concession of the disallowance without addressing which grounds for the disallowance applied] is present in these cases: the taxpayers settled or conceded the disallowances and paid the delinquent taxes, thus removing the need for a trial on the merits of those issues. This court can conceive of no good reason to treat the taxpayers in this case differently from the taxpayers in *Todd, McCrary, Heasley, Rogers*, or *Schachter.* There is no way, **given the multiple reasons provided for the disallowance in the FPAAs, to determine whether the underpayments are "attributable to" a tax motivated transaction**. Additionally, §6621(c) was one of the provisions enacted by Congress "to deal with the Tax Court backlog." *Todd,* 862 F.2d at 544 n. 14. Yet, fifteen years after the statute's repeal, imposing the penalty in situations such as this does nothing to relieve the Tax Court's backlog, when the taxpayers have in fact settled with the IRS. Because, under the circumstances of these cases, the taxpayers' underpayments are not "attributable to" a tax motivated transaction as a matter of law, the IRS may not assess the additional interest against them.
>
> *Weiner II*, at 162-63. Emphasis added.

---

62 *Weiner v. Commissioner*, 389 F.3d 152 (5th Cir. 2004) ("*Weiner II*").

The Fifth Circuit's emphasis on the effect of the "multiple reasons provided for the disallowance in the FPAAs" is based on analysis of this issue in *Law*.[63]

Because the formula mandated in the regulations requires that all non-TMT adjustments be made before determining the portion of the deficiency "attributable to" a TMT, all proposed grounds for adjustment must be considered. If a non-TMT proposed ground for adjustment is applicable, then the underpayment of tax cannot be solely "attributable to" a TMT and §6621(c) cannot be applied.

Should this Court deny Plaintiffs' "attributable to" motion for partial summary judgment and address the merits of the government's assertion of sham transactions, Plaintiffs agree that this Court does not have jurisdiction to make partnership item determinations. However, this Court does have jurisdiction to make "affected item" and other nonpartnership item determinations, particularly partner fact-specific determinations needed to impose §6621(c).

In *Law,* the IRS moved for leave to amend to assert §6621(c) interest after the case had been tried and briefed. The *Law* court recognized that the IRS frequently asserts numerous, alternative grounds for adjusting partnership losses, not all of which are TMTs.[64] That court realized that even after addressing each of the numerous, alternative and overlapping grounds for adjustment in that case it could still be left with two or more valid grounds for the same adjustment, one of which was a TMT and one of which was not.[65] This realization that a trial on the merits of each of the proposed adjustments may likely accomplish nothing, combined with the legislative mandate to use §6621(c) penalty interest as a incentive tool to settle and decrease the backlog of "tax shelter" cases, led to the

---

63 *Law v. Commissioner*, 84 T.C. 985 (1985).

64 *Law*, at 993. The Tax Court denied leave to amend for the same reasons in *Forseth v. C.I.R.*, 50 T.C.M. (CCH) 111 (1985). After that decision Congress amended §6621(c) to add sham transaction to the list of TMTs.

65 *Law*, at 993-994.

Tax Court's denial of leave to amend in *Law*.

In a concurrence Judge Whitaker further explained that reopening the record (analogous to reopening the settlements in these cases) to establish the grounds necessary to apply §6621(c) was not consistent with justice or judicial economy. Judge Whitaker noted that the intent of the statute was to assist the court in managing its backlog and the "*in terrorem*" effect of the statute would not be served by allowing the government to retroactively impose §6621(c) penalty interest and doing so could be seen as simply abusive.[66]

**c. §6621(c) is an Affected Item - Not a Partnership Item**

The government has moved to dismiss Plaintiffs' §6621(c) claims because, pursuant to §7422(h), no action may be brought for *a **refund** attributable to **partnership items***.

As is discussed more fully above, "partnerships items" include any item required to be taken into account for the partnership's taxable year under any provision of subtitle A.[67] By regulation, "the accounting practices and *the legal and factual determinations that underlie the* determination of the amount, timing, and *characterization of items of income, credit, gain, loss, deduction, etc*" are also partnership items[68] Determinations regarding partnership liabilities are also partnership items.[69] Nonpartnership items are all other items that are partner specific or would be partnership items but are not so defined by the regulations. Jurisdiction over refunds attributable to nonpartnership items is not barred by §7422(h) and those actions are within this Court's §1346(a)(1) and/or §1491(a) jurisdiction.

