# In the United States Court of Federal Claims

**No. 02-60 T**
**(Filed: April 16, 2008)**

---

**RONALD C. & MARY G. PRATI,**

***Plaintiffs*,**

**v.**

**THE UNITED STATES OF AMERICA,**

***Defendant.***

**Statutory Interpretation; 26 U.S.C. §§ 6221, 6229, 6231, 6404, 7422; Jurisdiction; TEFRA; Untimely Assessment; Tax-Motivated Transaction; Abatement.**

---

*Thomas E. Redding* and *Teresa J. Womack*, Redding & Associates P.C., Houston, Texas, for plaintiffs.

*Bart D. Jeffries*, United States Department of Justice, Tax Division, Washington, D.C., with whom was Assistant Attorney General *Eileen J. O'Connor*, for defendant.

## OPINION AND ORDER

**Block, *Judge*.**

This action is representative of 77 factually-similar, so-called "AMCOR" partnership tax refund cases, which are consolidated for the purposes of the instant motions. These partnerships comprised part of a group of similarly-structured California limited partnerships that were marketed and managed by American Agri-Corp., Inc. ("AMCOR"). Beginning in 2001, 129 AMCOR tax refund cases were filed in the U.S. Court of Federal Claims, of which 124 were transferred to this judge for administrative convenience and efficiency reasons by request of the parties.[1] Of the 124

---

[1] Pursuant to Rules of the U.S. Court of Federal Claims ("RCFC") 40.1(b) and (c).

cases, 76 present factual allegations virtually identical to the named representative case.[2] In all 77 of these cases, plaintiffs invested with an AMCOR partnership, claimed a distributive share of a tax deduction from the AMCOR partnership, subsequently had the claimed deductions rejected by the Internal Revenue Service ("IRS"), and then brought suit in this Court for a refund based on the exact same legal grounds that the named plaintiffs in the representative action assert.

In the representative action, plaintiffs Ronald C. Prati and Mary G. Prati ("plaintiffs" or "Pratis") filed the instant action seeking a refund of taxes, interest and penalties paid to the defendant ("United States" or "defendant"). The Pratis are United States citizens who reside in New Smyrna Beach, Florida.[3] The Pratis timely filed their 1985 federal income tax returns and paid the taxes reported due pursuant to that return.

In 1985, Mr. Prati[4] invested in the Agri-Venture Fund ("AVF"), Canyon Desert Vineyards ("CDV"), and Emperor Seedless-85 ("ES-85") partnerships (collectively "the Partnerships"), and became a limited partner in each. These three Partnerships comprised part of a group of similarly-

---

[2] These 77 cases are: Acker, Nadine (07-215); Adams, Samuel (07-162); Arumugam, Velusami (02-1395); Aylward, Thomas (06-593); Baer, Maurice (06-857); Barry, Ira (03-200); Belair, Laurence (07-588); Berman, Robert (06-856); Boland, John (06-859); Brady, Robert (07-315); Caldwell, Bruce (07-548); Cannon, Nassif Jr. (02-61); Casamento, Stephen (06-698); Chapman, Bill (05-1225); Clinton, Tommy (04-116); Connell, Thomas (07-62); Corkill, Glen (07-147); Cox, Dean (04-709); Crocker, Jesse (04-903); Crouse, Betty (07-894); Davidson, Arthur (07-196); Davis, Charles (06-624); Davis, Robert (06-697); Davison, Robert (04-1112); Deegan, Edward (06-594); Dhillon, Charanjit (02-1477); Dvoranchik, William (07-231); Donaldson, Robert (03-2875); Dow, Ruth (06-746); Dykstra, Donald (07-309); Ehrenbard, Robert (03-1559); Fazio, Anthony (07-163); Feldman, Merrill (07-224); Fillmore Equipment (07-341); Fournier, E. Haffner (06-933); Gilbertson, Robert (05-934); Goldman, Elise (04-123); Gregory, Jane (06-578); Hackett, James III (05-758); Hastie, J. Drayton (04-291); Hatton, Richard (04-127); Huguera, Teodoro (07-381); Iannacchino, Michael (06-817); Johnson, Richard (03-2339); Johnson, Stanley (04-908); Jones, Palmer (03-2229); Jones, Thomas Jr. (02-1079); Keefe, Joseph (07-893); Key, Scott (06-293); Lloyd, James (06-623); Ludwig, Gordon (02-1730); Lyons, Edward Jr. (06-391); Lynn, Nancy (07-564); Marshall, Larry (02-474); Martin, Robert (03-2272); Miller, Edward (05-508); Mitchell, Lewis (07-587); Montgomery, William (03-2273); Moody, Robert (06-752); Morris, John (07-405); Northcutt, Merline (06-860); Oehlschlager, Keith (05-1144); Oldshue, Jerry (06-696); Prati, Ronald (02-60); Sadd, William (05-25); Schuler, John (02-432); Sperling, Stanley (02-1523); Strauss, Joseph (06-823); Tanner, Larry (04-1066); Thompson, Richard (06-792); Ungs, Jerome (06-137); Vallari, Stephen (06-761); Vigliotta, John (02-13); Voda, Jan (06-818); Whitaker, Lloyd (02-795); Winternitz, William (01-404); Wyckoff, E. Lisk Jr. (02-772).

[3] Unless otherwise noted, all facts listed are undisputed and are taken from Plaintiffs' Original Complaint, Defendant's 2004 Motion to Dismiss (in Part), Plaintiffs' Motion for Partial Summary Judgment, and Defendant's 2006 Brief in Support of Its Motion for Partial Dismissal.

[4] Mary Prati is a party to this proceeding only because she filed a joint tax return with Ronald Prati for 1985.

structured California limited partnerships that were marketed and managed by AMCOR. In the early 1980s, AMCOR organized a number of limited partnerships ("AMCOR Partnerships"), for which it acted as the corporate general partner, and solicited investments from individuals around the country. By 1987, the AMCOR Partnerships had become the subject of an IRS audit and investigation. The IRS alleged that the AMCOR Partnerships, including AVF, CDV and ES-85, were actually illegal tax shelters. Following the IRS investigation of the AMCOR Partnerships, the IRS disallowed the Pratis' 1985 tax deductions attributable to the Partnerships, and assessed additional taxes and penalty interest against the Pratis for 1985.

The Pratis brought suit in this Court on January 22, 2002, seeking a tax refund of $20,523 and a refund of $39,251.35 for interest and penalty interest for a total of $59,774.35. The Pratis primarily allege that defendant's assessment of taxes, interest and penalty was untimely. In the alternative, the Pratis assert two other bases for their refund request: first, they contend that the defendant's charging of penalty interest for substantial underpayment of taxes attributable to a tax-motivated transaction was improper; second, the Pratis argue that the Secretary of the Treasury abused his discretion when he refused to abate the penalty interest accrued against the plaintiffs. Defendant counters that this Court lacks jurisdiction to adjudicate these three claims.

Initially, the AMCOR cases cycled to various judges, following the standard case distribution system employed at the Court of Federal Claims. In October 2002, plaintiffs' attorney and the government filed with the Court a joint notice of indirectly related cases.[5] In the joint notice, attorneys for both parties asserted that there were common issues of fact and law throughout many of the AMCOR cases in front of the Court. Accordingly, the parties proposed to select three cases to serve as representative cases in which dispositive motions could be filed and common issues could be settled.[6]

The Court heard oral arguments on May 1, 2007, to resolve all pending dispositive motions in the three representative cases. At the hearing, the parties requested that the Court initially adjudicate only all the jurisdictional issues found in the AMCOR cases. Hearing Transcript at 177. On July 17, 2007, the parties jointly filed a chart identifying the various issues alleged in each AMCOR case. The chart revealed that all AMCOR cases fall under two primary categories:

(1) Claims for tax years 1984, 1985, or 1986 ("Category 1" claims); and
(2) Claims for any tax year other than '84, '85 or '86 ("Category 2" claims).

Within Category 1, there are three types of claims: (1) Untimely assessment ("UA") refund claims for 1984 and 1985 (based on 26 U.S.C. § 6229(a)); (2) Tax-motivated interest ("TMI") refund

---

[5] Joint Notice of Indirectly-Related Cases, *Ronald C. Prati and Mary G. Prati v. United States*, (02-60), document #14, filed October 11, 2002. The Joint Notice was also filed in 23 other cases before the Court.

[6] On January 10, 2003, the parties selected *Isler*, *Prati*, and *Scuteri* to serve as the three representative cases for all the AMCOR cases currently on the Court's docket. The parties asked the Court to stay proceedings in all other AMCOR cases until the Court resolved the three representative cases.

claims for all three years (based on 26 U.S.C. § 6221(c)); and (3) interest abatement ("IA") refund claims for all three years (based on 26 U.S.C. § 6404(e)(1)). The three types of claims are jurisdictional in nature, and will be explained with greater specificity below.