Section 6621(c) penalty interest itself is a nonpartnership item. As the Second Circuit explained

---

66 *Law*, at 994-95.

67 §6231(a)(3).

68 Treas. Reg. §301.6231(a)(3)-1(a)(1)(i). [Emphasis added.]

69 Treas. Reg. §301.6231(a)(3)-1(a)(1)(v). [Emphasis added.]

in holding that jurisdiction of a §6621(c) refund action is not barred by §7422(h), §6621(c) is within subtitle F, not subtitle A, and it is not defined as a partnership item in the Code or regulations.[70] Other courts, particularly the Tax Court, have consistently held that §6621(c) penalty interest is not a partnership item.[71]

The government's *sole* authority for the proposition that this Court lacks jurisdiction over §6621(c) refund claims is the Ninth Circuit's decision in *River City*. But that decision does not support the government's assertions. The conclusion that the government urges this Court to draw from that decision is contrary to well established precedent. The government offers no analysis or authority in support of it argument to disregard that authority.

First, *River City* does not address this Court's jurisdiction or the §7422(h) issue.[72] *River City* was a §6226 partnership-level proceeding - not a partner level refund action.

Second, in the *River City* Tax Court proceeding, the partnership asserted that §6621(c) was not applicable because it had conceded adjustments to the partnership items at issue on nonTMT grounds and that concession made it impossible to determine whether the partnership's transactions were attributable to TMTs for the purpose of imposing §6621(c). The IRS, nonetheless, continue to assert that §6621(c) applied. The partnership asserted that the Tax Court had jurisdiction to determine that, consequent to its concession, the transactions at issue were not attributable to a TMT for purposes of §6621(c). The government asserted that the Tax Court should use its §6226 jurisdiction to go behind the partnership's concessions and make fact findings to establish whether the transactions *could* have

---

70 *Field* at 59.

71 *Id.*, *citing Affiliated Eqpmt,* at 578; *White v. C.I.R.,* 95 T.C. 209 (1990); and *Barlow v. C.I.R.,* 80 TCM (CCH) 632, 643 (2000). *See also* Plaintiffs' MSJ.

72 *River City, at* 1143.

been disallowed as shams for the sole purpose of imposing §6621(c) penalty interest. The Tax Court followed precedent that §6621(c) is an affected item and held that it does not have jurisdiction over the applicability of §6621(c) in a partnership proceeding.[73]

The Ninth Circuit addressed the Tax Court's jurisdiction to make partnership item fact findings regarding the nature of the partnership transactions. It correctly held that Tax Court has §6226 jurisdiction to make findings concerning the character of the partnerships' transactions.

That holding is, in and of itself, not inconsistent or contrary to either parties' assertions in this case. However, the continuation of the proceeding for the sole purpose of establishing grounds to impose §6621(c) after a concession is directly at odds with Congressional intent to encourage settlements to reduce the court's backlog, but was apparently not appealed in *River City*. It is an issue here.

The government acknowledges that the applicability of §6621(c) is an affected item. Consequently, this Court does have refund jurisdiction and is not barred from exercising that jurisdiction over Plaintiffs. Moreover, should the Court deny Plaintiffs' motion for partial summary judgment with respect to §6621(c) and address the general issue of whether the partnership transactions were sham transactions for the sole purpose of imposing §6621(c) then, in the context of TEFRA, then sham transaction is also an affected item over which this Court has jurisdiction to make the partner specific factual determinations necessary to make an ultimate sham determination, and the government's present motion should still be denied.

**d. The Government's Sham Transaction Allegation is an Affected Item**

In its motion the government acknowledged the overwhelming weight of authority that the Tax Court followed in *River City* - the applicability of §6621(c) penalty interest is an "affected item."[74]

---

[73] *River City Ranches # 1 v. C.I.R.*, T.C. Memo 2003-150, 2003 WL 21205284 (2003).

[74] *E.g.*, *N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 745 (1987); §6231(a)(5).