Within Category 2, there are two types of claims: (1) basis termination ("BT") claims; and (2) income recapture ("IR") claims. The parties refer to this second category of claims as "global claims"—essentially, they are tax refund requests that deal with years other than 1984, 1985, and 1986, and significantly, are not jurisdictional in nature.

The 77 cases in dispute in this opinion, which include *Prati,* are exclusively Category 1 cases, and thus present solely legal or "pure" jurisdictional issues.[7] These jurisdictional issues are presently before the Court in the instant case. The parties submitted supplemental briefing in October, 2007. As will be explained, *Prati* and the other Category 1 family of cases should be dismissed for lack of jurisdiction.

## I. Background

In the early 1980s, AMCOR organized a number of limited partnerships for which it acted as the corporate general partner. The AMCOR Partnerships were agricultural investment entities geared towards high income professionals, and AMCOR solicited investments from such individuals across the country. AMCOR's stated goal was to develop farmland, grow fruit crops such as dates, and other crops such as wheat, corn and alfalfa. Appendix B to Pls.' Response to Def.'s Motion to Dismiss, Tab 6. By 1987, the AMCOR Partnerships had become the subject of an IRS audit and investigation. The IRS alleged that the AMCOR Partnerships, including AVF, CDV and ES-85, were actually illegal tax shelters.

Within six years of its founding, AMCOR had raised a total of $206 million from 3,000 investors who put up cash and notes to pay farmers to grow crops. Investors paid for all the farming

---

[7] As to the rest of the cases, the chart revealed that 38 of the 124 cases on the docket are exclusively Category 2 cases. These include Anderson, Robert (06-53); Atkinson, Charles (05-1249); Bailey, B. Ralph (06-39); Blinder, Mark (06-52); Chapman, Bill (04-1762); Donaldson, Robert (01-386); Durr, William (05-932); Ettelson, Donald (05-1004); Farneti, John Jr. (04-1760); Glasser, Mark (05-1141); Golbuff, Alex (05-1224); Hall, Thomas (05-222); Huebner, Gene (04-1742); Holland, David (06-405); Horsley, Wilson (04-1766); Hubbell, James (05-565); Johnson, Richard (06-398); Keefe, Joseph (05-1402); Kirwan, Martin (05-489); Kraemer, Kenneth (04-1761); Lyon, Donald (04-1324); Malouf, Scott (04-1744); Marks, Paul (04-1763); Martin, Robert (05-1251); McDaniel, George (04-1788); McGann, Thomas (06-430); Meunier, Gerald (05-880); Morris, John (05-933); Penni, Jonathan (04-1161); Rossman, Neil (07-346); Rutherford, H. Doug (04-1767); Sardinas, Alfredo (05-1250); Scuteri, Jeffrey (04-1160); Steffansson, Sturla (06-399); Ungs, Jerome (04-1764); Weiner, Morris (01-623); Whittington, G. Dale (05-220); Wong, William (06-404). Eight cases make both Category 1 and Category 2 claims, including *Isler* and *Scuteri*, the other two representative cases. They are: Bolen, Richard (02-696); Isler, Robert (01-344); Lewis, David (02-1080); Mastropieri, Carmen (02-910); McMenamin, Hugh (04-1745); Pineo, Helen (02-401); Prendergast, James (04-1819); Scuteri, Jeffrey (01-358). One case, Penni, Samuel (04-1818), presents neither Category 1 nor Category 2 claims, and instead presents individual estate tax claims.

expenses up front and deducted that amount invested on their tax returns. Most investors saved as much in taxes as they invested, or even more. For example, an investor who put down $25,000 in cash and signed a $50,000 note could deduct the entire $75,000 from his tax return. At an income tax rate of 50 percent, the maximum at the time, the investor's tax bill would be cut by $37,500. The next year, when the crops were harvested, all proceeds would have been subject to taxes. However, the expense of the agricultural enterprises always exceeded any income realized from the farming activities. Further, the investors could spread out reporting the proceeds from their investments over ten years. The proceeds could also then be invested through AMCOR into other farming operations, where the money was further sheltered. In effect, by participating in an AMCOR Partnership, an investor could obtain what amounted to an interest-free loan from the government for the unpaid portion of his taxes.

In 1985, Mr. Prati invested $30,000, $45,000, and $30,000 in AVF, CDV, and ES-85, respectively, and became a limited partner in each. The Partnerships were all AMCOR Partnerships, marketed and managed by AMCOR. The stated goal of the Partnerships was to acquire agricultural land, invest in agricultural ventures, and grow crops. Pursuant to AVF's partnership agreement, its general partners were Frederick H. Behrens, CPA, Chairman and a director of AMCOR; George L. Schreiber, President and a director of AMCOR; and Robert A. Wright, Vice President and a director of AMCOR. CDV and ES-85's partnership agreements were structured similarly to the AVF partnership.

The Partnerships timely filed their partnership returns for 1985. Each of the Partnerships reported an ordinary loss for 1985, of which Mr. Prati was allocated a share that he claimed in his personal tax return. The Pratis reported taxable income of $108,845 in 1985. The Pratis recognized and reported the following shares of the Partnership losses in their 1985 tax return: $89,290 from AVF, $94,893 from CDV, and $66,120 from ES-85, for a total deduction of $250,303.

Following the IRS investigation of the AMCOR partnerships, the IRS issued a notice of final partnership administrative adjustment ("FPAA") to each of the three Partnerships on April 10, 1991, adjusting the amount of deductions the Partnerships claimed in their 1985 tax filings. A notice of FPAA, as will be discussed in more detail below, is the method by which the IRS notifies a partner that the IRS is adjusting an item in that partnership's tax filing.[8] 26 U.S.C. § 6223. On July 10, 1991, a notice partner[9] for each of the Partnerships filed a petition for readjustment on behalf of each of the Partnerships in the United States Tax Court. In 1999, Fredrick Behrens, the tax matters partner ("TMP") for each of the Partnerships, filed a notice of election to intervene in each of the Partnerships' readjustment petitions.[10] The Pratis did not file an election to intervene in the readjustment petitions.

---

[8] Of course, as will be discussed below, partnerships do not pay taxes. 26 U.S.C. § 701.

[9] A "notice partner" is a partner who, at the time in question, would be entitled to notice from the government that an adjustment was being made to the tax filing. 26 U.S.C. § 6223(a).

[10] The TMP is a person or entity designated as such by the partnership under applicable regulations, or most commonly, the general partner with the largest profit stake in the partnership. 26 U.S.C. § 6231(a)(7).

On March 25, 1997, the Pratis executed three Forms 870-P(AD), Settlement Agreement for Partnership Adjustments, in which they offered to settle their income tax liability for 1985, as it related to Mr. Prati's investment in AVF, CDV, and ES-85.[11] The IRS accepted the offers by countersigning the Forms 870-P(AD) for CDV and ES-85 on April 21, 1997, and for AVF on April 24, 1997. In June of 1997, the IRS informed the Pratis how the agreed-upon adjustments would affect the Pratis' 1985 tax return. The IRS stated that adjustments of $33,369, $42,921, and $26,326 (for AVF, DCV, and ES-85, respectively) would be disallowed from the Pratis' taxable income as originally reported on their 1985 tax return, and how, as a result, the Pratis would owe additional tax of $20,523, due to these adjustments.

On October 10, 1997, the Pratis made an advance payment of $63,875 to the IRS for the Pratis' 1985 tax account. On October 20, 1997, the IRS assessed tax and penalty interest against the Pratis for 1985 in the respective amounts of $20,523 and $39,251.35. The IRS then refunded the Pratis $4,100.65, the amount overpaid by the Pratis in their October 10, 1997 advance payment.

On April 16, 1999, the Pratis filed a claim with the IRS for the refund of the additional income tax and penalty interest amounts of $20,523 and $39,251.35. In two letters, dated January 19, 2000 and February 7, 2000, the IRS informed the Pratis that their claims had been denied.

## II. DISCUSSION

### A. The Tax Equity and Fiscal Responsibility Act of 1982.

Before turning to the parties' contentions, it is helpful to first address the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), the statutory labyrinth in which the parties find themselves. Although noted as "distressingly complex and confusing," *see Rhone-Poulenc Surfactants and Specialties, L.P. v. Comm'r of Internal Revenue*, 114 T.C. 533, 540 (2000), TEFRA originally was enacted to simplify and streamline the procedures by which partnerships are examined for federal taxation purposes.