Not only is §6621(c) itself a nonpartnership affected item but, under TEFRA, some of the TMT findings on which the §6621(c) penalty interest rests are also affected items because each TMT depends on both partnership and nonpartnership item determinations. This second type of affected item that requires findings of fact peculiar to each individual partner.[75]

The overwhelming authority on sham transaction in the context of a TEFRA related §6621(c) case holds that it is an affected item requiring (i) partnership item findings, *e.g.*, lack of economic substance,[76] and (ii) nonpartnership item findings, *e.g.*, the amount of the taxpayer's underpayment that is "attributable to" a TMT and/or the profit motive of the individual partner.[77]

Here the government asks this Court to re-characterize the partnership farming expenses as sham transactions. These farming losses were reported on line 8 of each of the partnerships' Forms 1065 as "Schedule F Farming Expenses." Plaintiffs agree with the government that this Court lacks jurisdiction to re-determine these partnership item farming expenses in this partner level refund suit[78] The AMCOR §6224(c) settlements were comprehensive and settled all partnership items which included the nature of the income, loss, expenses, etc. However, any allegation that the transactions were shams at this late

---

[75] §6231(a)(5) and §6230(a)(1). It is important to note that §6621(c) penalty interest is unique because it is an affected item assessed without issuing a notice of deficiency and with no pre-assessment opportunity to object or contest the assessment or raise any partner level substantive determinations that may be required, *e.g.*, the partner's profit motive. *White*; *Barlow, supra.*

[76] The economic substance of a partnership level transaction is a partnership item because it entails a determination of partnership income and/or loss. *Randell v. United States*, 64 F.3d 101 (2nd Cir. 1995), *cert. denied* 117 S.Ct. 65; *Hambrose Leasing v. C.I.R.*, 99 T.C. 298 (1992).

[77] *Barlow* at 643; *Durrett v. C.I.R.*, 71 F.3d 515, n.13 (5th Cir. 1996); *Chamberlain v. C.I.R.*, 66 F.3d 729, 732 (5th Cir. 1995) ("In the context of section 6621(c), '[a] sham or fraudulent transaction includes transactions that were not entered into for profit and are without economic substance.'" and "In determining a profit motive we focus on the intent of the taxpayer, not on that of the underlying entity or activity."), *citing Lukens v. C.I.R.*, 945 F.2d 92, 99 (5th Cir. 1991); *Heasley v. C.I.R.*, 902 F.2d 380 (5th Cir. 1990).

[78] §7422(h) and §6226; see also *Monti*; *Weiner I, supra.* and *Maxwell.*

date is not supported by the terms of the settlement that allowed ½ - ⅔ of the farming expenses. Sham transactions would have been totally disallowed. Not only are partnership item re-determinations barred by §7422(h), the settlements expressly bar re-opening those determinations except for fraud, malfeasance, or misrepresentation of material fact, which no party has alleged here.

The parties agree that this Court has jurisdiction over partner specific factual issues related to the §6621(c) assessment. The partner's profit motive in investing is one such partner specific factual issue if this Court is now going to seek to determine if the disallowances were "attributable to" sham transactions.

**e. Introduction and Survey of Sham Transaction Doctrine**

The district court in *Weiner* acknowledged accepted law recognized by this Court that "sham transaction" is not defined in §6621(c) or otherwise in the Tax Code. The Fifth Circuit has summarized the law of the various jurisdictions and held that sham transaction is a judicially created doctrine of tax law that has two prongs: (i) whether the transactions had economic substance, and (ii) whether there was profit motive.[79] The *Weiner* court considered the genesis and the evolution of the sham transaction doctrine, as well as divergent theories in the case law, but was ultimately persuaded that *in the partnership* context "sham transaction" has two prongs: whether (i) the transactions had economic substance, and (ii) whether **the partner** had a profit motive. The court held that to find sham it was necessary to prove both prongs. *Rice's Toyota World* originated this two prong inquiry to give effect to the Supreme Court's mandate in *Frank Lyon*.[80]

---

[79] *Weiner v. United States*, 255 F.Supp.2d 673, 678-682 (2002) ("*Weiner*"); *Chamberlain*, at 729; *Durrett*, *supra*.; *Lukens*, *supra*. *Jade Trading v. United States*, 60 Fed.Cl. 558 (2004) (discussing the origin and nature of the judicially created sham transaction doctrine).