As mentioned above, a partnership is not a taxable entity. Instead, a partnership is treated as a conduit through which income passes to its partners, who are then responsible for reporting any income or losses on their individual returns. Partnerships neither incur tax liability, nor do they pay taxes. All taxable events to which a partnership is a party generate tax consequences for its partners, generally to the extent of the partner's interest in the partnership. *See generally* KAREN C. BURKE, FEDERAL INCOME TAXATION OF PARTNERS AND PARTNERSHIPS IN A NUTSHELL (3d ed. 2005).

Prior to TEFRA's enactment, the examination of a partnership for federal tax purposes was an exceedingly tedious process. As with partnerships today, pre-TEFRA partnerships filed informational tax returns, known as Form 1065s. A Form 1065 reflects the distributive share of income, deductions, and credits attributable to each partner. Each partner then filed his own tax return, reflecting his distributive share of the partnership's gains and losses. However, if the IRS

---

[11] A "Form 870-P(AD)" is simply a settlement agreement form used by the IRS.

deemed it necessary to adjust an item listed on a Form 1065, the IRS was essentially forced to audit each individual partner in a partnership. As a consequence, the IRS could not guarantee consistent treatment of a partnership item for each partner in a partnership.

To remedy this concern, Congress enacted TEFRA. TEFRA "created a single unified procedure for determining the tax treatment of all partnership items as the partnership level, rather than separately at the partner level." *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002) (citing H.R. CONF. REP. NO. 97-760, at 599–600 (1982) ("The tax treatment of items of partnership income, loss, deductions, and credits will be determined at the partnership level in a unified partnership proceeding rather than in separate proceedings with the partners. . . . The tax treatment of any partnership item is to be determined at the partnership level.")). The creation of this "partnership level" proceeding meant that, after TEFRA's enactment, if the IRS wished to adjust items (*e.g.*, deductions for business losses included on a Partnership's Form 1065) it could do so at a singular proceeding, and then subsequently assess all of the partners based upon the adjustment to that particular item. The IRS would not have to conduct individual "partner level" proceedings for each member of a partnership.

Whether TEFRA procedures apply depends on the threshold determination of whether or not an item is a "partnership item." Section 6231 of the tax code provides, in relevant part:

> The term 'partnership item' means, with respect to a partnership item, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provided that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

26 U.S.C. § 6231(a)(3). Which items are "more appropriately determined at the partnership level" is refined in Treasury Regulation § 301.6231(a)(3)-1, which provides that such items include the income, gains, losses, deductions and credits of a partnership. 26 C.F.R. § 301.6231(a)(3)-1. *See also Prochorenko v. United States*, 243 F.3d 1359, 1363 (Fed. Cir. 2001); *Keener v. United States*, 76 Fed. Cl. 455, 458 (2007). Significant to this case, a partnership item is defined by the treasury regulations to also include factors that *affect* the determination of partnership items.

> The term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.

26 C.F.R. § 301.6231(b).

Nonpartnership items are items that are not treated as partnership items, 26 U.S.C. § 6231(a)(4), and the tax treatment of nonpartnership items is determined at the individual partner level. *See Crnkovich v. United States*, 202 F.3d 1325, 1328–29 (Fed. Cir. 2000); *Keener*, 76 Fed. Cl. at 458. There exists a third category of TEFRA items—"affected items"—which are defined as "any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5).

A penalty assessed against a partner based on the partner's tax treatment of partnership items on his individual return is an example of an "affected item." *See Olson v. United States*, 172 F.3d

1311, 1316–17 (Fed. Cir. 1999); *Keener*, 76 Fed. Cl. at 458 n.4. If the IRS decides to adjust the tax treatment of any partnership item reflected on the partnership's informational tax return, TEFRA requires the IRS to notify the individual partners through a notice of FPAA.[12] 26 U.S.C. § 6223.

There are several timeliness considerations. The general statute of limitations for individual taxpayers is § 6501(a), which requires that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." 26 U.S.C. § 6501(a). Before TEFRA, the IRS could not assess a partner based upon a partnership item adjustment if more than *three years had elapsed from the filing of the partner's personal return*; the filing date of the partnership's Form 1065 was for the most part irrelevant. *See* H.R. CONF. REP. NO. 97-760 at 599.

With the enactment of TEFRA, the IRS was given a "buffer," 26 U.S.C. § 6229(a), to the normal assessment period. Section 6229(a) provides:

> Except as otherwise provided in this section, the period for *assessing* any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the *later* of–
>
> (1) the date on which the partnership return for such taxable year was filed, or
>
> (2) the last day for filing such return for such year (determined without regard to extensions).

26 U.S.C. § 6229(a) (emphasis added). Although not strictly speaking a "statute of limitations," *see Andantech LLC v. Comm'r*, 331 F.3d 972, 977 (D.C. Cir. 2003), § 6229(a) allows the IRS to assess partners individually based upon adjustments to partnership items made in an FPAA, so long as the assessment is made within three years of the partnership return's filing.[13] *See AD Global Fund, LLC ex rel. North Hills Holding, Inc. v. United States*, 481 F.3d 1351, 1352 (Fed. Cir. 2007) (observing that "[section] 6229(a) does not provide a separate statute of limitations, but simply creates a minimum period that may extend the regular statute of limitations for partnership items").

Significantly, if the FPAA is issued during that window, the assessment need not be made within the same three-year period. It should be noted that it is incorrect to speak of an FPAA as being *untimely*—an FPAA can never be untimely, *i.e.*, a partner cannot object to the issuance of an FPAA or the adjustment of partnership items contained within the FPAA based solely upon the date an FPAA was issued. Timeliness is at issue only to determine the legality of an *assessment* that is based upon *adjustments* to partnership items.

---

[12] A FPAA is the actual adjustment to the partnership item in question. A notice of FPAA is simply the way by which the IRS notifies a partner of the fact that the IRS is adjusting an item in that partnership's tax filing. 26 U.S.C. § 6223.

[13] The three-year period in which to issue a FPAA can by extended by agreement between the IRS and an individual partner (which binds only that partner to that agreement), or by agreement between the IRS and the partnership's TMP (which binds all partners to such an agreement). 26 U.S.C. § 6229(b).

Following the issuance of a FPAA, the TMP initially has the exclusive right to file a petition for readjustment of the partnership items in the Tax Court, the Court of Federal Claims, or a United States District Court. 26 U.S.C. § 6226(a). The purpose of a petition is to contest the substantive changes that the IRS has made in the FPAA. If the TMP does not petition for readjustment, other partners have 60 days to file a petition for readjustment of the partnership items. 26 U.S.C. § 6226(b)(1). The court before which a petition for readjustment is brought has jurisdiction to "determine all partnership items of the partnership for the partnership taxable year." 26 U.S.C. § 6226(f). This jurisdiction includes the power to make the "proper allocation of [partnership items] among the partners, and [to determine] the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." *Id.* Hence, the court hearing the petition must determine the proper quantification, qualification and characterization of tax items, such as income, losses, deductions, credits and the like. Upon the conclusion of the partnership level proceedings, within one year, the IRS may assess additional tax liabilities, penalties and interest against individual partners based upon the partnership item adjustments. 26 U.S.C. § 6229(d).

In theory, a partner may contest the tax liability by paying the assessment and filing a refund action in the U.S. Court of Federal Claims. 26 U.S.C. § 6226(e). Nevertheless, and significantly, § 7422(h) of TEFRA limits a partner's ability to seek a refund based on adjustments made to the partnership's return by depriving all courts of jurisdiction to hear partner refund claims where the refund is "attributable to partnership items (as defined in section 6231(a)(3))." 26 U.S.C. § 7422(h).

Alternatively, a partner may choose to settle his individual tax liability with the IRS. 26 U.S.C. § 6224. If a partner would so choose, that partner would no longer participate in the partnership level proceeding, and instead would be bound by the terms of his settlement agreement. *Id.* Additionally, any of that settling individual's partnership items would convert to nonpartnership items. 26 U.S.C. § 6231(b)(1)(c). Partnership items convert to nonpartnership items when the IRS enters into a settlement agreement with the partner with respect to such items. *Id.* If a partner files an action for a refund attributable to partnership items, but those items have been converted through a settlement agreement, the jurisdictional bar of § 7422(h) no longer applies. *See Alexander v. United States*, 44 F.3d 328, 331 (5th Cir. 1995).