[80] *Rice's Toyota World, Inc. v. C.I.R.*, 752 F.2d 89 (4th Cir. 1985), *citing Frank Lyon Co. v. United States*, 435 U.S. 561, 583-84, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978).

The Federal Circuit follows this same approach.[81] In *Coltec*, the Federal Circuit held that profit motive was not a factor in making a lack of economic substance determination. But the Court also acknowledged that a taxpayer's subjective profit motive may be pertinent to the existence of tax avoidance purposes necessary to making determinations with respect to other grounds for disallowance. In making that point, the Federal Circuit specifically cited to the sham transaction discussions and determination in *Rice's Toyota World*. [82]

While the sham transaction doctrine is widely accepted and it is generally agreed that the doctrine employs a two prong analysis, there is great uncertainty about its application. In *Compaq* the Fifth Circuit recognized this tension between the Circuits and the trend of some courts to collapse the two prongs and overlook the profit motive requirement.[83] This discord between the Circuits (and lower courts) is exacerbated by a tendency to conflate judicial doctrines and use terms interchangeably. For example, while economic substance is one prong of the sham transaction test, they are two separate and distinct doctrines; however, some courts erroneously and loosely use the terms "economic substance" and "sham transaction" interchangeably.[84]

This distinction is irrelevant when considering only the validity of the deduction - an adverse

---

81 *Coltec Industries, Inc. v. United States*, ____ F.3d _____, 2006 WL 1897077 (Fed. Cir., July 12, 2006).

82 *Coltec* at *12, *citing Rice's Toyota World* at 752 F.2d 89, 94 (4th Cir. 1985), as well as *U.S.P.S. of Am., Inc. v. United States*, 254 F.3d 1014, 1018 (11th Cir. 2001).

83 *Compaq Computer Corp. v. C.I.R.*, 77 F.3d 778 (5th Cir. 2001), *comparing Rice's Toyota World* and *ACM Partnership v. C.I.R.*, 157 F.3d 231, 247 (3d Cir. 1998); *Casebeer v. C.I.R.*, 909 F.2d 1360, 1363 (9th Cir. 1990); *U.P.S. v. C.I.R.*, 862 F.2d 1486, n.2 (11th Cir. 2001).

84 *Roberts v. United States*, 281 F.3d 1108 (10th Cir. 2002); *Keeler v. C.I.R.*, 243 F.3d 1212 (10th Cir. 2001) ("The federal income tax laws do not permit deduction of losses incurred in transactions that lack economic substance. ... 'A transaction will be accorded tax recognition only if it has 'economic substance which is ... imbued with tax-independent considerations and is not shaped solely by tax-avoidance features...'").

determination under either prong denies the deduction. But the distinction is critical in addressing sham transaction in the context of §6621(c), especially regarding a TMT determination in a TEFRA partnership case because there must be an adverse determination *on both prongs* to impose §6621(c), as well as a determination that no other non-TMT basis for the adjustment applies. Here, all of the FPAAs disallowed partnership items on at least ten to twenty *separate* grounds, including: (i) sham transaction, (ii) lack of economic substance (which the IRS conspicuously separately stated as an independent ground in the FPAA), and (iii) lack of §162 profit motive. Sham transaction is a TMT. Lack of economic substance and lack of §162 profit motive, even if proven, are **not** TMTs.[85]

For example, in *Copeland*, the Fifth Circuit distinguished *Hill* for conflating the non-TMT §162 ground for disallowance with §183, and then improperly relying on §183 and §301.6621-2T, A-4, which only apply to individuals and S-corporations, as the basis for a partnership-level §6621(c) determination.[86] The district court in *Weiner* also recognized *Hill's* limited authority and distinguished it extensively.

A close reading of the cases that appear to disregard the two prong analysis indicates that both profit motive and economic substance are still analyzed. This is true not only under the *Rice's Toyota World* test, but also under the *ACM* "unified" approach.[87] For example, *Thomas* and *Thompson* appear to hold that sham is strictly a partnership item issue and there is no profit motive requirement in making

---

85 §6621(c) and *Copeland v. C.I.R.*, 290 F.3d 326 (5th Cir. 2002).