Having briefly explained the TEFRA format, the Court is now able to address the parties' various jurisdictional contentions.[14]

---

[14] In addition to the jurisdictional contentions, it should be noted that the parties spent a large portion of their briefs arguing over the applicability of the doctrine of *res judicata*. Govt.'s Motion to Dismiss in Part at 28; Pls.' Response to Govt.'s Motion to Dismiss at 22. Specifically, the government contends that even if the Court does have jurisdiction over the Pratis' various claims, the Court is barred from hearing the Pratis' claims because the Pratis could have participated in the partnership-level proceedings of their partnerships. Govt.'s Motion to Dismiss in Part at 28. Predictably, the Pratis argue that their claims are not barred by *res judicata*, because their challenges are not partnership items that would be addressed at a partnership-level hearing. Pls.' Response to Govt.'s Motion to Dismiss at 22. Nevertheless, because the Court finds the jurisdictional issues to be dispositive, it need not address the *res judicata* arguments.

**B. Was the IRS Assessment Untimely?**

The Pratis' refund claim is based on the theory that their individual statutes of limitations on assessments had run prior to the time the IRS assessed income taxes and interest against them in 1997. Simply stated, the Pratis contend that because the assessment of additional taxes was made more than three years after the partnership filed its return, the assessment was untimely under § 6229(a) and should be refunded to the Pratis. Complaint ¶ 12. Further, the Pratis *sua sponte* raise a defensive contention (*i.e*., they did not make this argument in response to a contention by the government) that because the Form 870-P(AD) settlements they entered into were executed after the § 6229(a) limitations period had expired, they did not waive the statute of limitations. *Id*. It is uncontroverted that the Pratis did not intervene in the partnership level proceeding, and therefore did not raise the issue of timely assessments at the Tax Court.
Ex. 14, App. B of Govt.'s Motion to Dismiss in Part.

In response, defendant contends that the limitations-period challenge is a partnership-level defense prohibited by the jurisdictional bar of 26 U.S.C. § 7422(h). According to the government, whether § 6229(a) extended individual limitations periods on assessments found in § 6501 of the Code is a "partnership item" issue that should have been raised at the Tax Court and cannot be raised here. Govt.'s Motion to Dismiss in Part at 20. Defendant argues that if the Court were to determine the timeliness of the assessment, such a determination would affect the assessment for all partners in the Partnerships and would therefore be a partnership-level determination which is barred by § 7422(h). *Id*. at 26.

To avoid the jurisdictional bar of § 7422(h), plaintiffs assert that the determination of a limitations period does not constitute a partnership item because the provision at issue, § 6629(a) of the Internal Revenue Code, lies in subtitle F of the Tax Code, and not in subtitle A.[15] Pls' Response to Govt.'s Motion to Dismiss in Part at 9. This is based on plaintiffs' reading of § 6231(a)(3) whereby the definition of a partnership item ("any item required to be taken into account for the partnership's taxable year *under any provision of subtitle A*" (emphasis added)) means only such items found in subtitle A. *Id*. According to plaintiffs, because the relevant procedural limitations provisions, §§ 6229(a) and 6501 of the Tax Code, are found in subtitle F of title 26, a time limitation cannot by definition be considered a partnership item. *Id*.

But this is a strained interpretation. Statutory interpretation must begin with the language of the statute, *Lamie v. United States Trustees*, 540 U.S. 526, 534 (2004); *Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1330 (Fed. Cir. 2007), and its plain meaning from its text, structure, and purpose, *U.S. Nat'l Bank of Oregon v. Independent Ins. Agents of America Inc*., 508 U.S. 439, 455 (1993) (commenting that "in expounding a statute, [the Court] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy"); *Terry v. Principi*, 340 F.3d 1378, 1385 (Fed. Cir. 2003) (explaining that "when we construe

[15] Subtitle A of the Internal Revenue Code is entitled "Income Taxes." Subtitle A contains subchapter K, "Partners and Partnerships," which contains requirements for the tax liability of partners. Subtitle F of the Internal Revenue Code is entitled "Procedure and Administration." Subtitle F contains subchapter C, "Tax Treatment of Partnership Items," which contains rules relating to the treatment of partnership items, including 26 U.S.C. §§ 6221, 6229, and 6231.

a statute, we do so in the setting of the statutory scheme of which it is a part"); *see also Electrolux Holdings*, 491 F.3d at 1330 (citing *Norfolk Dredging Co. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004)).

Application of these common sense strictures reveals that a more reasonable alternative to plaintiffs' interpretation is to view the requirement of "*under any provision of subtitle A*" as modifying not "any [partnership] item" (which, again, is itself defined in subtitle F, *not* subtitle A) but what immediately precedes it in the clause, which is "the partnership's taxable year." *See* WILLIAM STRUNK JR. & E.B. WHITE, THE ELEMENTS OF STYLE 4–5, 59 (4th ed. 1999) (pointing out the rule of grammar that a restrictive clause limits or defines what immediately precedes it and is not set-off by a comma). This makes eminent sense because while subtitle A encompasses substantive rules for a partner's income tax, subtitle A's provisions make clear that this income is derived from the partnership during the partnership's taxable year, as defined by this subtitle. *See River City Ranches #1 Ltd., v. Comm'r of Internal Revenue*, 401 F.3d 1136, 1144 (9th Cir. 2005) (recognizing that because subtitle F provisions administer subtitle A requirements, partnership's tax items affected by subtitle F provisions are litigated in partnership proceedings, not in the partner's). But ultimately, it is the reasonableness of the interpretation that controls. *See Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1355 (Fed. Cir. 2003) (remarking that when "interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take [it] in connection with . . . the whole statute"); *see also Sandberg v. McDonald*, 248 U.S. 185, 204 (1918) (observing that the common law canon "*reddendo singula singulis*[16] . . . . [requires that] words and provisions . . . [relate] to their appropriate objects . . . [thus] resolving confusion and accomplishing the intent of the law against, it may be, a strict grammatical construction"). *See generally* 2A NORMAN J. SINGER, SUTHERLAND STAT. CONSTR. § 46:5 (7th ed. 2007) (and cases cited therein) [hereinafter SUTHERLAND STAT. CONSTR.] (noting that words are to be applied to the subjects that seem most properly related by context and applicability pursuant to the canon *reddendo singula singulis* ).

The import of this is that "*any item*" ("required to be taken into account for the partnership's taxable year") necessarily must be given a more expansive interpretation than plaintiffs' interpretation would.[17] Thus, in context, it means *anything* that would *affect* (in plain English,

---

[16] Indeed, the canon *reddendo singula singulis* requires that when a statutory provision contains several antecedent phrases that could modify various other phrases thus supplying differing meanings, the one chosen should be the one most properly related by context and applicability. *See, e.g.*, *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1412 (9th Cir. 1989) (citing SUTHERLAND STAT. CONSTR. § 47:26 to support the application of *reddendo singula singulis*, "interpret[ing] a passage in which antecedents and consequents are unclear by reference to the context and purpose of the statute as a whole"). *See generally* SUTHERLAND STAT. CONSTR. § 47:26.

[17] This principle has long been recognized in constitutional law. Most famous is *M'Culloch v Maryland*, 17 U.S. (4 Wheat.) 316 (1819), upholding the legality of the first National Bank by construing the Necessary and Proper Clause, U.S. CONST. art. I, § 8, cl. 18, as delegating to Congress broad "implied" power to effectuate the enumerated Article I powers.

"influence"[18]) the partnership's taxable year, the application of the word "affect" being equivalent here to the provision's phrase "*required to be taken into account*" for the "partnership's taxable year."[19] All of this is merely another way of expressing the axiom that in construing statutes, courts may determine appropriate meaning by considering the policy behind a law's enactment. *See, e.g.*, *Holloway v. United States*, 526 U.S. 1, 9 (1999) (noting that "statutory language should be interpreted consonant with 'the provisions of the whole law, and . . . its object and policy'"); *Star-Glo Assocs., LP v. United States*, 414 F.3d 1349, 1357 (Fed. Cir. 2005) (considering the purpose of a statute to determine the meaning of an ambiguous term in the statutory text). This is particularly so when construing tax and revenue measures due to the importance of policy in avoiding a literal woodenness creating unworkable or absurd results. *See Coltec Industries, Inc. v. United States*, 454 F.3d 1340, 1354 (Fed. Cir. 2006) (construing "economic substance test" in light of policy underlying tax code, "the economic substance doctrine is not unlike other canons of construction that are employed in circumstances where the literal terms of a statute can undermine the ultimate purpose of the statute"); *see also United States v. Native Village of Unalakleet*, 411 F.2d 1255, 1258 (Ct. Cl. 1969) (observing that, at times, a court may "construe the statute contrary to its 'plain language' if a literal interpretation makes a discrimination for which no rational ground can be suggested.").