86 *Copeland* at n.27, *construing Hill v. C.I.R.*, 204 F.3d 1214 (9th Cir. 2000).

87 *Killingsworth v. C.I.R.*, 864 F.2d 1214 (5th Cir. 1989). The Fifth Circuit considered whether the transactions (i) were factual shams, (ii) lacked economic substance, and (iii) were deductible under §165 because they were not entered into primarily for profit. The court found that the transactions in that case lacked economic substance. But §6621(c) was not at issue.

a §6621(c) sham determination.[88] But those cases have a common factor – the *taxpayers made specific concessions that the transactions were shams* and *then* attempted to avoid §6621(c).

The Plaintiffs here did not make a specific sham concession. Their settlement made no concession to the grounds for the adjustments. Any intimation that the adjustments were due to sham is inconsistent with the amount of the adjustments and the terms of the Form 870-P(AD) and the incorporated Schedule of Adjustments. The *Weiner* court also distinguished *Thompson* and *Thomas* on the grounds that the taxpayers conceded the transactions were shams.

The question is if sham transaction applies where only lack of economic substance or profit motive, but not both, are present. Common sense and precedent indicates that if a transaction **either** possesses economic substance **or** is entered into with a profit motive, it is **not** a sham transaction, though **either** determination is sufficient to disallow the deduction, both must be found to support the penalty.[89]

The Fifth Circuit has addressed the issue of sham in the context of TEFRA related §6621(c) actions more frequently than any of the other circuits and has consistently recognized and used both prongs to determine whether an underpayment was attributable to sham transaction for purposes of imposing §6621(c) in a partner level action. In those types of cases, the Fifth Circuit looks to the investing partner's profit motive.[90]

In *Lukens* the Fifth Circuit stated that TMTs include a "sham or fraudulent transaction," which "includes transactions that were not entered into for profit and are without economic substance." The

---

88 *Thomas v. United States*, 166 F.3d 825, 832-34 (6th Cir.1999); *Thompson v. United States*, 223 F.3d 1206, 1212-13 (10th Cir.2000).

89 For example, a gift has economic substance but not profit motive. Such a transaction is not a "sham" for purposes of §6621(c) penalty interest under the two prong test.

90 *Durrett, supra.*; *Chamberlain, supra.*; *Lukens, supra. See also Transcapital Leasing v. United States*, ____ F.3d _____, 2006 WL 897723 (W.D. Tex. 2006).

appellate court relied on *Patin* as authority for that statement and to impose §6621(c). In making its determination in *Lukens*, the Tax Court also relied on *Patin* in making its sham transaction determination.[91] *Patin* followed and used *Rice's Toyota World* sham transaction analysis, looking both to the taxpayer's profit motive and economic substance.[92]

In *Chamberlain*, the losses in question arose from the same transactions at issue in *Freytag* that had previously been to be "illusory, and ficticious, and not bona fide," and "were entered into primarily, if not solely for tax avoidance purposes."[93] The §6621(c) determination in *Freytag* was not appealed.

In the Tax Court, Chamberlain *conceded* that his transactions were conducted in the same way as the transactions in *Freytag*. Nonetheless, Chamberlain contested the imposition of §6621(c) penalty interest. The Tax Court rejected that claim, holding that profit motive is irrelevant when a transaction is a factual sham and §6621(c) is appropriately imposed regardless of the taxpayer's profit motive.[94] Chamberlain appealed.

The Fifth Circuit stated succinctly that in making its ***§6621(c) determination***:

> Tax motivated transactions include, *inter alia*, "any sham of fraudulent transaction." In the context of section 6621(c), a sham or fraudulent transaction includes transactions that were not entered into for profit and are without economic substance."[13] [Emphasis in the original.]
>
> ...
>
> [13] *Lukens v. C.I.R.*, 945 F.2d 92,99 (5th Cir. 1991). In determining a profit motive we

---

91 *Lukens at 99 and citing Patin v. C.I.R.*, 88 T.C. 1086, 116-18 (1987).

92 *Ames, et al. v. C.I.R.*., 54 T.C.M. 517 (1986), *aff'd sub nom* as *Lukens*. It is necessary to review both the Tax Court and appellate opinions in these cases to establish the issues that were addressed and concessions that were made.