To be sure, the Court's reading permits treating, as partnership items, any and all legal issues that influence the treatment of partnership items arising under subtitle A. This construction is in accord with the purpose of TEFRA: "a statutory scheme that intends that adjustment to a partnership tax return be completed in one consistent proceeding before individual partners are assessed for partnership items." *AD Global*, 481 F.3d at 1355 (internal citations omitted); *see In re Crowell*, 305 F.3d at 478 (citing H.R. CONF. REP. NO. 97-760, at 599–600 (1982)); *see also Kokoszka v. Belford*, 417 U.S. 642, 650 (1974) (opining that particular statutory provisions must be interpreted in connection with the whole statute "and the objects and policy of the law, as indicated by its various provisions"). Indeed, even if one accepts plaintiffs' interpretation, nothing would prevent a court from looking outside subtitle A to effectuate § 6231(a)(3). *See River City Ranches # 1 Ltd.*, 401 F.3d at 1144 (holding that the assessment provisions in subtitle F may be considered partnership items); *Clark v. United States*, 68 F. Supp. 2d 1333, 1345 (N.D. Ga. 1999) (same); *see also Kaplan*, 133 F.3d at 473 (subtitle F provisions involving authority of TMP may be considered partnership item); *Klein v. United States,* 86 F. Supp. 2d 690, 696 (E.D. Mich. 1999) (same). Furthermore, tax treatment uniformity is furthered because if the TMP does not raise the timeliness issue, a partner could certainly intervene at the appropriate proceeding. 26 U.S.C. § 6226(c)(2).

This interpretation is consistent with, even buttressed by, the application of the separate, yet related, technical statutory definition of an "affected item" (defined by 26 U.S.C. § 6231(a)(5) as any

---

[18] "Affect" is defined as "(1) to act upon: to produce an effect (as of disease) upon, to produce a material influence upon or alteration" or "(2) to have a detrimental influence on—used especially in the phrase affecting commerce, to INFLUENCE." MERRIAM-WEBSTER UNABRIDGED DICTIONARY, http://unabridged.merriam-webster.com/cgi-bin/

[19] This is implicit in the reasoning of *Slovacek v. United States*, 36 Fed. Cl. 250, 255 (1996), whereby whether the period of assessment has been extended by TEFRA and therefore a partnership item is equated to whether it "affects" the "amount, timing and characterization" of partnership items "in thumbs-up or thumbs-down manner."

"item to the extent such item is affected by a partnership item"), addressed by the court in *Keener*, 76 Fed. Cl. at 460–61. There, as here, the court faced the argument that because the assessment periods under section 6501 are unique to each partner, the assessment periods are "affected items" under § 6231(a)(5)) and thus the Tax Court could not have reached a determination concerning the partner in the partnership-level proceeding. *Id.*; *see* Treas. Reg. § 301.6231(a)(5)-1(a).

Although there is not unanimity of analysis, most courts have concluded that there are two types of affected items. The first is a computational adjustment "made to reflect change in a partner's tax liability resulting from partnership-level adjustments." *Korchak v. Comm'r of Internal Revenue*, 90 T.C.M. (CCH) 403 at *20 (2005) (citing *N.C.F. Energy Partners v. Comm'r of Internal Revenue*, 89 T.C. 741, 744 (1987)). The second requires a determination that must be made at a partnership level. *Id*. The *Keener* court explained that because the tax treatment of an "affected item" usually depends upon the partnership-level determination, "affected items generally cannot be tried as part of a partner's tax case prior to the completion of the partnership-level proceeding." *Keener*, 76 Fed. Cl. at 460–66 (citing *GAF Corp. & Subs. v. Comm'r of Internal Revenue*, 114 T.C. 519, 528 (2000) (quoting *Gillilan v. Comm'r of Internal Revenue*, 66 T.C.M. (CCH) 398, 401 (1993))); *see also Katz v. Comm'r of Internal Revenue*, 335 F.3d 1121, 1124 (10th Cir. 2003); *Clark*, 68 F. Supp. 2d at 1347. *But see Field v. United States*, 328 F.2d 58, 60 (2d Cir. 2003) (holding that § 6621(c) interest is not an "affected item" because it "turns on matters that are specific to individual partners"). *See generally* ARTHUR B. WILLIS, JOHN S. PENNELL & PHILIP F. POSTLEWAITE, PARTNERSHIP TAXATION [HEREINAFTER "PENNELL"] ¶ 20.02[4][c] (6th ed. 1999) (and cases cited therein).

Accordingly, partners must first raise any partnership item that "affects" their personal items at the unified partnership-level proceeding. Here, the proper construction of § 6229(a), as explained above, certainly falls into that category. The result from the partnership-level proceeding is then applied at the individual partner level "to the extent that it impacts what otherwise is a nonpartnership item-in this case, the limitations period on assessments." *Keener*, 76 Fed. Cl. at 460. In other words, partners "must first raise any partnership item that 'affects' their personal items at the partnership-level proceeding" and "obtain resolution of the partnership prong of their affected items before later turning to the affected nonpartnership prong." *Id*. at 461. This the Pratis did not do.[20]

To be sure, whether categorized as a "partnership item" or as an "affected item," the Court is without jurisdiction to adjudicate the statute of limitations issue plaintiffs raise in this partner-level proceeding. This is because any resulting refund here would be "attributable to" partnership items within the meaning of § 7422(h), *see Braunstein v. Comm'r of Internal Revenue*, 374 U.S. 65, 70 (1963) ("attributable" defined as "caused or generated by"); *Gilman v. Comm'r of Internal Revenue*, 933 F.2d 143, 151 (2d Cir. 1991) ("attributable" means "stems from"); *Keener*, 76 Fed. Cl. at 461–62, or are partnership items that influence affected items, such as partnership items falling

[20] And, as the *Keener* court points out, it is worth repeating that even if the TMP fails to raise the issue, "section 6226(c) of the Code entitles a partner to participate fully as a party in the partnership proceeding, presumably allowing such a partner to raise [such] issues." *Id.* (citing *Clark v. United States*, 68 F. Supp.2d at 1345–46 (discussing this provision)).

within the partnership prong of an affected item, *see Katz v. Comm'r of Internal Revenue*, 335 F.3d 1121, 1124 (10th Cir. 2003); *Clark*, 68 F. Supp. 2d at 1347.

What is more, the relevant Treasury Regulation defining a "partnership item" as including "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit gain, loss, deduction, etc.," Treas. Reg. § 301.6231(a)(3)-1(b), reflects this Court's approach. And although a court has a duty to independently interpret the relevant statutory provisions and their construction or application to the case at bar—*Chevron U.S.A. Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984) ("[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"); *see also Electrolux Holdings, Inc.*, 491 F.3d 1327—in the realm of tax law, some nod to judicial deference to the IRS's interpretation of its own rules and regulations is recognized. *See Welch v. Helvering*, 290 U.S. 111 (1933) (stating that determinations of the IRS commissioner are presumptively correct). This nod is consequentialist in nature, looking at pragmatic results that apply a reasonableness standard both in interpretation and application, the latter usually encompassing how the agency interpretation affects statutory language, structure, and mandates.

A good and simple example is *United States v. Correll*, 389 U.S. 299 (1967). Correll, a traveling salesman, brought suit for a refund of taxes paid. Customarily leaving home early each morning, but eating breakfast and lunch on the road and returning home at night for dinner, Correll had deducted the cost of his morning and noon meals as "traveling expenses" incurred in the pursuit of his business "while away from home" under § 162(a)(2) of the tax code of 1954. *Id.* at 300. Nevertheless, the Commissioner disallowed the deductions, ruling unless the daily trips required sleep or rest (which they did not) the cost of the meals was a "personal living" expense. *Id.* In upholding the Commissioner's interpretation of the relevant statutory provisions, the Supreme Court noted that the role of the judiciary "begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *Id.* at 307. While conceding that alternative interpretations to the Commissioner's "sleep or rest" rule could be crafted, the Court noted that in reviewing tax law, courts should not "sit as a committee of revision to perfect the administration of tax laws." *Id.* at 306–07.[21] This approach has been followed post-*Chevron*. *See, e.g.*, *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 219 (2001) (the judiciary should "defer to the Commissioner's regulations as long as they 'implement the congressional mandate in some reasonable manner'") (quoting *United States v. Correll*, 389 U.S. 299, 307 (1967)); *Hospital Corp. of America & Subsidiaries v. Comm'r of Internal Revenue*, 348 F.3d 136, 141 (6th Cir. 2003); *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324, 336 (2006).

Furthermore, it is also worth noting that other courts addressing similar challenges have rejected plaintiffs' position. *See, e.g.*, *Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004);

[21] This is because "Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code . . . it is the province of Congress and the Commissioner to make the appropriate adjustments." *Correll*, 389 U.S. at 307 (internal citations omitted).