93 *Chamberlain*, at 731 and n.2 and 3, *affirming*, 67 T.C.M. 2992, 2993 (1994), *citing Freytag v. C.I.R.*, 89 T.C. 849, 875-6 (1987), *aff'd* 904 F.2d 1011 (5th Cir. 1990), *aff'd on other grounds*, 501U.S. 868 (1991).

94 *Chamberlain* 67 T.C.M., at 2993-3, rejecting *Heasley* and *Lukens*.

> focus on the intent of the taxpayer, not that of the underlying entity or activity.[95]

The Fifth Circuit went on to state:

> Capsulating today's disposition we note that: (1) in determining whether a loss deduction may be allowed we look to the transaction itself--if it was a sham no deduction is appropriate; (2) for imposition of the additional interest penalty we look, in part, to these taxpayers' motivation for the transaction, *i.e.*, was there a realistic profit expectation powering the investment engine;...[96]

The Fifth Circuit determined that the Tax Court did address Chamberlain's profit motive and found he had none. That profit motive finding coupled with Chamberlain's concession regarding the nature of the transactions was sufficient to affirm the denial of his §6621(c) claim.

In *Durrett*, the Fifth Circuit followed *Chamberlain* and also looked to the individual partner's profit motive in investing in the partnership to make its §6621(c) sham determination.[97] In *Copeland*, the Fifth Circuit noted that in *Lukens*, *Chamberlain*, and *Durrett*, its affirmance was based at least in part on the Tax Court's factual finding that the partners lacked a profit motive when they invested in the partnerships at issue.[98]

The Fifth Circuit's approach only makes sense. Passive investors who were in no way personally at fault for the disqualification of the relevant deductions and who are required by §6222 to report consistently with the partnership's return should not be subject to a potentially huge "no fault" penalty. Using both prongs of the test allows disqualification of the deduction at the partnership level (or in some instances not relevant here at the partner level), but the application of the penalty is made only if the individual taxpayer is at least at fault for not having a bona fide profit motive. Based on that

---

95 *Chamberlain* at 732.

96 *Chamberlain* at 733, *citing Freytag* and *Lukens* at n.26 and 27.

97 *Durrett* at 517 and n.6-9, *citing Lukens* and *Chamberalain*.

98 *Copeland* at 337.

precedent, the district court in *Weiner* determined sham transaction requires both a lack of economic substance and lack of *partner profit motive* in investing in the partnership and held §6621(c) did not apply because Weiner had a *bona fide* profit motive for investing in TFA. The Fifth Circuit affirmed, but based on the analysis that §6621(c) was not applicable as a matter of law.

**f. Conclusion**

In 1989, Congress repealed §6621(c) and overhauled the remainder of the accuracy related penalties with the aim of improving the fairness, comprehensibility, and administrability of those provisions after it found they had been "determined too routinely and automatically by the IRS."[99] After two years of study, hearings, and debate, Congress found §6621(c) and the other penalties were a "morass of inconsistency and irrationality" that discouraged rather than encouraged compliance and under which a "hapless taxpayer [could] find himself, or herself, confronting the Internal Revenue Code over a tax deficiency, where the penalties and interest have been piled on to the extent that they are twice the amount of tax in dispute."[100] This case proves Congress was correct. To dismiss Plaintiffs' claim would not serve justice and would be wrong as a matter of law.

Respectfully submitted,

July 17, 2006

/Thomas E. Redding/

Thomas E. Redding
Sallie W. Gladney
Teresa J. Womack
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77292-4328
(713) 965-9244 / (713) 621-5227 Fax
**ATTORNEYS FOR PLAINTIFFS**

---

[99] H. Rep. No. 101-247, 1388, 1393, 1394 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906, 2858-59, 2864, *cited by Copeland*, at n.10 (recognizing that §6621(c) had been repealed as a part of the accuracy related penalty provisions).

[100] Statement by Senator Pryor introducing S.1784 at 135 Cong. Rec. S13893-7 (October 24, 1989), 1989 WL 186980 (Cong.Rec.). S.1784 ultimately enacted as a part of P.L. 101-239.