*Chimblo v. Comm'r*, 177 F.3d 119 (2d Cir. 1999); *Kaplan v. United States*, 133 F.3d 469 (7th Cir. 1998); *Williams v. United States*, 165 F.3d 30 (6th Cir. 1998) (unpublished table decision); *Barnes v. United States*, 1997 WL 732594 at *3 (M.D. Fla. July 25, 1997), *aff'd*, 158 F.3d 587 (11th Cir. 1998); *Thomas v. United States*, 967 F. Supp. 505 (N.D. Ga. 1997); *Slovacek v. United States*, 36 Fed. Cl. 250 (1996); *cf. RJT Investments X v Comm'r of Internal Revenue*, 491 F.3d 732, 736–38 (8th Cir. 2007) (holding that the determination of the validity of a partnership is more appropriately determined at partnership level); *Hirshfield v United States*, 2001 WL 579783 (S.D.N.Y. 2001) (holding that a challenge to a TMP's authority to act on behalf of the partners is a partnership level challenge), *aff'd*, 70 Fed. Appx. 609 (2d Cir. 2003); *Klein v. United States*, 86 F. Supp. 2d 690 (E.D. Mich. 1999) (same). Indeed, this Court, most recently, in *Keener*, 76 Fed. at 460, characterized plaintiffs' arguments as "well-rehearsed" but "faulty."

The first case dealing with this issue was *Slovacek v. United States*, 36 Fed. Cl. 250 (1996). The plaintiffs in *Slovacek*, like the Pratis here, sought a refund of taxes they paid pursuant to a settlement agreement with the IRS, claiming the taxes assessed against them were assessed after the expiration of a period of limitations. *Id*. at 254. The government there similarly argued that the plaintiffs' claims were barred by § 7422(h), and the plaintiffs countered with the argument that their claim was not a partnership item. The court in *Slovacek* reasoned that because the statute of limitations could "affect" the amount, timing and characterization of income, etc., at the partnership level, the challenge must be litigated at the partnership level proceeding. *Id*. at 255.

In *Chimblo v. Comm'r*, 177 F.3d 119, the Second Circuit also addressed this issue, with similar results. The plaintiffs in *Chimblo*, like the Pratis, were members of a partnership who had their deductions attributable to the partnership disallowed by the IRS. Like the Pratis, these plaintiffs did not intervene in the partnership-level tax proceedings, and only after settling their case with the IRS, did they challenge the timeliness of their assessment. The Second Circuit stated that "[a]llowing individual taxpayers to raise a statute of limitations defense in the multiple partner-level proceedings would undermine TEFRA's dual goals of centralizing the treatment of partnership items and ensuring the equal treatment of partners." *Id*. at 125. Accordingly, in applying the policy behind TEFRA, the Second Circuit held that the plaintiffs were barred from raising their statute of limitations defense in a partner-level proceeding. *Id*.

A similar untimely-assessment argument was also addressed by the Seventh Circuit in *Kaplan v. United States*, 133 F.3d 469 (7th Cir. 1998). The Kaplans, like the Pratis, were members of a partnership who claimed their distributive share of partnership loss deductions in their personal tax returns. Eleven years after the tax year in question, the Kaplans were notified by the IRS that some of their partnership deductions were disallowed, and that they owed penalties and interest on their overdue taxes. Unlike the Pratis, the Kaplans claimed they never received notice of the partnership's FPAA, and as a result, they should not owe any penalty or interest on any tax deductions disallowed. Without the Kaplans' knowledge, the partnership's TMP had executed time-period extensions with the IRS. The Kaplans challenged the validity of their TMP's authority to act as the TMP for the partnership. They further argued that if the TMP lacked authority to execute the extensions, then the statute of limitations had run on their assessment, and they were not liable for any taxes disallowed. *Id*. at 473.

However, the Seventh Circuit was not swayed by the Kaplans' arguments. If the Kaplans were to succeed with their claim, it would affect the tax liability of all of the other partners. *Id*. "This is precisely the type of challenge prohibited by TEFRA in light of Congress's decision that such suits are better addressed in one fell swoop at the 'partnership level' than in countless suits by individuals partners." *Id*. Accordingly, the Seventh Circuit held that it lacked subject matter jurisdiction over the Kaplans' refund claim and affirmed the lower court's dismissal of the case. While the Kaplans' challenge was slightly different than the Pratis' challenge, the applicability of the Seventh Circuit's holding is clear—challenges to partnership level items are more properly heard at the partnership level, and may not be heard in a subsequent partner-level proceeding, even if the results are harsh.

In *Weiner v. United States*, 389 F.3d 152, a case factually identical to the *Prati* case at bar, the Fifth Circuit reached the same conclusion as the Second and Seventh Circuit in *Chimblo* and *Kaplan*.[22] The plaintiffs in *Weiner*, like the Pratis, were members of an AMCOR-organized limited partnership and reported their proportional share of partnership losses on their personal income tax returns. Just like the Pratis' deductions, the plaintiffs' deductions in *Weiner* were subsequently disallowed by the IRS. The plaintiffs entered into settlement agreements with the IRS, and, after entering into the settlement agreements, argued that the assessments of tax and interest were untimely. Like the Pratis here, in order to avoid the jurisdictional bar of § 7422(h), the plaintiffs then argued that their challenge under § 6229(a) was not a partnership item because § 6229(a) was located in Subtitle F of the tax code and not in Subtitle A. However, the Fifth Circuit was not persuaded by those plaintiffs' argument. Relying on the reasoning of the Second and Seventh Circuits in *Chimblo* and *Kaplan*, the Fifth Circuit held that it lacked jurisdiction to decide the timely assessment issue: "because the FPAA limitations issue affects the partnership as a whole, it should not be litigated in an individual partner proceeding, as such a result would contravene the purposes of TEFRA." *Id*. at 156–57. In addition, the Fifth Circuit found the language of 26 C.F.R. § 301.6231(a) to be persuasive, holding that "the treasury regulations have implicitly included the statute of limitations determination within the definition of 'partnership item.'" *Id*. at 157.

To counter the weight of all this existing case law, plaintiffs cite *Prochorenko v. United States*, 243 F.3d 1359 (Fed. Cir. 2001), as precedent that allegedly shows that this Court does have jurisdiction over plaintiffs' untimely assessment claim. Although it is binding on this Court, *Prochorenko* is clearly distinguishable and does not support the proposition for which it is cited.

In *Prochorenko*, the taxpayers claimed deductions on their personal tax returns based on their proportional share of a partnership's losses. After conducting an audit, the IRS disallowed the deductions, and issued a notice of FPAA. Several partners elected to challenge the FPAA in the Tax Court, and while the appeal was pending, several other partners entered into a settlement agreement

---

[22] Another similar Fifth Circuit decision is *Treaty Pines Inv. P'ship v. Comm'r of Internal Revenue*, 967 F.2d 206 (5th Cir. 1992). In *Treaty Pines*, the Fifth Circuit held that the Tax Court has jurisdiction at the partnership level to determine whether a settlement agreement with the IRS is valid. *Id.* at 210. The Fifth Circuit went on to state that once a partnership-level court determines a settlement is valid, it no longer had jurisdiction over the individual items because the settlement agreement changes the partnership items to nonpartnership items. *Id*.

with the IRS under terms that were more favorable than those in the FPAA. *Id*. at 1361. The Prochorenkos did not enter into a settlement with the IRS, instead choosing to appeal the FPAA to the Tax Court and then the Second Circuit, both of which upheld the FPAA. *Id*. After conclusion of the appeal, another couple, the Colittis, "through [the] administrative grace" of the IRS, still managed to enter into a settlement agreement consistent with the original settlement that the non-challenging partners entered into before the Tax Court and Second Circuit confirmed the FPAA. *Id*. Thereafter, the Prochorenkos sought to enter into a settlement consistent with the terms of the settlement the Colittis received.

When the IRS denied the Prochorenkos' request, the Prochorenkos filed suit in the Court of Federal Claims, seeking a reduction of their tax liability based on the Colittis' settlement. *Id*. at 1362. The Federal Circuit affirmed this Court's determination that a partner's right to request consistent settlement terms is not a partnership item. *Id*. "Whether or not the Prochorenkos were entitled to such a reduction is an issue that is entirely dependent on their own unique factual circumstances, and has no effect on and is not affected by the tax liability of any of the other partners . . . . [T]his is not the type of issue that is 'more appropriately determined at the partnership level.'" *Id*. at 1363.

Seizing on the determination that a request for consistent settlement terms is not a partnership item, the Pratis assert that their claim is similarly not a partnership item, and therefore not subject to the § 7422(h) jurisdictional bar. Pls.' Resp. to Govt.'s Motion to Dismiss at 15. Nonetheless, the Pratis' challenge is factually different than the Prochorenkos' consistent-settlement request. Unlike the Prochorenkos' consistent-settlement request, the Pratis' challenge deals with determinations related to the partnership as a whole, not matters that are unique to the Pratis themselves. The resolution of whether the Pratis' assessment was timely would be based on partnership-level determinations that affect other partners's returns. Accordingly, as explained above, this Court cannot hear the Pratis' challenge, as this Court lacks jurisdiction over the Pratis' untimely-assessment argument.

Finally, this Court agrees with the court in *Keener* that, like the plaintiffs in that case, plaintiffs here have waived their limitations objection. Because they could have pursued their limitations defense in the earlier partnership-level proceeding, but chose not to do so, "the jurisprudence of both the Tax Court and this Court suggest that the limitations argument they now raise is not jurisdictional, but rather was an affirmative defense that, by their actions, was waived." *Keener*, 76 Fed. Cl. at 462 (citing *United States v. Hitachi America, Ltd.*, 172 F.3d 1319, 1333–34 (Fed. Cir. 1999); *Columbia Bldg., Ltd. v. Comm'r of Internal Revenue*, 98 T.C. 607, 611–12 (1992); *cf. John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006) (statute of limitations in 28 U.S.C. § 2501 is jurisdictional and not waived), *aff'd*, 128 S. Ct. 750 (2008)). And like *Keener*, this Court holds that plaintiffs' tax settlement agreement with the IRS does "not render the above cases inapposite." *See Keener*, 76 Fed. Cl. at 463.

It is true that § 6231(b)(1)(C) of the Code does convert partnership items into nonpartnership items when "the Secretary enters into a settlement agreement with the partner with respect to such items," and thus items previously treated as partnership items can become "individualized," rendering § 7422(h) inapplicable. *See Keener*, 76 Fed. Cl. at 464; *Slovacek*, 40 Fed. Cl. at 829–30;

*Olson*, 37 Fed. Cl. at 733. But the only items converted fall under the term "with respect to such items," that is, "such items" actually settled by an agreement.[23] The limitations contention, not being part of any settlement agreement, is thus not converted into a nonpartnership item.

For the Court to hold to the contrary would create an absurd result undercutting congressional intent in enacting TEFRA. As explained by the Fifth Circuit in *Weiner*—

> partners could settle with the IRS and thus eliminate their ability to participate in and be bound by the result of any partnership-level proceeding. But if, as here, the Tax Court decided the substantive statute of limitations issue against the partnership, the settling partners could simply bring individual partner-level suits in the district courts and attempt to obtain a different ruling on the statute of limitations issue. Thus, some partners would be required to pay the assessed deficiency, while others would not. The result advocated by the taxpayers here is at odds with TEFRA's goal of consolidating decisions that affect the partnership as a whole.

*Weiner*, 389 F.3d at 158.

**C. Does Jurisdiction Lie To Consider Pratis' Claim That Interest Assessed under 26 U.S.C. § 6621(c) Was Improper?**

The government contends that this Court lacks jurisdiction under § 7422(h) to adjudicate plaintiffs' claim that the IRS erred in asserting interest against them under the former "sham transaction" provision of 26 U.S.C. § 6621(c) (*repealed* 1990), because the determination of partnership sham transactions are partnership items that should have been challenged by the Pratis at the partnership level proceeding after the IRS issued the notice of FPAA. Govt.'s Motion for Partial Dismissal of Plaintiffs' Complaint at 8. The government further contends that because the Pratis entered into partial settlement agreements after the FPAA was issued, and the settlement agreements did not cover the FPAA sham transactions, the Pratis are bound by the FPAA determination. *Id*. at 18.

In response to the government's jurisdictional argument, plaintiffs assert that their refund claim is not a partnership item, and claim that the reasoning of *Field v. United States*, 328 F.3d 58

[23] The view that "such items" refers only to those items actually covered by an agreement is fortified by *Keener*'s construction of several other subparagraphs in § 6231(b)(1), such as § 6231(b)(1)(A), which provides that "partnership items shall become nonpartnership items as of the date the Secretary mails to such partner a notice that 'such items' shall be treated as nonpartnership items," *Keener*, 76 Fed. Cl. at 464, and § 6231(b)(2)(B)(I), which states that this notice may be provided "as to one or more of such [partnership] items" the connotation being that "less than all the available partnership items need be converted." *Id*. Construing these subparagraphs in a coherent and consistent manner, *see, e.g.*, *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 88–89 (1934); *Fortec Constr. v. United States*, 760 F.2d 1288, 1292 (Fed. Cir. 1985), the court rightly maintained that the meaning of "such items" can refer only to those items actually settled or agreed upon. *Keener*, 76 Fed. Cl. at 464–65.

(2d Cir. 2003) and *Prochorenko*, 243 F.3d 1359, support them. Pls.' Brief in Support of his Opposition to the Govt.'s Motion for Partial Dismissal at 10. The Pratis also maintain that the settlements agreements in which they entered were complete settlements, and thus they were not bound by the FPAA determination that the partnerships' transactions were shams. *Id*.

The Pratis also move for summary judgment with regard to their § 6621(c) penalty interest refund claim, asserting that the penalty interest assessed against them under § 6621(c) was improper as a matter of law. Pls.' § 6621(c) Motion for Partial Summary Judgment at 14. The Pratis contend that the settlement agreements in which they entered did not express any specific grounds for the disallowance of their deductions so they do not preclude their challenge to the penalty interest. *Id*. at 15. The Pratis further state that, by allowing almost two-thirds of the Pratis' claimed deductions in their settlements, the IRS implicitly agreed that the deductions were not shams under the formula used by the IRS in imposing the penalty interest. *Id*. at 28.

Turning to the merits of the parties' arguments, the starting point must be analysis of the controlling statute. Enacted in 1984 and repealed in 1990,[24] § 6621(c) imposed a penalty rate at 120 percent of the statutory interest rate when the IRS determined that the taxpayer's substantial underpayment of taxes was attributable to so-called "tax-motivated transactions."[25] In relevant part, § 6621(c) provided:

> [W]ith respect to any substantial underpayment attributable to tax motivated transactions, the annual rate of interest established under this section shall be 120 percent of the underpayment rate. . . .
> For purposes of this subsection, the term "tax motivated transaction" means . . . any sham or fraudulent transaction.

26 U.S.C. § 6221(c). Subsection (c)(3) of 26 U.S.C. § 6221, defined "tax motivated transactions" as "any loss disallowed by reason of section 465(a)" and "any sham or fraudulent transaction." 26 U.S.C. § 6621(c)(3)(ii), (v).

Section 465, the so-called "at risk" provision, was added to the Code in 1976 to prevent the creation of tax shelters through which taxpayers could effectively avoid any financial risk. It

---

[24] The Senate sponsor of the repealing legislation not unreasonably described the penalty structure of the 1986 tax code as a "morass of inconsistency and irrationality." 135 CONG. REC. S13893-07 (1989).

[25] Upon enactment in 1984, this provision was codified as 26 U.S.C. § 6621(d). It was amended and redesignated as 26 U.S.C. § 6621(c) by the Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat. 2744, § 1511(c)(1)(A)–(C). Section 6621(c) applies to interest accruing after December 31, 1984, even if the transaction were entered into before the date of its enactment. Tax Reform Act of 1984, § 144(c), Pub. L. No. 98-369, Div. A, July 18, 1984, 98 Stat. 494 (1984). Despite its repeal, § 6621(c) remains applicable to tax years prior to 1989. *See* S. REP. NO. 94-938 at 47–49 (1976); *see also Comm'r of Internal Revenue v. Tufts*, 461 U.S. 300, 309 n.7 (1983).

provides that an individual's loss deductions shall be allowed "only to the extent . . . to which the taxpayer is at risk." 26 U.S.C. § 465(a)(1). A taxpayer is considered "at risk" for an activity for the amount of money contributed to that activity, or any amount borrowed for that activity. 26 U.S.C. § 465(b). A taxpayer is not considered "at risk" for "amounts protected against loss through nonrecourse financing, guarantees, stop loss agreements, or other similar arrangements." 26 U.S.C. § 465(b)(4). With regard to an "at risk" determination, logic dictates that it is the individual partner who is the "taxpayer" to whom these "at risk" rules apply, since partnerships do not qualify as taxpayers for purposes of the Code. Nevertheless, courts addressing the matter "must often consider not only what the partner contributed to the partnership, but the nature of the obligations flowing among the partner, the partnership, and, at times, third-parties." *Keener*, 76 Fed. Cl. at 467. Thus, "several cases directly involving the 'at risk' provisions have concluded that their application is not a 'nonpartnership item,' but rather an affected item." *Id*. (citing *Ginsburg v. Comm'r of Internal Revenue*, 127 T.C. 75, 92–93 (2006); *Greenberg Bros. P'ship # 4 v. Comm'r of Internal Revenue*, 111 T.C. 198, 202 (1998); *Hambrose Leasing 1984-5 Ltd. P'ship v. Comm'r of Internal Revenue*, 99 T.C. 298, 312–13 (1992); *Roberts v. Comm'r of Internal Revenue*, 94 T.C. 853, 861 (1990)).[26]

The "sham or fraudulent transaction" prohibition prong of 26 U.S.C. § 6221(c)(3), the prong at issue in the instant case, is a more difficult nut to crack. In fact, case law has developed two differing "tests" for identifying shams. The Fourth Circuit has adopted a two-prong standard providing that "[t]o treat a transaction as a sham, the court must find that the taxpayer was motivated by no business purposes other than obtaining tax benefits . . . and that the transaction has no economic substance because no reasonable possibility of a profit exists." *Rice's Toyota World Inc. v. Comm'r of Internal Revenue*, 752 F.2d 89, 91 (4th Cir. 1985). Notwithstanding, a majority of the circuits follow a more flexible test developed by the Ninth Circuit, whereby "the consideration of business purpose and economic substance are simply more precise factors to consider in the [determination of] whether the transaction had any practical economic effects other than the creation of income tax losses." *Sochin v. Comm'r of Internal Revenue,* 843 F.2d 351, 354 (9th Cir. 1988); *see also Winn-Dixie Stores, Inc. v. Comm'r of Internal Revenue*, 254 F.3d 1313, 1316 (11th Cir. 2001); *True v. United States*, 190 F.3d 1165, 1177 n.11 (10th Cir. 1999); *CM P'ship v. Comm'r of Internal Revenue*, 157 F.3d 231, 247 (3d Cir. 1998); *DeMartino v. Comm'r of Internal Revenue*, 862 F.2d 400, 406 (2d Cir. 1998); *Rose v. Comm'r of Internal Revenue*, 868 F.2d 851, 854 (6th Cir. 1989).

What is paramount, however, is that when determining sham or fraudulent transactions, under either of the two tests, courts have concluded that the determination must be done on the partnership level. *See Transpac Drilling Venture, 1983-2 by Dobbins v. United States*, 32 Fed. Cl. 810, 820 (1995), *aff'd*, 83 F.3d 1410 (Fed. Cir. 1996); *Nault v. United States*, 2007 WL 465310 at *4–*5 (D.N.H. Feb. 9, 2007); *see also Keener*, 76 Fed. Cl. at 468. This is because "[t]he focus is on the *partnership*'s motivation for entering into the relevant business transaction, 'not on an individual

---

[26] Accordingly, "issues involving items such as the nonrecourse character of partnership notes or the economic substance of partnership transactions are to be resolved in a partnership-level proceeding, with those determinations then being binding on the partners in any refund litigation that would ensue." *Keener*, 76 Fed. Cl. at 467 (citing *Greenberg Bros. P'ship*, 111 T.C. at 202; *Hambrose Leasing*, 99 T.C. at 312).

partner's motive for joining the partnership.'" *Keener*, 76 Fed. Cl. at 468 (citing *Tallal v. Comm'r of Internal Revenue*, 778 F.2d 275, 276 (5th Cir. 1985) (emphasis added).

This unanimity, however, breaks down on the issue of whether the *imposition of interest* under § 6621(c) may be raised at the partner level. On one side, some courts have held that § 6621(c) interest is an affected item and not a partnership item, but have interpreted the term "affected item" in a manner (unlike this Court) allowing jurisdiction to challenge the propriety of § 6621(c) interest assessment in a partner level proceeding. *See Field v. United States*, 328 F.3d at 59 (holding that the § 6621(c) interest being authorized by a provision in subtitle F of the Code, and not specifically within the regulatory definition contained in Treas. Reg. § 301.6231(a)(3)-1, is an affected item that can be challenged at a partner-level proceeding); *see also Klein v. United States*, 86 F. Supp. 2d at 698 n.12; *Korchak*, 90 T.C.M. at 416; *Affiliated Equipment Leasing II v. Comm'r of Internal Revenue*, 97 T.C. 575 (1991). On the other side of the ledger, courts (like this one) have held that challenges to § 6621 interest must be made at the *partnership* level, not at the partner level. *See River City Ranches #1 Ltd. v. Comm'r of Internal Revenue*, 401 F.3d 1136, 1143 (9th Cir. 2005) (holding that the sham nature of the partnerships' transactions is a "partnership item" because it is required to be taken into account . . . under . . . [the income tax provisions] of subtitle A" thus affecting the income tax of the individual partners); *see also Keener*, 76 Fed. Cl. at 468–70; *Ertz v. Comm'r of Internal Revenue*, 2007 WL 174133 (T.C. Jan 24, 2007).

Although the *River City Ranches #1 Ltd.* court did not delve into the minutiae of tax technicality concerning the distinction between a "partnership item" and an "affected item," its reasoning is sound and should control regardless of which category is applied. *See Keener*, 76 Fed. Cl. at 468–71. This is particularly true if, as here, the § 6621(c) "tax-motivated transaction" claimed is alleged to be a sham transaction—obviously, what constitutes a sham perpetrated by members of the partnership must be resolved initially in a partnership-level proceeding before any refund action lies to determine whether interest should be imposed on an individual partner.[27] Indeed, going full circle by applying the lessons learned in the prior section, it is clear that plaintiffs were given notice by assertions specifically made in the 1991 FPAA that one of the issues in the partnership proceeding was to be whether the partnership's activities constituted a sham transaction that lacked economic substance. Plaintiffs chose to settle their tax liability, and by not challenging the sham transaction allegations, they cannot now be heard on this issue. This Court simply has no jurisdiction.

**D. Is the Abuse of Discretion for Failure To Abate Claim Viable?**

The Pratis' second alternative claim is that the Secretary of the Treasury abused his discretion when he refused to abate the penalty interest accrued against the Pratis, pursuant to 26 U.S.C. § 6404(e)(1). Section 6404 provides, in part:

> The Secretary is authorized to abate the unpaid portion of the assessment of any tax or any tax liability in respect thereof . . . .

---

[27] The requirement of an initial resolution at the partnership level also applies to penalties imposed pursuant to the "at risk" rules of § 465, to the extent that penalty interest involves the nonrecourse character of partnership notes or the economic substance of partnership transactions.

> (e) (1) In the case of any assessment of interest on (a) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue service (acting in his official capacity) in performing a ministerial or managerial act . . . the Secretary may abate the assessment of all or any part of such interest for any period.

26 U.S.C. § 6404. The Pratis claim that interest accrued during the IRS's investigation of the Partnerships should be abated, as the investigation was full of unreasonable errors and delays by IRS officials acting in their official capacity.

This Court does not need to resolve this issue, being bound by the Supreme Court decision in *Hinck v. United States*, 127 S. Ct. 2011 (2007), *aff'g* 446 F.3d 1307 (Fed. Cir. 2006). In affirming the Federal Circuit in *Hinck*, the Supreme Court held that the district courts and the Court of Federal Claims lack jurisdiction to hear cases regarding the abatement of interest attributable to unreasonable errors and delays by the IRS—only "the Tax Court provides the exclusive forum for judicial review of a refusal to abate interest under § 6404(e)(1) . . . ." 127 S. Ct. at 2013. Therefore, the Pratis' request for review of abatement of interest pursuant to 26 U.S.C. § 6404 must be dismissed. This Court is bound by controlling authority. *See Coltec Industries, Inc.*, 454 F.3d at 1353 ("there can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims").

## III. CONCLUSION

For the forgoing reasons, the motions of the United States are **GRANTED** because the Court finds that it does not have jurisdiction to hear the plaintiffs' challenge to the timeliness of their tax assessment, as well as their alternative tax-motivated interest penalty and tax abatement claims. Accordingly, all claims by the plaintiffs are hereby **DISMISSED** for lack of jurisdiction and plaintiffs' motion for summary judgment is **DENIED**. Furthermore, it is **ORDERED** that all 76 other related cases cited in footnote 2 of this opinion are hereby **DISMISSED** for lack of jurisdiction. Additionally, the Court notes that orders in the cases Isler, 01-344 T, Scuteri, 01-358 T, and Penni, 04-1818 T, will be issued requesting the parties to confer and file a Joint Status Report by May 16, 2008, regarding how best to proceed with the other cases enumerated in footnote 7.

**IT IS SO ORDERED.**

s/ Lawrence J. Block

Lawrence J. Block
Judge